CARA PETERSEN, DC Bar #476990
Deputy Enforcement Director for Litigation
JAN SINGELMANN, DC Bar # 999087
(E-mail: jan.singelmann@cfpb.gov)
(Phone: 202-435-9670)
AMY RADON, CA Bar # 277727
(E-mail: amy.radon@cfpb.gov)
(Phone: 202-435-9142)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

KENT KAWAKAMI, CA Bar # 149803 – Local Counsel
(Phone: 213-894-4858)
(E-mail: Kent.Kawakami@usdoj.gov)
United States Attorney's Office
Central District of California - Civil Division
300 North Los Angeles Street, Room 7516
Los Angeles, CA 90012
Fax: (213) 894-2380

Attorneys for Plaintiff
Consumer Financial Protection Bureau

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff,<br><br>v.<br><br>Vincent Howard, Lawrence W. Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP,<br><br>Defendants. | Case No. 8:17-CV-00161 (JLS) (JEMx)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT OR IN THE ALTERNATIVE FOR MORE DEFINITE STATEMENT**<br><br>**HON. JOSEPHINE L. STATON**<br><br>**Date: May 26, 2017**<br>**Time: 2:30 p.m.**<br>**Place: Courtroom 10-A (Santa Ana)** |

# TABLE OF CONTENTS

**Page**

Preliminary Statement ...................................................................................................... 1

Argument .......................................................................................................................... 2

I.     Defendants have failed to properly raise their constitutional arguments .......... 2

II.    The CFPA's practice-of-law exclusion does not bar the Bureau's claims ....... 3

     A.   The Bureau has the authority to enforce the TSR against attorneys ........... 3

     B.   The Bureau's Complaint alleges that Defendants' debt
        relief services were not offered as part of the practice of law ................... 4

     C.   Defendants' remaining arguments provide no grounds
        for dismissing the Bureau's claims ............................................................ 6

III.   The Bureau can seek a permanent injunction against Defendants ................... 8

IV.   The Bureau has sufficiently stated its claims for relief ................................. 10

     A.   The Court should not apply the Rule 9(b) standard
        to the Bureau's claims .............................................................................. 10

     B.   Even if the Court applies the Rule 9(b) standard,
        the Bureau's Complaint has pled sufficient facts to meet it ..................... 11

V.    The Bureau's claims are not barred by the doctrine of judicial estoppel ........ 15

VI.   The Bureau's claims are not barred by the doctrine of issue preclusion ........ 18

VII.   The Bureau's claims are not time barred ....................................................... 19

Conclusion ..................................................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABA v. FTC*,
  430 F.3d 457 (D.C. Cir. 2005) ...................................................................7

*CFPB v. Frederick J. Hanna & Assocs.*,
  114 F. Supp. 3d 1342 (N.D. Ga. 2015) ...........................................4, 7, 11

*CFPB v. Morgan Drexen*,
  Case No. SACV13-01267 (C.D. Cal.) (filed Aug. 18, 2013) ...............passim

*CFPB v. Morgan Drexen*,
  2014 WL 12581776 (C.D. Cal. Nov. 25, 2014) ..........................................6

*CFPB v. Morgan Drexen, Inc.*,
  60 F. Supp. 3d 1082 (C.D. Cal. 2014) ...............................................2, 4, 5

*Cooper v. Pickett*,
  137 F.3d 616 (9th Cir. 1997) ...................................................................12

*Cornelis v. B & J Smith Assocs. LLC*,
  No. CV-13-00645-PHX-BSB,
  2014 WL 1828891 (D. Ariz. May 8, 2014) ..............................................20

*DeSilva v. DiLeonardi*,
  181 F.3d 865 (7th Cir. 1999) .....................................................................2

*FTC v. AT&T Mobility LLC*,
  835 F.3d 993 (9th Cir. 2016) .....................................................................3

*FTC v. Freedom Commc'ns, Inc.*,
  401 F.3d 1192 (10th Cir. 2005) ...............................................................11

ii

*FTC v. Gill*,
  71 F. Supp. 2d 1031 (C.D. Cal. 1999) ...................................................................8

*FTC v. Lake*,
  181 F. Supp. 3d 692 (C.D. Cal. 2016) .................................................................13

*FTC v. Lights of Am., Inc.*,
  760 F. Supp. 2d 848 (C.D. Cal. 2010) .................................................................11

*FTC v. Magui Publishers, Inc.*,
  1991-1 Trade Cas. ¶ 69, 429, 1991 WL 90895 (C.D. Cal. 1991) .................................8, 9

*FTC v. Medicor, LLC*,
  217 F. Supp. 2d 1048 (C.D. Cal. 2002) ...................................................................8

*FTC v. Minuteman Press*,
  53 F. Supp. 2d 248 (E.D.N.Y. 1998) ...................................................................8, 9

*FTC v. Sharp*,
  782 F. Supp. 1445 (D. Nev. 1991) ...........................................................................8

*Hamilton v. State Farm Fire & Cas. Co.*,
  270 F.3d 778 (9th Cir. 2001) ...................................................................................17

*Hernandez v. City of El Monte*,
  138 F.3d 393 (9th Cir. 1998) ...................................................................................20

*Kamilche Co. v. United States*,
  53 F.3d 1059 (9th Cir.1995) ....................................................................................18

*Landry v. Georgia Gulf Corp.*,
  No. CV 97-1164, 2002 WL 35622648 (M.D. La. Mar. 7, 2002) ...................................18

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir.1989) ....................................................................................12

iii

*Moyo v. Gomez,*
  40 F.3d 982 (9th Cir. 1984)..................................................................5

*New Hampshire v. Maine,*
  532 U.S. 742 (2001) .........................................................................15

*Odom v. Microsoft Corp.,*
  486 F.3d 541 (9th Cir. 2007)..............................................................12

*Parklane Hosiery Co. v. Shore,*
  439 U.S. 322 (1979) .........................................................................18

*PHH Corp. v. CFPB,*
  839 F.3d 1 (D.C. Cir. 2016) ................................................................2

*Raifman v. Wachovia Securities, LLC,*
  No. 11-2885, 2012 WL 1611030 (N.D. Cal.  May 8, 2012)..........................2

*Rissetto v. Plumbers & Steamfitters Local 343,*
  94 F.3d 597 (9th Cir. 1996)..........................................................16, 17

*Robi v. Five Platters, Inc.,*
  838 F.2d 318 (9th Cir. 1988)..............................................................18

*Russel v. Rolfs,*
  893 F.2d 1033 (9th Cir. 1990)......................................................15, 17

*Shaw v. State of California Dep't of Alcoholic Beverage Control,*
  788 F.2d 600 (9th Cir. 1986)..............................................................19

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007)..............................................................12

*United States ex rel. Lee v. SmithKline Beecham, Inc.,*
  245 F.3d 1048 (9th Cir. 2001)............................................................12

*United States v. Hempfling,*
   2005 WL 2334713 (E.D. Cal. Sept. 23, 2005)...................................................12

*United States v. W.T. Grant Co.,*
   345 U.S. 629 (1953) .........................................................................................8

*U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.,*
   720 F.3d 1174 (9th Cir. 2013).........................................................................20

*Vess v. Ciba-Geigy Corp. USA,*
   317 F.3d 1097 (9th Cir. 2003).........................................................................11

*Yanez v. United States,*
   989 F.2d 323 (9th Cir. 1993)...........................................................................16

*Zamani v. Carnes,*
   491 F.3d 990 (9th Cir. 2007).....................................................................4, 10

**Statutes**

12 U.S.C. § 5517(e) .........................................................................................3, 6, 7

12 U.S.C. § 5517(e)(2)....................................................................................3, 4, 6

12 U.S.C. § 5517(e)(3)........................................................................................3, 6

12 U.S.C. § 5564(a) ..............................................................................................8

12 U.S.C. § 5565(a) ..............................................................................................8

12 U.S.C. § 5581(b) ..............................................................................................4

12 U.S.C. § 5581(c) ..............................................................................................4

15 U.S.C. § 6101 ...................................................................................................4

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................10, 11, 12

v

**Regulations**

16 C.F.R. part 310..............................................................................................1

16 C.F.R. § 310.3(b) ................................................................................13, 19

16 C.F.R. § 310.4(a)................................................................................16, 19

**Other Authorities**

5A C. Wright & A. Miller,
   *Federal Practice and Procedure* § 1298 (2004)............................................12

5A C. Wright & A. Miller,
   *Federal Practice and Procedure* § 1298 (3d ed. 2016)..................................12

75 Fed. Reg. 48458 (Aug. 10, 2010)..........................................................4

*Conference Report on H.R. 4173, Dodd-Frank Wall Street Reform and Consumer
   Protection Act*, 111th Cong. 156 Cong. Rec. 105, at E1347-E1349 (2010) (statement of
   Hon. John Conyers, Jr., Chairman, H. Judiciary Comm.) ...........................................6, 7

Dodd-Frank Act, Pub. L. No. 111-203,
   Title X, subtitle H, § 1100C, 124 Stat. 2110–11....................................................3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PRELIMINARY STATEMENT**

Plaintiff, the Consumer Financial Protection Bureau ("Bureau"), respectfully submits this Opposition to Defendants' Notice of Motion and Motion to Dismiss Complaint or in the Alternative for a More Definite Statement ("Defs. Mot.").

Defendants' unlawful debt relief scheme is well known to this Court from the Bureau's prior lawsuit against Morgan Drexen, Inc. ("Morgan Drexen") and its founder and former CEO, Walter Ledda.[1] Together with Morgan Drexen and Ledda, Defendants fleeced financially-strapped consumers of more than $130 million in unlawful fees. And then, after Morgan Drexen went out of business, Defendants collected another $5.3 million from these same victimized consumers.

On January 30, 2017, the Bureau filed a Complaint against Defendants to hold them accountable for their role in this unlawful debt relief scheme. The Bureau's Complaint alleges that Defendants violated the Telemarketing Sales Rule ("TSR"), 16 C.F.R. part 310, by: (1) charging and collecting upfront fees for debt relief services; (2) falsely representing in advertisements that they did not charge upfront fees for debt relief services, when they did; and (3) providing substantial assistance or support to Morgan Drexen's violations of the TSR.

Defendants raise various grounds for dismissing the Bureau's Complaint. None has merit. First, Defendants' constitutional challenge is not properly raised and the Court should reject it. Second, Defendants' argument that the Bureau lacks the authority to enforce the TSR against them because they are attorneys is premised on an incomplete and incorrect analysis of the practice-of-law exclusion in the Consumer Financial Protection Act ("CFPA"). At best, the practice-of-law exclusion raises factual questions not appropriate for resolution on a motion to dismiss. Defendants' remaining arguments are based on inapposite legal authority, raise questions of material fact, or otherwise provide no grounds for dismissal.

---

[1] Case No. SACV13-01267 (C.D. Cal.) (filed Aug. 18, 2013) (the "*Morgan Drexen*" litigation).

1

Accordingly, the Bureau respectfully requests that the Court deny the motion to dismiss.

## ARGUMENT

### I.     Defendants have failed to properly raise their constitutional arguments.

The Court should reject out-of-hand Defendants' contention that this case must be dismissed because the Bureau's structure is unconstitutional.[2] Defendants make no argument about the Bureau's constitutionality. Instead, they attempt to "incorporate" the arguments that another party made in its brief before the *en banc* D.C. Circuit Court of Appeals in *PHH Corp. v. CFPB*, No. 15-1177. "It [is] wholly improper for a party to incorporate by reference legal arguments made in briefs filed in connection with a motion that is not before the Court," as this "provide[s] an effective means of circumventing page limits."[3] This Court should "decline[] to consider the arguments that Defendants improperly seek to incorporate by reference."[4] In any event, for the reasons that this Court explained in *CFPB v. Morgan Drexen, Inc.*,[5] the Bureau's structure is constitutional. Should the Court consider the incorporated-by-reference arguments from PHH's D.C. Circuit brief, the Bureau respectfully requests that the Court likewise consider the responsive arguments that the Bureau made in its brief in that case.[6]

_____

[2] Defs. Mot. at 6.

[3] *Raifman v. Wachovia Securities, LLC*, No. 11-2885, 2012 WL 1611030, *3 (N.D. Cal.  May 8, 2012); *accord DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999) ("[I]ncorporation is a pointless imposition on the court's time. A brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.").

[4] *Raifman*, 2012 WL 1611030, at *3.

[5] 60 F. Supp. 3d 1082, 1086-92 (C.D. Cal. 2014).

[6] *See* Br. on Reh'g En Banc of Resp't CFPB, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir.) (filed Mar. 31, 2017).

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II. The CFPA's practice-of-law exclusion does not bar the Bureau's claims.

Defendants next argue that the practice-of-law exclusion in the CFPA, 12 U.S.C. § 5517(e), requires the Court to dismiss the Bureau's claims.[7] The Court should reject this argument as well. First, under section 5517(e)(3), the practice-of-law exclusion is wholly inapplicable because attorneys are subject to the TSR, an enumerated consumer financial law that was transferred under subtitle H of the CFPA. Second, under section 5517(e)(2), the exclusion does not apply because the Bureau contends that Defendants did not actually engage in the practice of law or provide any legal advice to consumers in connection with their debt relief services. Defendants' remaining arguments provide no other grounds for dismissal.

### A. The Bureau has the authority to enforce the TSR against attorneys.

Paragraph (3) of section 5517(e) makes clear that the Bureau has authority to enforce the TSR against attorneys. Paragraph (3) provides: "Paragraph (1) shall not be construed so as to limit the authority of the Bureau with respect to an attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer financial laws or the authorities transferred under subtitle F or H."[8] Here, the Bureau has only brought claims against Defendants under the TSR.[9] The authority to enforce the TSR was transferred to the Bureau under subtitle H.[10] And

---

[7] Defendants incorrectly frame this argument in terms of standing. *See* Defs. Mot. at 6. This Circuit has made clear that such claims are instead properly raised as motions for failure to state a claim. *See FTC v. AT&T Mobility LLC*, 835 F.3d 993, 997 n.4 (9th Cir. 2016) (holding, in case involving Federal Trade Commission Act provision limiting FTC's authority over "common carriers," that "[t]he FTC's statutory authority to bring claims against AT&T has no bearing on the district court's jurisdiction to consider the FTC's Complaint . . . . AT&T's motion, in other words, raises a Rule 12(b)(6) issue, not a Rule 12(b)(1) issue.").

[8] Section 5517(e)(3).

[9] *See* Compl. ¶¶ 87-97 (Counts I, II, and III only allege violations of the TSR) (Doc. 1).

[10] *See* Dodd-Frank Act, Pub. L. No. 111-203, Title X, subtitle H, § 1100C, 124 Stat. 2110–11 (amending Telemarketing and Consumer Fraud and Abuse

3

the TSR does not contain an exemption for attorneys.[11] Thus, the Bureau has the authority to enforce the TSR against attorneys, including these Defendants.[12]

### B.   The Bureau's Complaint alleges that Defendants' debt relief services were not offered as part of the practice of law.

Based on the facts alleged in the Bureau's Complaint, the Bureau also has the authority to enforce the TSR against these Defendants under paragraph (2) of Section 5517(e). That paragraph provides that the practice-of-law exclusion in paragraph (1) should not be construed to limit the Bureau's authority over an attorney offering or providing a consumer financial product or service, such as debt

---

Prevention Act, 15 U.S.C. § 6101 *et seq.*) (granting Bureau authority to enforce the Telemarketing and Consumer Fraud and Abuse Prevention Act, the statute under which the TSR was promulgated, and to treat violations of the TSR as violations of the CFPA regarding unfair, deceptive, and abusive acts and practices). The Bureau's authority to enforce the TSR is an authority "transferred" to the Bureau under subtitle H notwithstanding the fact that the FTC can also enforce the Rule. The authorities "transferred" under subtitles F and H include both authorities that now only the Bureau can exercise as well as others with respect to which some measure of authority is retained by the transferring agency. *See, e.g.*, 12 U.S.C. § 5581(b)-(c). In any event, Defendants did not argue in their motion that the TSR is not an "authorit[y] transferred under subtitle … H" and so have waived any such argument. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (district courts need not consider arguments not raised in opening brief).

[11] No such exemption exists in the text of the TSR or the Telemarketing and Consumer Fraud and Abuse Prevention Act. The FTC made clear when amending the TSR in 2010 that it considered and rejected an exemption from the TSR for attorneys. Telemarketing Sales Rule, 75 Fed. Reg. 48458, 48468 (Aug. 10, 2010) ("[T]he Commission has concluded that an exemption from the amended rule for attorneys engaged in the telemarketing of debt relief services is not warranted.").

[12] *Cf. CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1094 (C.D. Cal. 2014) ("Defendants admit that Plaintiff's alleged TSR violations fit under this last exception [for transferred authorities]" and thus are not barred by the practice-of-law exclusion.); *CFPB v. Frederick J. Hanna & Assocs.*, 114 F. Supp. 3d 1342, 1351 (N.D. Ga. 2015) ("To be clear, the practice-of-law exclusion does not apply to the FDCPA claims" because the FDCPA is an enumerated consumer law.).

relief: "(A) that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship; or (b) that is otherwise offered or provided to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service."

The Bureau's Complaint specifically alleges that Defendants did not offer their debt relief services as part of any legitimate practice of law. The Complaint alleges that Defendants charged consumers upfront fees for debt relief services under the guise of "sham bankruptcy-related services that consumers neither wanted nor needed."[13] In support of this allegation, the Complaint discusses the findings in the *Morgan Drexen* litigation that Morgan Drexen manufactured fake bankruptcy petitions to create the false impression that bankruptcy work had been performed for consumers.[14] The Complaint further alleges that one of the defendants in this case, Williamson & Howard, LLP, worked hand-in-hand with Morgan Drexen to manufacture these fake bankruptcy petitions.[15]

Defendants dispute these allegations. They contend that their debt relief services are part of the practice of bankruptcy law and that the upfront fees they charged consumers were for bankruptcy services.[16] At the motion to dismiss stage, however, the court "must accept as true all allegations of material facts that are in the complaint and must construe all inferences in the light most favorable to the non-moving party."[17] Applying this standard here, the Complaint has alleged facts that establish the Bureau's authority to enforce the TSR against these Defendants. At best, Defendants have raised a factual dispute about whether they provided debt

---

[13] Compl. ¶ 41.
[14] Compl. ¶¶ 61-63.
[15] *Id.*
[16] Defs. Mot. at 8, 13-14.
[17] *CFPB v. Morgan Drexen*, 60 F. Supp. 3d 1082, 1093 (C.D. Cal. 2014) (citing *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1984)).

relief services as part of the practice of law.[18] Such a factual dispute, however, is not grounds for dismissal.

## C. Defendants' remaining arguments provide no grounds for dismissing the Bureau's claims.

Defendants provide a variety of other arguments to support dismissal under the practice-of-law exclusion, but none has merit.

Defendants misrepresent the legislative history of the CFPA's practice-of-law exclusion. They quote from a ***portion*** of Representative Conyers' statement from the Congressional Record to support their incomplete and inaccurate interpretation of section 5517(e). But Defendants omit other portions of the Congressional Record in which Representative Conyers recognized some limitations on actions brought against attorneys but clarified that paragraphs (2) and (3) of section 5517(e) allow the Bureau to enforce consumer laws such as the TSR against attorneys:

> At the same time, the Committee worked to clarify that this protection for the practice of law is not intended to preclude the new Bureau from regulating other conduct engaged in by individuals who happen to be attorneys or to be acting under their direction, if the conduct is not part of the practice of law or incidental to the practice of law . . . .

> Section 1027(e)(3) makes clear that existing federal regulatory authority over activities of attorneys, *either under enumerated consumer laws as defined in the bill, or transferred to the new Bureau from existing agencies under subtitle F or H of Title X*, the Consumer Financial Protection Bureau title, is not diminished.[19] (Emphasis added.)

---

[18] Indeed, this was the very factual dispute that formed the basis for the Court's denial of the Bureau's motion for summary judgment in the *Morgan Drexen* litigation. *See CFPB v. Morgan Drexen*, 2014 WL 12581776 at *6 (C.D. Cal. Nov. 25, 2014).

[19] *Conference Report on H.R. 4173, Dodd-Frank Wall Street Reform and Consumer Protection Act*, 111th Cong. 156 Cong. Rec. 105, at E1347-E1349 (2010) (statement of Hon. John Conyers, Jr., Chairman, H. Judiciary Comm.),

Thus, the legislative history of section 5517(e) does not support Defendants' inaccurate (and incomplete) interpretation of the CFPA's practice-of-law exclusion.

Defendants fare no better relying on *ABA v. FTC*, 430 F.3d 457 (D.C. Cir. 2005), for the general point that attorney regulation is "traditionally the province of the states" as opposed to the federal government.[20] As the district court explained in *CFPB v. Hanna*, this argument fails because "unlike the relevant statute and regulations in *ABA*—which do not even mention the practice of law—the CFPA" directly addresses the scope of the Bureau's authority over the practice of law.[21] And, as the court also noted, "[t]he exceptions to the practice-of-law exclusion [in paragraphs (2) and (3)] must mean something. Defendants offer no reasonable construction of [these exceptions], and the *ABA* case does little to further their position."[22]

Finally, Defendants appear to argue that any fees they collected should be evaluated solely under the Bankruptcy Code.[23] They cite no authority in support of this proposition, nor is there any reason to think it is true. To the contrary, the CFPA expressly *gives* the Bureau authority to enforce the TSR, including that rule's bar on the collection of upfront fees for debt relief services. It is those provisions that control this case—not sections of the Bankruptcy Code providing generally for review of the reasonableness of attorney's fees.

---

*available at* https://www.gpo.gov/fdsys/pkg/CREC-2010-07-15/html/CREC-2010-07-15-pt1-PgE1347.htm.

[20] Defs. Mot. at 12, quoting *ABA v. FTC*, 430 F.3d at 471.

[21] 114 F. Supp. 3d at 1359, citing 12 U.S.C. § 5517(e).

[22] *Id.*; see also *ABA*, 430 F.3d at 472 (making clear that the court's holding was limited to what it viewed as the ambiguous statutory language at issue in that case).

[23] Defs. Mot. At 13-14 ("To the extent congress had intended to impose a bar against the payment of upfront fees … it would have implemented this drastic actions [sic] through the bankruptcy code, not in the CFPA.").

**III.    The Bureau can seek a permanent injunction against Defendants.**

Defendants seek to dismiss the Bureau's request for an injunction by arguing that there is no longer any case or controversy because they ***represent*** to have closed their bankruptcy and debt relief practices over a year ago. The Court should reject this argument.

The Bureau is authorized under the CFPA to seek any appropriate equitable relief, including an injunction to prevent any ongoing or future violations of law.[24] Here, the Bureau has requested that the Court issue injunctive relief, ancillary relief, and other equitable relief and civil money penalties.[25] Thus, the Bureau's request for injunctive relief is not a "claim" that is subject to dismissal, but instead one component of broad relief that the Bureau has requested and that the Court will determine at a later stage of the litigation based on the evidence.

In any event, the permanent injunctive relief the Bureau has requested is appropriate where, as here, there is a "'cognizable danger of recurrent violations'"[26] or "'some reasonable likelihood of future violations.'"[27] In *Magui*, the court listed the following factors courts may consider to determine whether there is a cognizable danger of future violations:

---

[24] 12 U.S.C. §§ 5564(a), 5565(a). For example, the Court in the *Morgan Drexen Litigation* issued an injunction *permanently* barring Morgan Drexen from, among other things, involvement in a debt relief product that charges consumers advance fees. Doc. 306 at 7 in *Morgan Drexen Litigation*.

[25] Compl. ¶ 100.

[26] *FTC v. Minuteman Press*, 53 F. Supp. 2d 248, 260 (E.D.N.Y. 1998) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) and *FTC v. Sharp*, 782 F. Supp. 1445, 1449 (D. Nev. 1991); *see also FTC v. Medicor, LLC*, 217 F. Supp. 2d 1048, 1057 (C.D. Cal. 2002) ("Permanent injunctive relief is appropriate when there is 'some cognizable danger of recurring violation.' *FTC v. Gill*, 71 F. Supp. 2d 1031, 1047 (C.D. Cal. 1999).").

[27] *Id.* (quoting *FTC v. Magui Publishers, Inc.*, 1991-1 Trade Cas. ¶ 69, 429, at 65, 1991 WL 90895 (C.D. Cal. 1991)).

8

[T]he degree of scienter, whether the conduct was an isolated incident or recurrent, whether defendants' current occupation positions them to commit future violations, the degree of harm consumers suffered from defendants' unlawful conduct, and defendants' recognition of their culpability and the sincerity of their assurances (if any) against future violations.[28]

Here, each of these factors weighs in favor of a permanent injunction. The Bureau alleges that Defendants developed their debt relief scheme in order to try to circumvent the TSR's ban on upfront fees and then advertised that consumers would pay no upfront fees for debt relief even though this was not true.[29] Defendants are still attorneys and still able to offer debt relief services. Indeed, the Bureau alleges that Defendants collected millions of dollars of unlawful fees from consumers, including over $5.2 million after Morgan Drexen went out of business.[30] Defendants now claim that they closed their debt relief and "bankruptcy" services practices over a year ago, but given their past conduct there is no reason to accept the veracity of these claims.[31] Even if Defendants have stopped offering debt relief and "bankruptcy" services, unless an injunction is in

---

[28]1991-1 Trade Case at 65,728, 1991 WL 90895 (quoted in *Minuteman Press*, 53 F. Supp. 2d at 260-61).

[29] Comp. ¶¶ 31-46.

[30] Compl. ¶¶ 2, 72.

[31] The Bureau remains highly skeptical of this representation, especially since the Bureau sought additional sanctions against these Defendants based on evidence that they continued to be involved in providing debt relief services after the Court's October 9, 2015 contempt order against them in the *Morgan Drexen* litigation. *See* Doc. 411 in *Morgan Drexen* litigation (Plaintiff's *Ex Parte* Application for An Order Holding Vincent Howard, Howard Law, P.C., Williamson & Howard, LLP, Aissac Aiono, and Seila Law, LLC in Contempt and Imposing Monetary Sanctions filed on February 18, 2016).

place, nothing prevents them from resuming their unlawful practices. Finally, Defendants have never acknowledged their culpability.

In these circumstances, Defendants' self-serving representations that they have closed their debt relief and "bankruptcy" practices provide no ground for the Court to prematurely rule on what injunctive relief is appropriate.

## IV.   The Bureau has sufficiently stated its claims for relief.

### A.   The Court should not apply the Rule 9(b) standard to the Bureau's claims.

Defendants have not argued that Rule 9(b) should apply to Counts I and II of the Bureau's Complaint, and so have waived any such argument.[32]

Defendants instead argue that the Court should apply the Rule 9(b) standard to the Bureau's substantial assistance claim (Count III) because, they contend, the underlying conduct involved deception.[33] The Bureau's Complaint, however, alleges that Defendants provided substantial assistance to Morgan Drexen's and Ledda's acts and practices that violated both section 310.3(a) of the TSR, which prohibits *deceptive* acts and practices (the deceptive advertisements) and section 310.4 of the TSR, which prohibits *abusive* acts and practices (collecting or charging upfront fees for debt relief services).[34] Defendants have provided no legal authority that supports the application of Rule 9(b) to claims involving such abusive acts or practices, nor should the Court extend Rule 9(b) to such claims in this case.

The Court should also refuse to extend Rule 9(b) to the portion of Count III where the underlying conduct is deceptive. There is a split in authority over whether Rule 9(b)'s heightened pleading standard applies to statutory deception

---

[32] *See Zamani*, 491 F.3d at 997 (district courts need not consider arguments not raised in an opening brief).

[33] Defs. Mot. 15-20.

[34] Compl. ¶¶ 94-96.

claims brought by the Bureau or FTC.[35] But this Court should employ the reasoning of the courts that have held that Rule 9(b) does not apply to such claims. As the Tenth Circuit explained, "[u]nlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation."[36] In addition, as the court in *Hanna* explained, "applying a heightened pleading standard to consumer protection claims is not only inconsistent with some of the policy reasons for applying Rule 9(b) in the first place, but is also inconsistent with the remedial nature of consumer protection statutes."[37] Here, too, the Court should decline to extend Rule 9(b) to the Bureau's claim that Defendants provided substantial assistance to Morgan Drexen's deceptive conduct.

**B.    Even if the Court applies the Rule 9(b) standard, the Bureau's Complaint has pled sufficient facts to meet it.**

Even if Rule 9(b) applies to the Bureau's substantial assistance claim, the Bureau's Complaint contains sufficient factual allegations to satisfy the rule's heightened pleading standard. Rule 9(b) requires that allegations of fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny wrongdoing.[38] The key inquiry is

---

[35] *Compare FTC v. Freedom Commc'ns, Inc.*, 401 F.3d 1192, 1203 n. 7 (10th Cir. 2005) (noting that an FTC Act claim "simply is not a claim for fraud as that term is commonly understood or as contemplated by Rule 9(b)") and *Hanna*, 114 F. Supp. 3d at 1372 (holding that CFPA and FDCPA claims are not subject to Rule 9(b) standard), *with FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 852-54 (C.D. Cal. 2010) (applying Rule 9(b) to deception claims under FTC Act).

[36] *Freedom Commc'ns*, 401 F.3d at n.7.

[37] *Hanna*, 114 F. Supp. 3d at 1373.

[38] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *see also* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

whether a complaint identifies the circumstances of the alleged fraud so that defendants can prepare an answer.[39]

Consistent with the purpose of Rule 9(b), a plaintiff need not "allege, in detail, all facts supporting each and every instance of [deception] over a multiyear period."[40] In addition, "there is no absolute requirement that, where several defendants are sued in connection with an alleged fraudulent scheme, [that] the complaint must identify false statements made by each and every defendant."[41] When the alleged fraud occurred over a period of time, courts have "less stringently applied" Rule 9(b)'s requirements.[42] Doing otherwise would be impractical, especially where, as here, a government regulator is alleging that Defendants engaged in unlawful conduct that affected tens of thousands of consumers over several years.

Under this framework, there is no question that the Bureau has sufficiently pled facts to establish its substantial assistance claim under the TSR.[43] First, the

---

[39] *Odom v. Microsoft Corp.,* 486 F.3d 541, 554-55 (9th Cir. 2007); *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir.1989) ("A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."); *see also* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298, at 233–34 (2004) (sufficiency of a fraud pleading varies with the complexity and duration of the scheme).

[40] *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-52 (9th Cir. 2001); *see also Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997) (holding complaint that "did not describe in detail a single specific transaction" survived Rule 9(b) because it enabled the defendants to prepare an adequate answer). Nor does Rule 9(b) require a recital or testing of the evidence. *See Cooper,* 137 F.3d at 627; Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298 (3d ed. 2016) (explaining that Rule 9(b) "does not require absolute particularity or a recital of the evidence").

[41] *Swartz v. KPMG LLP,* 476 F.3d 756, 764 (9th Cir. 2007).

[42] *United States v. Hempfling¸* 2005 WL 2334713, at *3 (E.D. Cal. Sept. 23, 2005).

[43] To establish liability for a substantial assistance claim under the TSR, a plaintiff must establish: (1) the defendant(s) "provide[d] substantial assistance or support";

Bureau has alleged facts that establish Defendants and Morgan Drexen are "sellers" and "telemarketers" of "debt relief" services" that engaged in "telemarketing."[44] Second, the Complaint alleges facts that establish Defendants provided substantial assistance to Morgan Drexen's violation of the TSR, including by:

- "[D]eveloping intake procedures, contracts, and document templates and other components of the debt relief program that were integrated into Morgan Drexen's computer platform";[45]
- "[S]erving as the signatories on contracts with consumers enrolled in the debt relief scheme";[46]
- "[D]eveloping a network of associate attorneys";[47]
- "[O]verseeing television advertisements for the debt relief scheme";[48]

---

(2) to a seller or telemarketer; (3) when the defendant(s) "kn[ew] or consciously avoid[ed] knowing that the seller or telemarketer [was] engaged in any act or practice that violates" provisions of the TSR. 16 C.F.R. § 310.3(b); *FTC v. Lake*, 181 F. Supp. 3d 692, 700-01 (C.D. Cal. 2016).

[44] Compl. ¶ 78; *see also id.* ¶¶ 31-35 (describing Defendants', Morgan Drexen's, and Ledda's roles in developing the debt relief scheme; *id.* ¶¶ 36-41 (describing Defendants', Morgan Drexen's, and Ledda's roles in the development of the "dual model" to evade the TSR's ban on upfront fees); *id.* ¶¶ 41-58 (describing Defendants', Morgan Drexen's, and Ledda's roles in advertising, telemarketing, and enrollment process).

[45] Compl. ¶ 95; *see also id.* ¶¶ 31-32 (alleging that, at the origination of the debt relief scheme, Howard moved Howard Law into Morgan Drexen's offices, and Howard and Williamson developed intake procedures, contracts, document templates and other components of the debt relief scheme).

[46] Compl. ¶ 95; *see also id.* ¶ 33 (alleging that, as part of the debt relief scheme, consumers signed contracts with Howard Law or the Williamson Law Firm).

[47] Compl. ¶ 95; *see also id.* ¶ 35 (alleging that Howard developed a network of attorneys, which grew to approximately 100 attorneys, for the purpose of enabling Defendants and Morgan Drexen to offer debt relief services in jurisdictions where Howard was not licensed to practice law).

13

- "[C]reating the two-contract debt relief model as a way to attempt to evade the requirements of the TSR";[49]
- "[T]raining and supervising Intake Specialists";[50]
- "[M]aking automatic withdrawals from consumer bank accounts";[51]
- "[M]anufacturing evidence in the Plaintiff's lawsuit against Morgan Drexen;"[52]
- "Morgan Drexen developed the initial draft of advertisements, [and] Howard had final approval over all advertisements, including the content of the advertisement and whether the advertisement was aired."[53]

Moreover, with respect to Defendants' deceptive conduct, the Complaint includes the additional detailed allegations:

---

[48] Compl. ¶ 95; *see also id.* ¶ 43 (alleging that Howard had final approval over all advertisements, including the content); *id.* ¶¶ 44-47 (alleging the dates the advertisements ran, describing the representations contained therein, and quoting exact language from the advertisements).

[49] Compl. ¶ 95; *see also id.* ¶ 38 (alleging that, in the months preceding October 2010, Howard, Williamson, Howard Law, the Williamson Law Firm, and Morgan Drexen designed two different contracts for consumers to sign: one for debt relief services, and one for bankruptcy services); *id.* ¶ 40 (describing in detail the fee structure of the two contracts).

[50] Compl. ¶ 95; *see also id.* ¶ 48 (alleging that Morgan Drexen employed the intake specialists, and Howard trained them); *id.* ¶ 52 (describing in detail misrepresentations made to consumers by Intake Specialists); *id.* ¶ 53 (describing the incentive structure applicable to the Intake Specialists).

[51] Compl. ¶ 95; *see also id.* ¶ 54 (alleging that Defendants begin making automatic withdrawals immediately after the consumer enrolls in the debt relief scheme) *id.* ¶¶ 40, 55, 56 (describing in detail the fee structure); *id.* ¶ 58 (alleging that Defendants collected tens of millions of dollars in unlawful fees).

[52] Compl. ¶ 95; *see also id.* ¶¶ 60, 61 (alleging that Morgan Drexen and Williamson & Howard manufactured hundreds of bankruptcy petitions to create the façade that Morgan Drexen was performing bankruptcy work).

[53] Compl. ¶ 42.

14

- "The commercials claimed that the attorneys could help consumers eliminate their debt, and explicitly stated that the advertised services did not require payment of advance fees";[54] and
- "In many commercials, the words "0 up-front fees" were displayed on the screen in large bold neon print, while a voice in the background announced, "Best part — no upfront fees. You have nothing to lose except your debt.""[55]

And third, the Complaint alleges in detail that Defendants knew—because they created, managed, and then took over after Morgan Drexen went out of business—that Morgan Drexen had violated the TSR through its involvement in the unlawful debt relief scheme that charged consumer upfront fees for debt relief services.[56] The Bureau's allegations more than meet the Rule 9(b) standard. Accordingly, Defendants' motion to dismiss Count III should be denied.

## V.   The Bureau's claims are not barred by the doctrine of judicial estoppel.

Defendants next argue that the Court should dismiss the case under the doctrine of judicial estoppel, but none of the grounds for applying judicial estoppel apply in this case.

Judicial estoppel is "an equitable doctrine invoked by a court at its discretion."[57] The United States Supreme Court has identified three non-exhaustive factors that courts should consider in determining whether to apply the doctrine of

---

[54] *Id.* ¶ 43.

[55] *Id.* ¶ 44.

[56] Compl. ¶¶ 42-43 (describing Defendants role in marketing the debt relief program, including approving the content of all advertisements that Morgan Drexen ran on their behalf); *id.* ¶¶ 31-35 (describing Defendants' role in developing the debt relief program); *id.* ¶¶ 36-41 (describing Defendants' role in developing the "dual model" to evade the TSR's ban on upfront fees); *id.* ¶¶ 42-54 (describing Defendants' role in advertising and enrolling consumers into the debt relief program); *id.* ¶¶ 54-58 (describing Defendants' role in the collection of upfront fees); and *id.* ¶¶ 59-63 (describing Morgan Drexen and defendant Williamson & Howard's fabrication of evidence of bankruptcy services).

[57] *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001) (internal quotations omitted) (citing *Russel v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)).

15

judicial estoppel: (1) is the party's later position "clearly inconsistent" with its earlier position; (2) has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled"; and (3) would the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[58]

None of the three factors remotely suggests that the doctrine of judicial estoppel is applicable. First, there is nothing "clearly inconsistent" about the lawsuits the Bureau brought against Morgan Drexen and Walter Ledda and its lawsuit against these Defendants. They are all "sellers" and "telemarketers" of a debt relief service subject to the TSR. And there is nothing in the TSR that limits enforcement to just a single perpetrator or a single group of perpetrators; rather, the TSR confers liability on each participating seller and telemarketer involved in any unlawful debt relief scheme.[59] Thus, there is no inconsistency—clear or otherwise—in pursuing Morgan Drexen and Ledda for their role in the unlawful debt relief scheme, and then separately pursuing the Defendants for their own role in this same scheme.[60] Indeed, as this Court stated during the prior hearing, there has been no "180" in the Bureau's position, and the Bureau's subsequent lawsuit

---

[58] *Id*.

[59] 16 C.F.R. § 310.4(a) (prohibiting "*any* seller or telemarketer" from engaging in abusive conduct) (emphasis added).

[60] *See, e.g., Yanez v. United States*, 989 F.2d 323, 327 (9th Cir. 1993) (worker who was injured at munitions plant was not barred under doctrine of judicial estoppel from asserting claims in separate lawsuits against the supplier and government, as "[t]here could be concurrent causes of her injuries. Both (or neither) [the supplier] and the United States could be negligent."); *see generally Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996) ("In many of our cases, the apparently inconsistent position was not really incompatible with the party's earlier position[.]") (listing cases).

1   against these Defendants is not "the kind of clearly inconsistent position that would

2   be the subject of judicial estoppel."[61]

3        None of the cases Defendants cite in support of their argument should

4   compel the Court to change the reasoning it articulated at the hearing. In each case,

5   unlike the Bureau here, the plaintiffs advanced clearly inconsistent positions.[62] In

6   *Hamilton v. State Farm Fire & Cas. Co.*, the court held that the plaintiff was

7   estopped from asserting a claim against an insurance company after failing to list

8   the claim as an asset on his bankruptcy schedules, which "deceived the bankruptcy

9   court and [plaintiff]'s creditors, who relied on the schedules to determine what

10  action, if any, they would take in the [bankruptcy] matter." [63] In *Rissetto v.*

11  *Plumbers & Steamfitters Local*, the court held that the plaintiff was estopped from

12  claiming, on the one hand, that she had a "total disability" and therefore was

13  "unable to earn any income during the period when she is recovering from the

14  effects of the injury," while claiming in a separate action that "she was performing

15  her job adequately and that defendants' cutting her down to one or two days per

16  week was a mere pretext for age discrimination." [64] And in *Russell v. Rolf*, the

17  court held that the state was estopped from arguing that a personal restraint petition

18  was procedurally barred in state court after persuading a federal court to dismiss

19  proceedings on the ground that petitioner had an available state court remedy.[65]

20       Defendants barely muster any arguments that the remaining two factors

21  weigh in favor of applying judicial estoppel. Aside from claiming that the Bureau

22  is "playing fast and loose with the court," Defendants point to no specific instance

23  in which the Bureau has misled the Court. And Defendants offer no arguments

24

---

25  [61] *See* Tr. of Feb. 10, 2017 hearing at 323:19-33:7.

26  [62] *See* Defs. Mot. at 20-21.

27  [63] 270 F.3d 778, 784 (9th Cir. 2001).

28  [64] 94 F.3d 597, 600–601 (9th Cir.1996).
    [65] 893 F.2d 1033, 1037 (9th Cir.1990).

whatsoever that the Bureau has derived an unfair advantage or that they will suffer an unfair detriment.

Here, the Bureau has not taken "clearly inconsistent" positions, misled the Court, or gained any unfair advantage. Accordingly, Defendants' judicial estoppel argument fails.

**VI.   The Bureau's claims are not barred by the doctrine of issue preclusion.**

Defendants' argument that the doctrine of issue preclusion, or collateral estoppel, should somehow limit the Bureau's ability to pursue Defendants for their violations of law is also meritless.

Defensive collateral estoppel—which is what Defendants assert here— applies "when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant."[66] Defendants, as the moving party, bear the burden of establishing that the court should apply collateral estoppel to bar litigation of an issue.[67]

As a threshold matter, Defendants overlook the fact that collateral estoppel only applies if the plaintiff *lost* on the issue in the prior litigation.[68] Here, the Bureau *succeeded* on the merits of its claims in the *Morgan Drexen* litigation. Thus, there is no issue the Bureau is precluded from asserting in subsequent

---

[66] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979).

[67] *Kamilche Co. v. United States,* 53 F.3d 1059, 1062 (9th Cir.1995) (citation omitted).

[68] *See, e.g., Robi v. Five Platters, Inc.*, 838 F.2d 318, 326 (9th Cir. 1988) ("The party against whom issue preclusion is asserted must have litigated that issue in an earlier action and lost."); *Landry v. Georgia Gulf Corp.*, No. CV 97-1164, 2002 WL 35622648, at *2 (M.D. La. Mar. 7, 2002) ("Since collateral estoppel can only be asserted against the party who has litigated and lost in the earlier action, the doctrine will only apply if the plaintiffs lose on the 'common law employees' issue and the state law claims defendants seek to assert it.").

18

litigation against any individual or entity who had a role in the Morgan Drexen debt relief scheme.[69]

Moreover, there is nothing in the TSR or in the case law establishing the doctrine of issue preclusion that states there can only be one perpetrator of a violation, or that a lawsuit against one perpetrator for its role in an illegal scheme forecloses all subsequent lawsuits against other perpetrators for their roles in the scheme. To the contrary, as noted above, the TSR prohibits *every* participating seller and telemarketer from engaging in deceptive or abusive practices,[70] and expressly confers liability on those who substantially assist in violations of the TSR.[71] The fact that the Bureau chose to pursue Morgan Drexen and its CEO for their respective violations of the TSR prior to pursuing others does not somehow limit the Bureau in its ability to fully and effectively litigate against these Defendants now. For all of these reasons, Defendants' collateral estoppel argument fails.

## VII.   The Bureau's claims are not time barred.

Finally, Defendants claim that the Bureau's complaint is subject to a three-year statute of limitations, and therefore all allegations relating to conduct that occurred prior to January 29, 2014 are time barred.[72] While the Bureau disputes this claim, a motion to dismiss is not the proper procedural vehicle to address its

---

[69] Defendants also overlook that the Bureau seeks liability for violations of the TSR that occurred *after* Morgan Drexen went out of business as well. Collateral estoppel does not apply when the issue litigated in a prior proceeding involves conduct that occurred at a different period of time. *See, e.g., Shaw v. State of California Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 606–07 (9th Cir. 1986) (issue preclusion cannot be applied to conduct that arose after the first proceedings commenced) (listing cases).

[70] 16 C.F.R. § 310.4(a) (prohibiting "*any* seller or telemarketer" from engaging in abusive conduct) (emphasis added).

[71] 16 C.F.R. § 310.3(b).

[72] Defs. Mot. 24-25.

19

merits (or lack thereof). The Court should therefore deny Defendants' motion to dismiss.

As the Ninth Circuit has explained, "[a] claim may be dismissed as untimely pursuant to a 12(b)(6) motion 'only when the running of the statute [of limitations] is apparent on the face of the complaint.'"[73] Moreover, "even if the relevant dates alleged in the complaint are beyond the limitations period, the 'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"[74]

Here, Defendants have admitted that the Bureau's claims relating to conduct that occurred on or after January 29, 2014 are timely.[75] Defendants therefore cannot demonstrate the requisite "no set of facts" that would demonstrate the Bureau's claims are untimely: they admit the Bureau's claims are timely with respect to conduct that occurred in the three years prior to when the Bureau filed its Complaint. The Complaint therefore cannot be dismissed on statute of limitations grounds.

## CONCLUSION

For the foregoing reasons, the Bureau respectfully requests that the Court deny Defendants' motion to dismiss.

---

[73] *U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (citation omitted). The applicability of defenses to statute of limitations claims, such as the equitable tolling doctrine, "often depend[] on matters outside the pleadings, [and therefore are] 'not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (citation omitted).

[74] *Cornelis v. B & J Smith Assocs. LLC*, No. CV-13-00645-PHX-BSB, 2014 WL 1828891, at *7 (D. Ariz. May 8, 2014) (quoting *Hernandez,* 138 F.3d at 402).

[75] Defs. Mot. 24-25.

1    Dated: May 5, 2017                              Respectfully submitted,

2

3                                                    CARA PETERSEN
                                                     Deputy Enforcement Director for
4                                                    Litigation

5

6                                                    GABRIEL O'MALLEY
                                                     Assistant Deputy Enforcement
7                                                    Director for Litigation

8                                                    /s/ Jan Singelmann

9                                                    Jan Singelmann
                                                     Amy Radon
10                                                   *Enforcement Attorneys*
                                                     Consumer Financial Protection
11                                                   Bureau
12                                                   1700 G Street NW
                                                     Washington, DC 20552
13                                                   Fax: (202) 435-7722

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28