UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-00161-JLS-JEM                                    Date:  May 26, 2017
Title:  Consumer Financial Protection Bureau v. Vincent Howard et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

|   Terry Guerrero   | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:       ATTORNEYS PRESENT FOR DEFENDANT:

            Not Present                                            Not Present

**PROCEEDINGS:  (IN CHAMBERS)  ORDER DENYING DEFENDANTS MOTION TO DISMISS (Doc. 27)**

       Before the Court is a Motion to Dismiss filed by Howard Law, P.C.; Williamson & Howard, LLP; the Williamson Firm, LLC; Vincent Howard; and Lawrence Williamson.  (Mot., Doc. 27; Mem., Doc. 27.)  Plaintiff the Consumer Financial Protection Bureau (CFPB) has submitted an Opposition (Opp'n, Doc. 33), and Defendants have replied (Reply, Doc. 37).  For the following reasons, the Court DENIES the Motion to Dismiss.

**I.    BACKGROUND**

       In response to abusive telemarketing practices, Congress adopted the Telemarketing and Consumer Fraud and Abuse Prevention Act in 1994, which required the Federal Trade Commission to promulgate regulations prohibiting deceptive or abusive telemarketing practices.  *See* Telemarketing and Consumer Fraud and Abuse Prevention Act, Pub L. No. 103–297, 108 Stat. 1545 (1994).  In October 2010, the FTC amended the Telemarketing Sales Rule (TSR) to prohibit debt relief companies from "[r]equesting or receiving payment of any fee or consideration for any debt relief service" until at least one debt has been renegotiated and the consumer has made at least one payment.  16 C.F.R. §§ 310.4(a)(5)(i)(A), (B).  The 2010 Amendments further prohibit telemarketers from charging a fee unless it is proportionate to the consumer's total debt

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM                                    Date: May 26, 2017
Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

balance or a percentage of the amount the consumer has saved from the debt renegotiation. *Id.* § 310.4(a)(5)(i)(C).

The CFPB alleges that in 2007, Vincent Howard, Lawrence Williamson, and their law firms partnered with Morgan Drexen to offer debt relief services to consumers. (Compl. ¶ 31, Doc. 1.) Under this partnership, consumers entered agreements with Howard Law or Williams Law Firm, but Morgan Drexen performed much of the advertising, enrollment, negotiations with creditors, and collections of fees. (*Id.* ¶¶ 32-34.) After the 2010 Amendments to the TSR, Defendants and Morgan Drexen altered their enrollment process so that consumers would sign one contract for debt relief services and another purportedly for bankruptcy services. (*Id.* ¶¶ 38, 40-41.) The CFPB contends that these dual contracts were a sham intended to enable Defendants to circumvent the TSR's prohibition on upfront fees. (*Id.* ¶¶ 40, 41.) Consumers continued to pay an upfront engagement fee of $1,000 to $3,250 and a $50 administrative fee, just under the newly created bankruptcy services contract. (*Id.* ¶ 40.) Defendants allegedly approved advertisements for their debt relief services that ran on network and cable television from December 8, 2010 through April 11, 2014. (*Id.* ¶¶ 43-44.) These advertisements promoted Defendants' debt relief services as having "$0 up-front fees" and allowing consumers to "[s]tart [their] li[ves] over without filing bankruptcy." (*Id.* ¶¶ 46-47.) When consumers called the toll-free number provided in the television advertisements, an "Intake Specialist" would coax consumers into agreeing to both contracts. (*Id.* ¶¶ 48-52.) When consumers inquired about the bankruptcy services contract, Intake Specialists informed consumers that they had to complete the bankruptcy services contract to enroll in the program and that no bankruptcy work would be completed—nor would any fees be charged—until the consumer agreed to file for bankruptcy. (*Id.* ¶ 52.) In truth, Defendants immediately began making monthly withdrawals from consumers' bank accounts. (*Id.* ¶ 54.) Only after a consumer had fully paid the advance fee would Defendants direct these monthly withdrawals to a trust account that would be used to settle the consumer's debts. (*Id.* ¶ 55.)

On August 20, 2013, the CFPB filed suit against Morgan Drexen and its CEO, Walter Ledda, for violating the TSR. (*Id.* ¶ 59.) In their defense, Morgan Drexen and Ledda claimed that the advance fees were for bankruptcy services actually performed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-00161-JLS-JEM                                        Date:  May 26, 2017
Title:  Consumer Financial Protection Bureau v. Vincent Howard et al.

(*Id.* ¶ 60.)  On the eve of trial, however, the CFPB discovered that the bankruptcy petitions produced by Morgan Drexen during discovery had been fabricated.  (*Id.* ¶ 61.) On April 21, 2015, after conducting an evidentiary hearing, this Court issued terminating sanctions against Morgan Drexen.  *See generally CFPB v. Morgan Drexen, Inc.*, 101 F. Supp. 3d 856 (C.D. Cal. 2015).

While the *Morgan Drexen* litigation proceeded, Morgan Drexen allegedly began transferring its functions to Defendants.  (Compl. ¶¶ 64-66.)  In 2014, Morgan Drexen's creditor relations department shifted to Williamson & Howard and, in 2015, 50-60 staff members from Morgan Drexen's intake services, accounting, and client services departments transferred to Williamson & Howard.  (*Id.* ¶¶ 65-66.)  Because Morgan Drexen, Williamson & Howard, and Howard Law shared the same office space, these transfers were effortless.  (*Id.* ¶ 68.)  In fact, at one point, Morgan Drexen's CEO could not tell who worked for which entity.  (*Id.*)  After this Court issued the default judgment against Morgan Drexen, Vincent Howard allegedly told Ledda that Williamson & Howard would continue Morgan Drexen's practices.  (*Id.* ¶ 69.)  CFPB alleges that, between June 2015 and October 2015, Defendants collected an additional $5.2 million from consumers who had signed up for the debt relief services through Morgan Drexen.  (*Id.* ¶ 72.)

In its Complaint, the CFPB advances three counts against Defendants: (1) charging upfront fees for debt relief services (16 C.F.R. § 310.4(a)(5)(i)), (2) engaging in misleading debt relief practices (*id.* § 310.3(a)(2)(ii), (x)), and (3) substantially assisting Morgan Drexen and Walter Ledda in their violations of the TSR (*id.* § 310.3(b)). (Compl. ¶¶ 87-99.)

## II.     LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), courts must accept as true all "well-pleaded factual allegations" in a complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A court must draw all reasonable inferences in the light most favorable to the non-moving party.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  Yet, "courts 'are not bound to accept as true a legal conclusion couched as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM                                              Date: May 26, 2017

Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

factual allegation.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). "A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

### III. DISCUSSION

#### A. Constitutionality of CFPB's Structure

In their Memorandum, Defendants attempt to incorporate by reference a constitutional challenge made by other litigants in an unrelated case, instead of actually explaining why they believe the CFPB is unconstitutionally structured. (Mem. at 6.) Then, in their Reply brief, Defendants dedicate two pages to this issue. "It is wholly improper for a party to incorporate by reference legal arguments made in briefs filed in connection with a motion that is not before the Court," *Raifman v. Wachovia Sec.*, LLC, No. C 11-02885 SBA, 2012 WL 1611030, at *3 (N.D. Cal. May 8, 2012), and the Court "decline[s] to consider new issues raised for the first time in a reply brief[,]" *Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1069 n.5 (9th Cir. 2003). Accordingly, Defendants' constitutional challenge is not properly before the Court.

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM                                   Date: May 26, 2017
Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

### B. Practice of Law Exclusion

Defendants contend that CFPB has no authority to bring this civil enforcement action because the Consumer Financial Protection Act excludes the practice of law from the agency's purview. (Mem. at 6-14.) Specifically, the Act provides as follows:

(e) Exclusion for practice of law

(1) In general
Except as provided under paragraph (2), the Bureau may not exercise any supervisory or enforcement authority with respect to an activity engaged in by an attorney as part of the practice of law under the laws of a State in which the attorney is licensed to practice law.

(2) Rule of construction
Paragraph (1) shall not be construed so as to limit the exercise by the Bureau of any supervisory, enforcement, or other authority regarding the offering or provision of a consumer financial product or service described in any subparagraph of section [5481(5) of this title]—

(A) that is not offered or provided as part of, or incidental to, the practice of law, occurring exclusively within the scope of the attorney-client relationship; or

(B) that is otherwise offered or provided by the attorney in question with respect to any consumer who is not receiving legal advice or services from the attorney in connection with such financial product or service.

(3) Existing authority
Paragraph (1) shall not be construed so as to limit the authority of the Bureau with respect to any attorney, to the extent that such attorney is otherwise

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  8:17-cv-00161-JLS-JEM                                       Date:  May 26, 2017
Title:  Consumer Financial Protection Bureau v. Vincent Howard et al.

> subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H.

12 U.S.C. § 5517(e).  Under Defendants' interpretation, this enforcement action is barred by Paragraph 1 of the practice of law exclusion and does not fall within the exceptions provided in Paragraphs 2 and 3.  (Mem. at 6-14.)  The CFPB, by contrast, maintains that the enforcement action falls under the exception provided in Paragraph 3, if not the Paragraph 2 exception as well.  (Opp'n at 4-6.)

Paragraph 3 of the practice of law exclusion provides that Paragraph 1's general prohibition on the CFPB bringing an enforcement action against an attorney engaged in the practice of law "shall not be construed so as to limit the authority of the Bureau with respect to any attorney, to the extent that such attorney is otherwise subject to any of the enumerated consumer laws or the authorities transferred under subtitle F or H."  12 U.S.C. § 5517(e)(3).  Section 1100C in subtitle H authorizes the CFPB to enforce the TSR:

> (a) AMENDMENTS TO SECTION 3.—Section 3 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (15 U.S.C. 6102) is amended by striking subsections (b) and (c) and inserting the following:
> . . . .
> (d) ENFORCEMENT BY BUREAU OF CONSUMER FINANCIAL PROTECTION.—Except as otherwise provided in sections 3(d), 3(e), 4, and 5, and subject to subtitle B of the Consumer Financial Protection Act of 2010, this Act shall be enforced by the Bureau of Consumer Financial Protection under subtitle E of the Consumer Financial Protection Act of 2010, with respect to the offering or provision of a consumer financial product or service subject to that Act.

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, § 1100C, 124 Stat. 1376, 2111 (2010).  Thus, while the CFPB does not promulgate the Telemarketing Sales Rule, both the CFPB and FTC have the authority to enforce it.  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM  Date: May 26, 2017
Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

TSR, in turn, contains no applicable exception for the practice of law or attorneys. In adopting the 2010 Amendments to the TSR, the FTC considered several comments that urged the agency to create such an exception. But, after examining these concerns, the FTC rejected the proposal because (1) the rule applies only to attorneys engaged in telemarketing, (2) most attorneys have a face-to-face conversation with a prospective client before accepting a representation (which would take them out of the scope of the rule), (3) the rule would not conflict with state regulations on the practice of law, (4) the agency found it important to "retain Rule coverage[,]" and (5) the rule was consistent with the governing statutes. Telemarketing Sales Rule, 75 Fed. Reg. 48458, 48467-69 (Aug. 10, 2010).

Defendants posit that the word "otherwise" in Paragraph 3 means that this exception "merely stat[es] that if an attorney engages in an activity that is not 'part of the practice of law', he or she does not escape regulation by the CFPB under another consumer law simply by virtue of the individual's status as 'an attorney.'" (Reply at 11.) But this construction would render Paragraph 3 superfluous. *See, e.g.*, *Beisler v. CIR*, 814 F.2d 1304, 1307 (9th Cir. 1987) ("[Courts] should avoid an interpretation of a statute that renders any part of it superfluous and does not give effect to all of the words used by Congress."). "Otherwise" in Paragraph 3 plainly signifies that the authority "transferred" under subtitle F or H applies to those engaged in the legal practice and ensures that the CFPB is not attempting to regulate the practice of law under its general authority "to prevent . . . unfair, deceptive, or abusive act[s] or practice[s]." 12 U.S.C. § 5531(a). This interpretation also makes sense: Congress clearly did not want the CFPB to regulate the practice of law under its general enforcement authority. But, to the extent that certain legal practices were already subject to other consumer protection statutes, Congress did not intend the practice of law exclusion to eliminate those statutes' applicability to the legal profession. Even the legislative history quoted by Defendants confirms this was Congress's intent. *See* 156 Cong. Rec. E1349 (2010) (Statement of Hon. John Conyers, Jr., Chairman, House Judiciary Comm.) ("Section 1027(e)(3) makes clear that existing federal regulatory authority over activities of attorneys, either under enumerated consumer laws as defined in the bill, or transferred to the new Bureau from existing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM                                      Date: May 26, 2017
Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

agencies under subtitle F or H of Title X, the Consumer Financial Protection Bureau title, is not diminished.").

Section 1100C's indication that the section is "subject to subtitle B" does not alter this conclusion. Subtitle B of the Consumer Financial Protection Act includes, along with the rest of the practice of law exclusion and many other unrelated provisions, Paragraph 3. § 1027, 124 Stat. at 1999.

Defendants' reliance on *ABA v. FTC*, 430 F.3d 457 (D.C. Cir. 2005), and the Bankruptcy Code are equally unavailing. In *ABA*, the D.C. Circuit held, under *Chevron* step one that a law firm were not a "financial institution or other person . . . subject to the jurisdiction of any agency or authority under" certain provisions of the Gramm-Leach-Bliley Financial Modernization Act. *Id.* at 468-71. In an alternative holding, the panel held that the FTC's interpretation was unreasonable because Congress did not provide a clear statement in the Gramm-Leach-Bliley Financial Modernization Act that it intended to regulate the practice of law. *Id.* at 471-72. Here, Congress has explicitly allowed the CFPB to take enforcement actions where the transferred authority already covers attorneys. And, in issuing the 2010 TSR Amendments, the FTC—not the CFPB—reasoned that excluding attorneys from the rule would be inconsistent with the governing statutes. Telemarketing Sales Rule, 75 Fed. Reg. at 48467-69. To the extent that Defendants' argument could be construed as challenging the FTC's interpretation of the Telemarketing and Consumer Fraud and Abuse Prevention Act, they make no effort to show how the statute is unambiguous at *Chevron* step one. At *Chevron* step two, the FTC reasonably concluded that attorneys typically do not solicit clients through telemarketing or accept client engagements without an in-person meeting, and to the extent that attorneys engage in both of these practices, the agency's telemarketing rules should not exempt them. *Id.* Unlike in *ABA*, the FTC is not regulating the practice of law generally, just a limited number of attorneys who engage in activities generally not associated with the legal profession. Likewise, the various provisions Defendants reference from the Bankruptcy Code are inapposite because the CFPB alleges that Defendants created these bankruptcy contracts to circumvent the TSR's restrictions on upfront fees for debt relief services. Accordingly, Defendants' Motion to Dismiss this action as barred by the practice of law exclusion is DENIED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM  Date: May 26, 2017
Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

### C. <u>Injunctive Relief</u>

Defendants move to dismiss the CFPB's request for injunctive relief because, Defendants assert, they ceased their debt relief practice "over a year ago." (Mem. at 15 (emphasis omitted).) The CFPB responds that, even if this representation were true, the agency may still seek injunctive relief because there is a sufficient likelihood that Defendants' violations of the TSR will reoccur. (Opp'n 8-10.)

To demonstrate Article III standing, a private party must "(1) have suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the harm must be 'fairly trace[able]' to the defendants' conduct, and (3) the Court must be able to redress the claimed injury." *Brenner v. Procter & Gamble Co.,* No. SACV161093JLSJCGX, 2016 WL 8192946, at *3 (C.D. Cal. Oct. 20, 2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "At each stage of a suit, the elements of Article III standing must "be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Brenner*, 2016 WL 8192946, at *3. Accordingly, "[a]t the pleading stage, general factual allegations . . . may suffice." *Id.* (quoting *Lujan*, 504 U.S. at 561). Not all of these prerequisites to Article III standing apply equally to a government enforcement action. For instance, a government agency "need not suffer a 'particularized injury'" because "it is charged under Article II to enforce federal law." *CFPB v. Gordon*, 819 F.3d 1179, 1188 (9th Cir. 2016).

Although the decision was not framed in terms of constitutional standing, the Supreme Court held in *United States v. W. T. Grant Co.* that a "court's power to grant injunctive relief survives discontinuance of the illegal conduct." 345 U.S. 629, 633 (1953). There, much like in this case, the defendants claimed that the United States could not secure an injunction because the defendants had ceased their allegedly illegal conduct. *Id.* at 631-32. In rejecting this argument, *W. T. Grant Co.* held that the United States may obtain an injunction if the government shows "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  8:17-cv-00161-JLS-JEM | Date:  May 26, 2017 |
| Title:  Consumer Financial Protection Bureau v. Vincent Howard et al. | |

case alive."  345 U.S. at 633.  In determining whether this standard has been satisfied, courts consider:

> the degree of scienter, whether the conduct was an isolated instance or recurrent, whether the defendants' current occupations position them to commit future violations, the degree of harm consumers suffered from defendants' unlawful conduct, and defendants' recognition of their own culpability and the sincerity of their assurances (if any) against future violations.

*F.T.C. v. Magui Publishers, Inc.*, No. CIV. 89-3818RSWL(GX), 1991 WL 90895, at *15 (C.D. Cal. Mar. 28, 1991), *aff'd*, 9 F.3d 1551 (9th Cir. 1993).  At this early juncture, each of these factors suggest "some cognizable danger of recurrent violation."  *W. T. Grant Co.*, 345 U.S. at 633.  The CFPB alleges that Defendants developed their scheme with the intent to circumvent the 2010 TSR amendments, their current occupations would enable them to restart the debt relief practice, consumers allegedly incurred tens of millions of dollars in illegal charges due to Defendants and Morgan Drexen's violations of the TSR, and Defendants vigorously maintain that their debt relief practices were legal.  Thus, the Court DENIES Defendants' request to dismiss the CFPB's request for injunctive relief.

### D. <u>Failure to State a Claim</u>

Defendants assert that the CFPB's substantial assistance claim does not satisfy Rule 9(b)'s heightened pleading standard (Mem. at 15-20),[1] while the CFPB counters that Rule 9(b) does not apply, and that the agency has satisfied the standard in any event (Opp'n 10-14).

"[W]here fraud is not an essential element of a claim, only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of

___

[1] In this section of their Memorandum, Defendants focused exclusively on the CFPB's substantial assistance claim (Mem. 16-20), and after the CFPB noted this in its Opposition brief, Defendants did not suggest that their Rule 9(b) pleading argument extended beyond this count in their Reply (Reply at 5-9).

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:17-cv-00161-JLS-JEM | Date: May 26, 2017 |
| Title: Consumer Financial Protection Bureau v. Vincent Howard et al. | |

Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). "[I]f particular averments of fraud are insufficiently pled under Rule 9(b), a district court should 'disregard' those averments, or 'strip' them from the claim[,]" and determine whether the remaining allegations support a claim. *Id.* at 1105.

There is no basis for applying Rule 9(b)'s heightened pleadings standing to count three because a substantial assistance claim under the TSR does not sound in fraud. To succeed on its substantial assistance claim, CFPB must show "a person [1] . . . provide[d] substantial assistance or support [2] to any seller or telemarketer [3] when that person kn[ew] or consciously avoid[ed] knowing that the seller or telemarketer [was] engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 . . ." 16 C.F.R. § 310.3(b). Although the CFPB alleges that Intake Specialists made misrepresentations to consumers about the bankruptcy contracts, and the advertisements Defendants approved deceptively claimed that there were no upfront fees for Defendants' debt relief service, Defendants could be held liable for providing substantial assistance even if they did not make these representations to consumers. At most, only the CFPB's allegations that Defendants made misrepresentations about their debt relief services would be subject to Rule 9(b), but the CFPB states a claim without these allegations. *See Vess*, 317 F.3d at 1105. In any event, Rule 9(b) would not apply because, "[u]nlike the elements of common law fraud, the [CFPB] need not prove scienter, reliance, or injury . . . ." *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 n.7 (10th Cir. 2005); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (comparing the allegations in a complaint to the elements of fraud to determine whether an averment "sounds in fraud").

This holding comports with the decisions of most district courts that have addressed the issue. *See, e.g.*, *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008) (rejecting the argument that violations of the TSR must be pleaded with specificity under Rule 9(b)); *United States v. Dish Network, L.L.C.*, 667 F. Supp. 2d 952, 961 (C.D. Ill. 2009) (applying Rule 8 to a substantial assistance claim under the TSR); *FTC v. Consumer Health Benefits Ass'n*, No. 10 CIV. 3551 ILG RLM, 2012 WL 1890242, at *7 (E.D.N.Y. May 23, 2012).

Defendants do not challenge the adequacy of the CFPB's pleadings under Rule 8, and the Court finds these allegations to be sufficiently plausible to state a claim.

___

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:17-cv-00161-JLS-JEM                                                                      Date: May 26, 2017
Title: Consumer Financial Protection Bureau v. Vincent Howard et al.

___

Accordingly, the Court DENIES Defendants' request to dismiss count three for failure to state a claim.

### E. Judicial Estoppel

For judicial estoppel to apply, (1) a party must take "clearly inconsistent" positions, (2) the court must have adopted the party's argument in the prior suit, and (3) the party sought to be estopped must "derive an unfair advantage or impose an unfair detriment" as a result of the inconsistency. *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001). Essentially, Defendants claim that, by failing to include them in the original complaint, the CFPB should be barred from bringing this subsequent enforcement action against them. (Mem. 20.) Not so. Although the CFPB's decision not to name Defendants in the *Morgan Drexen* litigation may have statute-of-limitations implications, the agency's choice to file suit solely against Morgen Drexen, alleging that the company committed various violations of the TSR, is not "clearly inconsistent" with the agency subsequent decision to take action against Defendants. Nor have Defendants demonstrated that this Court relied on any representation that would result in the CFPB receiving an unfair advantage or imposing an unfair burden on Defendants. As such, Defendants' Motion to Dismiss the CFPB's Complaint based on judicial estoppel is DENIED.

### F. Issue Preclusion

The preclusive effect of a federal judgment in a federal-question suit is a question of federal law. *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). To warrant the application of offensive non-mutual issue preclusion, a moving party must demonstrate "(1) there was a full and fair opportunity to litigate the identical issue in the prior action; (2) the issue was actually litigated in the prior action; (3) the issue was decided in a final judgment, and (4) the party against whom issue preclusion is asserted was a party or in privity with a party to the prior action." *Syverson v. Int'l Bus. Machines Corp.*, 472 F.3d 1072, 1078 (9th Cir. 2007) (citations omitted). Defendants have not satisfied their burden under these elements: the *Morgan Drexen* action did not resolve whether Morgan

___

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 8:17-cv-00161-JLS-JEM | Date: May 26, 2017 |
| Title: Consumer Financial Protection Bureau v. Vincent Howard et al. | |

Drexen acted alone or in concert with others, and the suit ended in a default judgment, not a decision on the merits. Accordingly, the Court DENIES Defendants' Motion to Dismiss the CFPB's complaint under the doctrine of offensive non-mutual issue preclusion.

### G. Statute of Limitations

Finally, the parties dispute whether any statute of limitations narrows the temporal scope of this litigation. (Mem. 24-25; Opp'n 19-20.) The Court, however, need not resolve this question now, because—even if some of the alleged conduct occurred outside the applicable statute of limitations period—other alleged conduct occurred within the three-year statute of limitation that Defendants insist applies to this action (Mem. at 24-25). *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (observing that dismissal of a claim on the pleadings is appropriate only when no actionable conduct occurred within the applicable statute of limitations period). According, Defendants' Motion to Dismiss the CFPB's complaint in part as untimely is DENIED.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED.

Initials of Preparer: tg

---