R. GABRIEL D. O'MALLEY, MA Bar #651432
Acting Deputy Enforcement Director for Litigation
(Phone: 202-435-9747)
JAN SINGELMANN, DC Bar # 999087
 (E-mail: jan.singelmann@cfpb.gov)
(Phone: 202-435-9670)
AMY RADON, CA Bar # 277727
(E-mail: amy.radon@cfpb.gov)
(Phone: 202-435-9142)
KEVIN FRIEDL, NY Bar # 5240080
(E-mail: kevin.friedl@cfpb.gov)
(Phone: 202-435-9268)
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE HARTMANN, CA Bar # 264787 – Local Counsel
(Phone: 415-844-9787)
(E-mail: leanne.hartmann@cfpb.gov)
301 Howard Street, Suite 1200
San Francisco, CA 94105
Fax: (415) 844-9788

Attorneys for Plaintiff
Consumer Financial Protection Bureau

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Plaintiff / Counterdefendant,<br><br>v.<br><br>Vincent Howard, Lawrence W. Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP,<br><br>Defendants / Counterclaimants. | Case No. 8:17-CV-00161 (JLS) (JEMx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMS**<br><br>**HON. JOSEPHINE L. STATON**<br><br>**Date: October 13, 2017**<br>**Time: 2:30 p.m.**<br>**Place: Courtroom 10-A (Santa Ana)** |

## NOTICE OF MOTION TO DISMISS COUNTERCLAIMS

Please take notice that on October 13, 2017, at 2:30 p.m., in Courtroom 10-A of the Ronald Reagan Federal Building and United States Courthouse, 411 West 4th Street, Santa Ana, California, Plaintiff Consumer Financial Protection Bureau will move this Court to dismiss the counterclaims filed by Defendants Vincent Howard, Lawrence W. Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim.

This Motion is based on the accompanying Memorandum of Points and Authorities and the pleadings and papers filed in this action.

Counsel for the Bureau conferred with counsel for Defendants on August 22, 2017 but the parties were unable to reach a resolution other than as to the date of the hearing. Counsel for Defendants expects to oppose this Motion.

Dated: August 28, 2017

Respectfully submitted,

MARY MCLEOD
General Counsel

ANTHONY ALEXIS
Enforcement Director

JOHN R. COLEMAN
Deputy General Counsel

R. GABRIEL D. O'MALLEY
Acting Deputy Enforcement Director

STEVEN Y. BRESSLER
Assistant General Counsel

*/s/     Kevin E. Friedl*
Kevin E. Friedl
Jan Singelmann
Amy Radon
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Phone: (202) 435-9268
Fax: (202) 435-7722

*Counsel for Plaintiff*

i

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................2

    A. *Morgan Drexen* Litigation .........................................................................2

    B. The Bureau's Complaint Against Defendants.............................................3

    C. Defendants' Counterclaims Against the Bureau ..........................................4

LEGAL STANDARD............................................................................................5

ARGUMENT .........................................................................................................5

  I. The Court Lacks Jurisdiction Over Defendants' Counterclaims for
     Money Damages Because They Are Barred by Sovereign Immunity ..............5

    A. The Court Lacks Jurisdiction Over the Wrongful Injunction
      Counterclaim ................................................................................................6

      1. The APA Does Not Permit the Wrongful Injunction Counterclaim..........6

      2. The FTCA Does Not Permit the Wrongful Injunction Counterclaim .......7

      3. The Tucker Act Does Not Permit the Wrongful Injunction
        Counterclaim .........................................................................................10

    B. The Court Lacks Jurisdiction Over the First Amendment
      Counterclaim to the Extent It Seeks Money Damages ..............................11

  II. Defendants Lack Standing to Bring Their First Amendment
      Counterclaim ................................................................................................11

  III. Defendants' First Amendment Counterclaim Fails to State a Claim..........14

  IV. Defendants' First Amendment Counterclaim Should be Dismissed
      As Duplicative of Their Affirmative Defenses .............................................16

CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*Alexander v. United States,*
509 U.S. 544 (1993) ................................................................. 15, 16

*Allen v. Veterans Admin.,*
749 F.2d 1386 (9th Cir. 1984) ............................................... 9

*Aviva USA Corp. v. Vazirani,*
902 F. Supp. 2d 1246 (D. Ariz. 2012) ................................. 17

*Aviva USA Corp. v. Vazirani,*
632 F. App'x 885 (9th Cir. 2015) ......................................... 18

*Berger v. Seyfarth Shaw, LLP,*
2008 WL 2468478 (N.D. Cal. June 17, 2008) ..................... 16

*Bowen v. Massachusetts,*
487 U.S. 879 (1988) ................................................................. 6

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
447 U.S. 557 (1980) ........................................................... 12, 15

*City of Los Angeles v. Lyons,*
461 U.S. 95 (1983) ................................................................. 14

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ........................................................... 12, 13

*Corey v. McNamara,*
265 F. App'x 555 (9th Cir. 2008) ......................................... 9

*Dichter-Mad Family Partners, LLP v. United States,*
709 F.3d 749 (9th Cir. 2013) ............................................... 9

iii

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*D.L. by & through Junio v. Vassilev,*
  858 F.3d 1242 (9th Cir. 2017) ................................................................ 9

*Dunn & Black, P.S. v. United States,*
  492 F.3d 1084 (9th Cir. 2007) ................................................................ 5

*FDIC v. Craft,*
  157 F.3d 697 (9th Cir. 1998) .................................................................. 8

*FDIC v. Meyer,*
  510 U.S. 471 (1994) ................................................................................ 5

*FTC v. Apply Knowledge, LLC,*
  2015 WL 12780893 (D. Utah Apr. 9, 2015) ........................................... 8

*FTC v. BF Labs Inc.,*
  2015 WL 12834056 (W.D. Mo. June 15, 2015) ..................................... 8

*Hodge v. Dalton,*
  107 F.3d 705 (9th Cir. 1997) .................................................................. 5

*In re Messingham,*
  2016 WL 8736835 (Bankr. C.D. Cal. Mar. 16, 2016) .......................... 17

*In re Messingham,*
  2017 WL 1396060 (C.D. Cal. Jan. 13, 2017) ....................................... 17

*In re Nat'l Sec. Letter,*
  863 F.3d 1110 (9th Cir. 2017) ........................................................ 15, 16

*In re Pegasus Gold Corp.,*
  394 F.3d 1189 (9th Cir. 2005) .............................................................. 10

*In re R. M. J.,*
  455 U.S. 191 (1982) .............................................................................. 15

*Johnson v. Riverside Healthcare Sys., LP,*
  534 F.3d 1116 (9th Cir. 2008) ................................................................ 5

*Lance v. United States,*
   70 F.3d 1093 (9th Cir. 1995) ............................................................ 8

*Lehman v. Nakshian,*
   453 U.S. 156 (1981).......................................................................... 5

*Litton Indus., Inc. v. FTC,*
   676 F.2d 364 (9th Cir. 1982) .......................................................... 12

*Love v. United States,*
   60 F.3d 642 (9th Cir. 1995) .............................................................. 8

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)........................................................................ 12

*Maldonado v. Morales,*
   556 F.3d 1037 (9th Cir. 2009) ........................................................ 16

*Mayfield v. United States,*
   599 F.3d 964 (9th Cir. 2010) .......................................................... 14

*Robinson v. United States,*
   586 F.3d 683 (9th Cir. 2009) ............................................................ 5

*Rowe v. United States,*
   633 F.2d 799 (9th Cir. 1980) .......................................................... 10

*Sheridan v. United States,*
   487 U.S. 392 (1988).......................................................................... 7

*Spawr v. United States,*
   796 F.2d 279 (9th Cir. 1986) ............................................................ 9

*Steel Co. v. Citizens for a Better Env't,*
   523 U.S. 83 (1998).......................................................................... 14

*Stickrath v. Globalstar, Inc.,*
   2008 WL 2050990 (N.D. Cal. May 13, 2008)................................ 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Tenneco Inc. v. Saxony Bar & Tube, Inc.,*
   776 F.2d 1375 (7th Cir. 1985) ............................................................. 17

*Tucson Airport Auth. v. Gen. Dynamics Corp.,*
   136 F.3d 641 (9th Cir. 1998) ............................................................... 6

*United States v. Martech USA, Inc.,*
   800 F. Supp. 865 (D. Alaska 1992) ...................................................... 9

*United States v. Mitchell,*
   463 U.S. 206 (1983) ........................................................................... 10

*United States v. Park Place Assocs., Ltd.,*
   563 F.3d 907 (9th Cir. 2009) .................................................... 5, 7, 11

*United States v. Placer Mining Corp.,*
   2007 WL 1576559 (D. Idaho May 30, 2007) ........................................ 9

*United States v. Schiff,*
   379 F.3d 621 (9th Cir. 2004) ............................................................. 12

*United States v. Smith,*
   499 U.S. 160 (1991) ............................................................................. 7

*Whitmore v. Arkansas,*
   495 U.S. 149 (1990) ........................................................................... 13

*WildEarth Guardians v. Dep't of Agric.,*
   795 F.3d 1148 (9th Cir. 2015) ...................................................... 11, 12

*Wilkins v. United States,*
   279 F.3d 782 (9th Cir. 2002) ............................................................. 11

**State Cases**

*City of S. San Francisco v. Cypress Lawn Cemetery Ass'n,*
   14 Cal. Rptr. 2d 323 (Cal. Ct. App. 1992) ........................................... 8

*Dickey v. Rosso,*
   100 Cal. Rptr. 358 (Cal. Ct. App. 1972) ............................................................ 8, 10

*Wallace v. Miller,*
   189 Cal. Rptr. 637 (Cal. Ct. App. 1983) ............................................................ 8, 10

**Statutes**

5 U.S.C. § 702 ................................................................................................ 6, 11

28 U.S.C. § 1346(b)(1) .......................................................................................... 7

28 U.S.C. § 2675(a) ............................................................................................... 9

28 U.S.C. § 2680(h) ............................................................................................... 8

28 U.S.C. § 1346 ................................................................................................. 10

28 U.S.C. § 1491 ................................................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................................... 2

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 2

Fed. R. Civ. P. 13(a)(1)(A) ................................................................................... 10

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

The Consumer Financial Protection Bureau sued Defendants Vincent Howard, Lawrence Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP (collectively, "Defendants") for engaging in and substantially assisting deceptive and abusive practices as part of a long-running unlawful debt relief scheme. That scheme is well known to this Court from the Bureau's prior lawsuit against Morgan Drexen, Inc. and its founder and CEO, Walter Ledda, both of whom took part in the enterprise. *See CFPB v. Morgan Drexen, Inc.*, No. 8:13-cv-01267-JLS (C.D. Cal.). The Bureau's Complaint in this case alleges that Defendants, together with Morgan Drexen and Ledda, fleeced financially strapped consumers of more than $130 million in unlawful fees. Then, after Morgan Drexen went out of business, Defendants continued the debt relief scheme and collected at least $5.3 million from the same victimized consumers.

In response to the Bureau's Complaint, Defendants bring two counterclaims. The first alleges that the Bureau imposed an unconstitutional prior restraint on Defendants' speech by (a) asking the Court for injunctive relief in this case, and (b) having asked the Court to hold Defendants in contempt in the *Morgan Drexen* case. Defendants seek a declaration that this suit is unconstitutional, an injunction barring the Bureau from proceeding with the suit, and money damages. The second counterclaim alleges that Defendants were wrongfully enjoined during the *Morgan Drexen* case when, on motion by the Bureau, this Court issued an order prohibiting Defendants from continuing their role in the debt relief scheme, which order the Ninth Circuit subsequently reversed and remanded. The sole remedy Defendants seek for this claim is money damages for the business losses they allegedly incurred while the order was in place.

The Court should dismiss both counterclaims for several reasons. First, the Court should dismiss Defendants' claims for money damages under Federal Rule

of Civil Procedure 12(b)(1) because those claims are barred by the sovereign immunity of the federal government. Defendants thus cannot pursue money damages for their First Amendment claim, and cannot pursue their wrongful injunction claim at all. Second, Defendants lack standing to bring their First Amendment claim because they have failed to identify any injury in fact that this Court could redress if it ruled in their favor. That claim therefore must be dismissed in its entirety under Rule 12(b)(1). Third, Defendants' First Amendment counterclaim should be dismissed under Rule 12(b)(6) for failure to state a claim. Even if Defendants' deceptive advertising were considered protected speech, Defendants failed to plausibly allege that the Bureau imposed a prior restraint on that speech. Finally, the Court should exercise its discretion to dismiss Defendants' First Amendment counterclaim as redundant with their affirmative defenses.

For all these reasons, the Court should dismiss Defendants' counterclaims in their entirety.

## BACKGROUND

### A. *Morgan Drexen* Litigation

The unlawful debt relief scheme at the heart of this case was previously the subject of a Bureau enforcement action before this Court against Morgan Drexen and its founder and CEO, Walter Ledda. The Bureau, alleging multiple violations of the Telemarketing Sales Rule ("TSR") and Consumer Financial Protection Act, filed suit against Morgan Drexen and Ledda in 2013. *See* Complaint, *CFPB v. Morgan Drexen, Inc.*, No. 8:13-cv-01267-JLS (C.D. Cal. Aug. 20, 2013) (ECF No. 1). The violations stemmed from a scheme in which Morgan Drexen and Ledda conspired with others to collect more than $130 million in unlawful fees from financially strapped consumers seeking debt relief services. The case on the merits against Morgan Drexen effectively ended when the Court issued terminating sanctions against the company for having manufactured evidence during the course of the litigation. ECF No. 284. Soon thereafter the Court issued an injunction

prohibiting Morgan Drexen from, among other things, continuing to collect unlawful fees and from advertising or marketing any debt relief service that charged such fees. ECF No. 306. The company subsequently filed for bankruptcy.

After Morgan Drexen went out of business, Defendants in this case, who had previously worked with Morgan Drexen as part of the scheme, effectively stepped into Morgan Drexen's shoes to continue the enterprise. They used the same former Morgan Drexen employees and the same customer files to collect millions of dollars of the same fees from the same Morgan Drexen customers. To protect these consumers, the Bureau moved this Court to hold Defendants in contempt for violating the injunction against Morgan Drexen by continuing the scheme. ECF No. 348. The Court did so in an order finding Defendants were bound by the injunction as successors to Morgan Drexen, holding them in contempt, and ordering them to comply with the injunction. ECF No. 386. Defendants appealed, and the Ninth Circuit reversed and remanded on the ground that, although Defendants might be bound by the injunction under a different legal theory, they were not successors to Morgan Drexen. *CFPB v. Howard Law, P.C.*, No. 15-56089 (9th Cir. Oct. 26, 2016) (mem.). Based on that ruling, the Bureau elected not to pursue contempt sanctions any further and the Court ordered the case closed.

**B. The Bureau's Complaint Against Defendants**

On January 30, 2017, the Bureau filed a complaint against Defendants to hold them accountable for their role in the unlawful debt relief scheme. *See* Complaint, *CFPB v. Vincent Howard*, No. 8:17-cv-00161-JLS (C.D. Cal.) (ECF No. 1). The Complaint alleges that Defendants violated the TSR by: (1) charging and collecting illegal upfront fees for debt relief services; (2) falsely representing in advertisements that they did not charge upfront fees for debt relief services, when they did; and (3) providing substantial assistance or support to Morgan Drexen's violations of the TSR. *Id.* Defendants moved to dismiss the Complaint on multiple grounds, including that the Complaint constitutes an improper attempt to

3

regulate the practice of law. ECF No. 27. The Court comprehensively rejected Defendants' arguments in an order earlier this year denying the motion and allowing this case to proceed. ECF No. 42.

**C. Defendants' Counterclaims Against the Bureau**

Defendants now raise two counterclaims. The first alleges that Defendants' free-speech rights have been infringed by (1) the Bureau's Complaint in this case, which "seeks a permanent injunction barring the Attorneys from marketing" debt relief services, Defs.' Counterclaim ("CC") ¶ 48, and (2) the Bureau's contempt motion in *Morgan Drexen*, which "forc[ed] the Attorneys from this line of legal practice" and "effectively shut down the Attorneys['] speech on these important consumer issues," *id.* ¶ 49. Defendants allege that the Bureau's actions "constitute an extralegal and unconstitutional prior restraint of speech." *Id.* ¶ 50. As recompense they seek declaratory and injunctive relief, money damages for lost revenue and other economic harm, and attorneys' fees and costs. *Id.* ¶ 53. Defendants' second counterclaim alleges that they were wrongfully enjoined during the *Morgan Drexen* litigation and seeks $25 million in damages. *Id.* ¶¶ 65-66. While acknowledging that the Federal Rules of Civil Procedure did not require the Bureau, as a federal agency, to provide security in the event the injunction was later withdrawn, *id.* ¶ 60, Defendants allege that they nonetheless have a claim against the Bureau that sounds in either tort or contract, *id.* ¶¶ 61-62.[1]

---

[1] Defendants make one passing reference to the Due Process Clause, CC ¶ 4, but nowhere do they actually allege a violation of their due process rights. The Bureau does not understand Defendants to be attempting to plead such a claim, nor have they done so. The reference instead may be a vestige of an earlier filing in a different case that contains a First Amendment counterclaim nearly identical, word-for-word, to Defendants' counterclaim here. *Compare* Second Am. Answer and Counterclaim ¶¶ 3-5, 31-38, *CFPB v. Nationwide Biweekly Admin., Inc.*, No. 3:15-cv-02106 (N.D. Cal. Feb. 2, 2016) (ECF No. 67), *with* CC ¶¶ 3-5, 46-53.

# LEGAL STANDARD

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the claimant must prove that the court has jurisdiction. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). In deciding whether the claimant has met its burden, "[a] district court may hear evidence regarding jurisdiction and resolve factual disputes where necessary. No presumptive truthfulness attaches to [claimant's] allegations." *Id.* (internal formatting and citation omitted). On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true all plausible factual allegations in the complaint, but may dismiss a claim based on the "absence of sufficient facts alleged under a cognizable legal theory" or on the "lack of a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008).

# ARGUMENT

## I.   The Court Lacks Jurisdiction Over Defendants' Counterclaims for Money Damages Because They Are Barred by Sovereign Immunity

It is foundational that "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Any waiver of immunity must be 'unequivocally expressed.'" *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997) (quoting *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981)). The party seeking to assert a claim against the federal government bears the burden of demonstrating such a waiver. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009). "Unless [that party] satisfies the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress, it must be dismissed." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

Defendants have not met their burden to show that their damages claims fall within any unequivocally expressed wavier of immunity. Both of their counterclaims seek money damages: Damages are the sole form of relief for the

5

wrongful injunction claim, CC ¶¶ 65-66, and one of several sought for the First Amendment claim, *id.* ¶ 53. Because these claims are barred by sovereign immunity, the Court lacks jurisdiction over the wrongful injunction claim *in toto* and the First Amendment claim to the extent it seeks damages.

Defendants' counterclaim cites the Administrative Procedure Act ("APA"), *id.* ¶ 4, but the APA's limited waiver of sovereign immunity does not allow suits for money damages, *see* 5 U.S.C. § 702 (waiving immunity for certain actions "seeking relief other than money damages"). Defendants also allege that their wrongful injunction claim sounds in either tort or contract, CC ¶¶ 61-62, but as explained below neither the Federal Tort Claims Act ("FTCA"), which provides a limited waiver of immunity for tort suits, nor the Tucker Act, which does the same for contract claims, would give this Court jurisdiction over Defendants' claim.

Because Defendants cannot identify any waiver of sovereign immunity that would allow their damages claims to proceed, the Court should dismiss those claims for lack of jurisdiction.

## A. The Court Lacks Jurisdiction Over the Wrongful Injunction Counterclaim

Defendants can identify no unequivocally expressed waiver of sovereign immunity that would allow their wrongful injunction claim to move forward. It should therefore be dismissed.

### 1. The APA Does Not Permit the Wrongful Injunction Counterclaim

Defendants' counterclaim cites the APA, but "[b]y its own terms," the APA's limited waiver of immunity "does not apply to claims for 'money damages.'" *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998) (quoting 5 U.S.C. § 702). "The term 'money damages,' … normally refers to a sum of money used as compensatory relief. Damages are given to the plaintiff to *substitute* for a suffered loss." *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) (quotation marks omitted). Defendants here seek just such

6

compensatory damages from the Bureau. *See* CC ¶ 66 (requesting "general, special and consequential damages" as compensation for alleged economic harm to Defendants' businesses). The APA does not allow this.

### 2.  The FTCA Does Not Permit the Wrongful Injunction Counterclaim

Defendants also allege that their wrongful injunction claim sounds in tort, CC ¶ 61, which would require that they proceed under the FTCA. *See, e.g.*, *United States v. Smith*, 499 U.S. 160, 163 (1991) (FTCA is "the exclusive remedy for torts committed by Government employees in the scope of their employment"). Subject to certain exceptions, the FTCA "gives federal courts jurisdiction over claims against the United States for money damages 'for injury or loss of property … caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Sheridan v. United States*, 487 U.S. 392, 398 (1988) (quoting 28 U.S.C. § 1346(b)(1)). For three separate and individually-sufficient reasons, the FTCA's limited waiver of immunity does not authorize Defendants' wrongful injunction counterclaim.

First, Defendants could not pursue this counterclaim under the FTCA because California does not recognize a tort of wrongful injunction. The FTCA's limited waiver of immunity applies only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Courts thus "have long recognized that a court must look to state law for the purpose of defining the actionable wrong for which the United States shall be liable" under the FTCA. *Park Place Assocs.*, 563 F.3d at 922 (internal formatting omitted). The acts that form the basis of Defendants' counterclaim took place in California, *see, e.g.*, CC ¶ 65 (alleging that Defendants were injured by injunction issued in Central District of California), but California state law does not recognize the tort of wrongful injunction that Defendants seek to plead. As the California

7

Court of Appeals has explained, when an injunction has issued and later been withdrawn,

> [a] defendant's common-law right to be made whole at the conclusion of litigation is limited to an independent action for abuse of process or malicious prosecution. His right to recover damages caused by an improperly issued injunction on his mere showing that such damage occurred, is a purely statutory rule in California ….

*Dickey v. Rosso*, 100 Cal. Rptr. 358, 361 (Cal. Ct. App. 1972); *accord City of S. San Francisco v. Cypress Lawn Cemetery Ass'n*, 14 Cal. Rptr. 2d 323, 327 (Cal. Ct. App. 1992); *Wallace v. Miller*, 189 Cal. Rptr. 637, 640-43 (Cal. Ct. App. 1983). Defendants therefore cannot proceed on this counterclaim under the FTCA. *Cf. generally Love v. United States*, 60 F.3d 642, 644-45 (9th Cir. 1995) (dismissing claim brought under FTCA because plaintiffs had not established a tort under state law).[2]

Second, even if Defendants were pursuing a tort recognized under state law, they could not pursue it under the FTCA because they have named the wrong party. "The United States is the only proper defendant in an FTCA action." *Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995). "Although [FTCA] claims can arise from the acts or omissions of United States agencies … , an agency itself cannot be sued under the FTCA." *FDIC v. Craft*, 157 F.3d 697, 706-07 (9th Cir.

---

[2] Had Defendants instead pleaded this claim as one for malicious prosecution or abuse of process, it would be barred by the FTCA's intentional tort exception. *See* 28 U.S.C. § 2680(h) (excepting from FTCA's waiver of immunity "[a]ny claim arising out of … malicious prosecution [or] abuse of process," among others); *see also FTC v. BF Labs Inc.*, No. 4:14-cv-00815, 2015 WL 12834056, at *2 (W.D. Mo. June 15, 2015) (dismissing wrongful injunction claim against FTC because claim "rests on … alleged malicious prosecution and abuse of process" and thus was barred by intentional tort exception); *FTC v. Apply Knowledge, LLC*, No. 2:14-cv-00088, 2015 WL 12780893, at *2 (D. Utah Apr. 9, 2015) (same).

8

1998) (dismissing all claims against FDIC for lack of jurisdiction); *accord Dichter-Mad Family Partners, LLP v. United States*, 709 F.3d 749, 761 (9th Cir. 2013) (recognizing that "clear controlling authority" barred plaintiff from pursuing FTCA claim against the SEC instead of the United States itself); *Allen v. Veterans Admin.*, 749 F.2d 1386, 1388 (9th Cir. 1984) ("Individual agencies of the United States may not be sued" under the FTCA.); *Corey v. McNamara*, 265 F. App'x 555, 557 (9th Cir. 2008) (mem.) (FTCA did not authorize suit against U.S. Postal Service). The only party against which Defendants seek to press their counterclaim is the Bureau. The FTCA does not allow this.

Third, even if Defendants had named the correct party, the FTCA would still not permit their claim because Defendants failed to exhaust administrative remedies. "Before a plaintiff can file an FTCA action in federal court … he must exhaust the administrative remedies for his claim" by presenting the claim to the agency and either securing a final denial from the agency or waiting six months without a response. *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017) (citing 28 U.S.C. § 2675(a)). The exhaustion requirement is jurisdictional. *Id.* Defendants here never filed such an administrative claim. *See* Decl. of Margaret H. Plank, attached to this Motion. Indeed, Defendants do not allege that they did so.

The sole exception from the administrative-exhaustion requirement is that it does not apply to a "third party complaint, cross-claim, or counterclaim." *See* 28 U.S.C. § 2675(a). The Ninth Circuit, however, holds that this exception applies only to counterclaims that are compulsory. *See, e.g.*, *Spawr v. United States*, 796 F.2d 279, 281 (9th Cir. 1986); *United States v. Martech USA, Inc.*, 800 F. Supp. 865, 867 (D. Alaska 1992); *United States v. Placer Mining Corp.*, No. 04-cv-126, 2007 WL 1576559, at *2 (D. Idaho May 30, 2007). A counterclaim is compulsory if it "arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core

of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1196 (9th Cir. 2005); *see also* Fed. R. Civ. P. 13(a)(1)(A). The Bureau's claims against Defendants allege that their business operations violate the TSR. In contrast, Defendants' counterclaim alleges they were wrongfully bound by this Court's injunction in *Morgan Drexen* despite being non-parties to that litigation. The counterclaim does not arise from the same set of operative facts as the Bureau's affirmative claims. It is therefore a permissive counterclaim that Defendants were required to administratively exhaust. Their failure to do so requires dismissal for lack of jurisdiction.

### 3.  The Tucker Act Does Not Permit the Wrongful Injunction Counterclaim

Finally, Defendants allege in the alternative that this counterclaim sounds in contract. *See* CC ¶ 62. An initial problem for Defendants is that there is no such contract claim under California state law. *See, e.g.*, *Dickey*, 100 Cal. Rptr. at 361 (common law remedies for an injunction since dissolved are limited to an action for abuse of process or malicious prosecution); *Wallace*, 189 Cal. Rptr. at 640-43 (no recovery available against party that was not required to post bond). But even if Defendants had a valid claim, it would not belong in this Court. The Tucker Act provides a limited waiver of sovereign immunity for contract claims, *see United States v. Mitchell*, 463 U.S. 206, 215 (1983), but "vests exclusive jurisdiction of contract claims against the United States in excess of $10,000 in the Court of Claims." *Rowe v. United States*, 633 F.2d 799, 800 (9th Cir. 1980) (citing 28 U.S.C. §§ 1346, 1491). Defendants' counterclaim alleges damages far in excess of $10,000. *See* CC ¶ 65 ("The Attorneys estimate that they have been damaged in an amount approaching or exceeding $25 million"). With respect to this counterclaim, therefore, "the Tucker Act has not waived the sovereign immunity of the United States to suit in the Central District of California, and accordingly, to the extent

[Defendants' counterclaim] relies on the Tucker Act for its waiver of sovereign immunity, [this] court lack[s] authority" to hear it. *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 928 (9th Cir. 2009).

## B. The Court Lacks Jurisdiction Over the First Amendment Counterclaim to the Extent It Seeks Money Damages

As noted, the APA's limited waiver of sovereign immunity does not extend to suits for "money damages." *See* 5 U.S.C. § 702. To the extent Defendants seek money damages for the alleged infringement of their First Amendment rights, *see* CC ¶ 53, the APA does not give this Court jurisdiction to adjudicate that claim for relief, *see generally Wilkins v. United States*, 279 F.3d 782, 785 (9th Cir. 2002) (plaintiff's claims for money damages stemming from alleged constitutional violation were barred by sovereign immunity).

## II. Defendants Lack Standing to Bring Their First Amendment Counterclaim

Defendants' First Amendment claim should be dismissed under Rule 12(b)(1) for lack of standing as well. Defendants allege that the Bureau infringed their free-speech rights by:

1. "seek[ing] a permanent injunction barring the Attorneys from marketing" debt relief services in the Bureau's prayer for relief in this case, CC ¶ 48, and

2. "forcing the Attorneys from this line of legal practice" by having moved this Court in *Morgan Drexen* for an order holding Defendants in contempt, *id.* ¶ 49.

Defendants bear the burden of establishing standing to bring this claim. *See WildEarth Guardians v. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015). To do so, they must allege that: "(1) [they have] suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a

favorable court decision." *See id.* (quotation marks omitted). Defendants cannot meet their burden to establish these elements.

With respect to the Bureau's conduct in this case—*i.e.*, having asked for an injunction in its prayer for relief—Defendants have not identified any injury in fact caused by that conduct. Simply including such a request in the Complaint does not cause any First Amendment injury to Defendants, and certainly none that is "concrete" and "actual," because the Bureau's prayer for relief does not itself restrain Defendants' speech. The Bureau's Complaint alleges that the speech at issue is deceptive and misleading commercial speech that is not protected under the First Amendment. *See, e.g.*, *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980). Injunctive relief has long been recognized as an appropriate means of remedying such deceptive commercial speech. *See, e.g.*, *United States v. Schiff*, 379 F.3d 621, 630 (9th Cir. 2004) (upholding injunction "as an appropriate restriction on fraudulent commercial speech"); *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 373-74 (9th Cir. 1982) (rejecting First Amendment challenge to FTC order prohibiting certain deceptive advertisements). There is nothing unusual, then, in the Bureau having requested such injunctive relief as the Court finds to be appropriate, and the Bureau is unaware of any case in which a defendant was held to suffer injury in fact merely from the plaintiff including a similar request for relief in its complaint.

Even if the Court eventually does issue an injunction, doing so would cause Defendants First Amendment injury only if the injunction unconstitutionally burdened their protected speech in some way. If *that* is the injury Defendants mean to allege, their counterclaim again falls short because any such injury is at this point "conjectural" and "hypothetical" rather than "actual or imminent." *Cf. Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court has "repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." *Clapper v.*

*Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks omitted). Yet the injury alleged here—infringement of Defendants' free speech rights by an unconstitutional injunction—could not materialize unless and until: (1) the Court finds at the end of this case that Defendants are liable for violations of the TSR; (2) the Court finds that those violations warrant injunctive relief; *and* (3) the Court orders an injunction that unconstitutionally burdens Defendants' speech (presumably over Defendants' specific objections). While the Bureau is confident that it will prove the violations alleged in its Complaint, this chain of events is too attenuated at this point in time to establish a "certainly impending" risk that Defendants will suffer injury from an unconstitutional injunction. *See id.* at 409-10 (speculative chain of contingent events did not establish "impending" injury).

Defendants' theory of injury is particularly dubious given the Supreme Court's "reluctan[ce] to endorse standing theories that require guesswork as to how independent decisionmakers will exercise their judgment." *Id.* at 413 (plaintiffs' theory of injury was too attenuated, in part because it required predicting how a court would rule); *accord Whitmore v. Arkansas*, 495 U.S. 149, 159-60 (1990) (dismissing for lack of standing; "It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case."). And Defendants' theory would lead to the strange result that a party could establish standing simply by alleging that the presiding court would later act unconstitutionally. Standing is not so easily manufactured, nor would there even be a need for Defendants to establish standing in that scenario because they could protect their rights simply by filing an appeal.

With respect to the Bureau's conduct in the *Morgan Drexen* litigation—*i.e.*, its motion asking the Court to hold Defendants in contempt—Defendants lack standing because any injury from the Court's now-inoperative contempt order is no longer redressable. Defendants' First Amendment counterclaim asks for "declaratory and injunctive relief, damages and attorneys' fees and costs." CC

¶ 53. But these avenues are either foreclosed to Defendants or would not actually address their alleged injury. The contempt order in *Morgan Drexen* was reversed by the Ninth Circuit on the ground that it "fail[ed] to clarify the exact basis" on which Defendants were bound as non-parties to the litigation. *CFPB v. Howard Law, P.C.*, No. 15-56089 (9th Cir. Oct. 26, 2016) (mem.). After that decision, the Bureau chose not to pursue contempt sanctions and the case was closed. The order no longer binds Defendants. Thus, a declaratory judgment that the since-reversed order also infringed Defendants' free speech would "not only [be] worthless to [Defendants], it is seemingly worthless to all the world." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998); *see also Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010) (no standing where declaratory judgment would have no practical effect and thus would not redress alleged injury).

Injunctive relief would be no better at redressing Defendants' alleged past injury because the contempt order no longer binds Defendants. *Cf. City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (standing to seek injunctive relief depends on likelihood of future injury, not allegations of past injury). And, as explained above, the Court lacks jurisdiction to redress Defendants' alleged injuries via money damages. Finally, an award for whatever attorneys' fees and costs Defendants incur in pursuing this litigation would itself do nothing to redress the injury they claim to have suffered from the *Morgan Drexen* order. In short, Defendants can identify no means by which the Court could remedy the First Amendment injury they claim the now-inoperative order caused them.

## III.   Defendants' First Amendment Counterclaim Fails to State a Claim

Defendants' First Amendment counterclaim should also be dismissed under Rule 12(b)(6) for failure to state a claim that the Bureau has imposed a prior restraint on Defendants' speech. Defendants identify the purportedly protected speech as their advertising and marketing of debt relief services. CC ¶¶ 47-48. They allege that the Bureau's actions in requesting injunctive relief in this case and

14

having requested contempt sanctions in *Morgan Drexen* "constitute an extralegal and unconstitutional prior restraint" of such speech. *Id.* ¶ 50.

As an initial matter, the Bureau disputes that the commercial speech at issue here is shielded by the First Amendment. The Bureau alleges in its Complaint that Defendants' advertising is false and deceptive, *see, e.g.*, Compl. ¶¶ 91-93, and thus is not protected speech under the First Amendment. *See Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."); *In re R. M. J.*, 455 U.S. 191, 203 (1982) ("Misleading advertising may be prohibited entirely."). But even accepting *arguendo* for consideration under Rule 12(b)(6) Defendants' assertion that the speech was protected, Defendants have failed to state a claim that the Bureau's actions constitute a prior restraint.

"The term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (quotation marks omitted). It is typically applied to "two types of government schemes requiring safeguards: censorship schemes and licensing schemes." *In re Nat'l Sec. Letter*, 863 F.3d 1110, 1127 (9th Cir. 2017). To be constitutional, such administrative schemes require specific procedural safeguards: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *Id.* at 1122.

Defendants have failed to state a claim that the Bureau's request for injunctive relief in this case constitutes a prior restraint because that request does not itself forbid, censor, or require a license for any speech. It instead merely

describes one form of relief the Bureau intends to seek should this Court determine that Defendants have engaged in deceptive advertising in violation of the TSR (in which case such advertising would not be protected anyway). The mere possibility that Defendants' speech may be enjoined in the future does not render the Bureau's prayer for relief a prior restraint. *Cf. Maldonado v. Morales*, 556 F.3d 1037, 1047 (9th Cir. 2009) (mere fact that a statute authorized injunctions against certain speech did not render the statute itself an unconstitutional prior restraint). For similar reason, Defendants have failed to state a claim that the Bureau's contempt motion in *Morgan Drexen* was a prior restraint. That motion did not "*forbid*[] certain communications … in advance of the time that such communications are to occur." *Alexander*, 509 U.S. at 550. It instead asked the Court to adjudicate whether Defendants were in contempt due to their ongoing participation in the unlawful debt relief scheme. Such a motion is not a prior restraint.

Defendants also fail to state a claim because they do not (and cannot) allege that they have been denied those procedural safeguards that are necessary for a system of prior restraints to pass constitutional muster. *Cf. In re Nat'l Sec. Letter*, 863 F.3d at 1122. Both of the challenged Bureau actions took the form of legal filings submitted to this Court. Even if those filings could somehow constitute prior restraints, it is undisputed that: (1) the Bureau did not "impose" them before seeking judicial review, but instead submitted them only after having filed suit in federal court; (2) Defendants have had access to expeditious judicial review of those filings; and (3) the Bureau has borne the burden of proof in both cases.

Defendants therefore have failed to allege facts sufficient to state a claim that the Bureau's actions have imposed a prior restraint on their protected speech.

## IV. Defendants' First Amendment Counterclaim Should be Dismissed As Duplicative of Their Affirmative Defenses

"Where [a] counterclaim is identical to [an] affirmative defense, a district court, within its sound discretion, may dismiss the counterclaim." *Berger v.*

16

1    *Seyfarth Shaw, LLP*, No. 07-cv-05279, 2008 WL 2468478, at *2 (N.D. Cal. June

2    17, 2008); *accord In re Messingham*, No. 2:14-AP-01525, 2016 WL 8736835, at

3    *6 (Bankr. C.D. Cal. Mar. 16, 2016) (dismissing redundant counterclaim without

4    leave to amend; doing so "simplifies the procedural posture of the action and

5    reduces costs going forward"), *report and rec. adopted*, 2017 WL 1396060 (C.D.

6    Cal. Jan. 13, 2017).

7         The Court should exercise its discretion to dismiss Defendants' First

8    Amendment counterclaim because it is functionally identical to several of their

9    affirmative defenses. Defendants' contention that their speech is accurate and

10   protected merely disagrees with the Bureau's characterization of their advertising.

11   That dispute is properly evaluated via the adjudication of the Bureau's lawsuit and

12   Defendants' affirmative defenses, not as a counterclaim. See *Stickrath v.*

13   *Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13,

14   2008) ("The label 'counterclaim' has no magic. What is really an answer or

15   defense to a suit does not become an independent piece of litigation because of its

16   label.") (quoting *Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379

17   (7th Cir. 1985)).

18        The counterclaim asserts that—contrary to the Bureau's allegations—

19   Defendants' advertising and marketing of debt relief services was "truthful and

20   accurate" commercial speech and thus constitutionally protected. CC ¶¶ 47-48. So

21   too, Defendants' Fourteenth through Twentieth Affirmative Defenses assert that

22   their advertising is truthful and non-misleading and that the Bureau's lawsuit

23   infringes their free-speech rights. Defs.' Answer ¶¶ 113-19. The issues raised by

24   the counterclaim thus can be fully adjudicated during the course of the Bureau's

25   affirmative case against Defendants. Indeed, a finding that Defendants' advertising

26   and marketing were deceptive would effectively resolve Defendants' First

27   Amendment claim because it would establish that the speech is not constitutionally

28   protected. *Cf. Aviva USA Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1272 (D. Ariz.

17

2012) (dismissing counterclaims as redundant with affirmative defenses because they would be rendered moot by the main action), *aff'd*, 632 F. App'x 885 (9th Cir. 2015). In the interest of simplifying the procedural posture of this case and reducing the burden on the parties and the Court going forward, the Court should exercise its discretion to dismiss the counterclaim as redundant with Defendants' affirmative defenses.

## CONCLUSION

For all the foregoing reasons, the Bureau respectfully requests that the Court dismiss Defendants' counterclaims.

Dated: August 28, 2017                    Respectfully submitted,

MARY MCLEOD                               ANTHONY ALEXIS
General Counsel                           Enforcement Director

JOHN R. COLEMAN                           R. GABRIEL D. O'MALLEY
Deputy General Counsel                    Acting Deputy Enforcement Director

STEVEN Y. BRESSLER                        */s/     Kevin E. Friedl*
Assistant General Counsel                 Kevin E. Friedl
                                          Jan Singelmann
                                          Amy Radon
                                          Consumer Financial Protection Bureau
                                          1700 G Street NW
                                          Washington, DC 20552
                                          Phone: (202) 435-9268
                                          Fax: (202) 435-7722

                                          *Counsel for Plaintiff*