1  | Douglas B. Vanderpool, Esq.  (SBN 162857)
2  | Heather A. Tovar, Esq.  (SBN 237004)
   | THE VANDERPOOL LAW FIRM
3  | 330 Main Street, Suite 203B
   | Seal Beach, CA 90740
4  | Tel:  562.431.6900; Fax: 714.276.0558
   | Email: doug@vanderpool-law.com; heather@vanderpool-law.com
5  |
6  | Attorneys for Howard Law, P.C.,
   | The Williamson Law Firm, LLC, Williamson &
7  | Howard, LLP, Vincent D. Howard,
   | and Lawrence Williamson
8  |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| CONSUMER FINANCIAL PROTECTION BUREAU, | Case No. 8:17-CV 00161 |
| Plaintiff, | |
| v. | **DEFENDANTS' MOTION FOR TERMINATING AND MONETARY SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. §1927** |
| VINCENT HOWARD, LAWRENCE W. WILLIAMSON, HOWARD LAW, P.C., THE WILLIAMSON LAW FIRM, LLC, AND WILLIAMSON & HOWARD, LLP, | **HON. JOSEPHINE L. STATON** |
| Defendants. | **DATE:  March 23, 2018** <br> **TIME: 2:30 P.M.** <br> **PLACE: Ctrm. 10A** |

1

## **TABLE OF CONTENTS**

I.     INTRODUCTION.................................................................................1

II.    PERTINENT FACTS..........................................................................3

III.   LAW AND ARGUMENT....................................................................6

    A.    A Lawyer's Responsibility under Rule 11....................................6

    B.    A Lawyer's Duty of Candor.........................................................6

    C.    The CFPB Knowingly Brought a Frivolous Motion to Hold the
         Attorneys in Contempt...............................................................7

         1.    The CFPB Has Conceded that Binding the Attorneys to the
              Injunction Solely on the Basis the Attorneys Acted in Concert with
              Morgan Drexen Was Error...............................................8

         2.    The CFPB Was Aware at the Time It Filed the *Ex Parte*
              Application that Binding the Attorneys to the June 18 Injunction
              Solely on the Basis the Attorneys Had Acted in Concert with
              Morgan Drexen Had No Merit.......................................10

         3.    The CFPB's Coupling of a Frivolous Argument with a Purported
              Non-Frivolous Argument Does Not Spare the CFPB from Rule
              11...........................................................................12

    D.    The CFPB Presented the "Successor Theory" Knowingly Based
         Upon Erroneous Facts and a Misapplication of the Law...................13

         1.    The CFPB Misrepresented to this Court the Relationship between
              The Attorneys and Morgan Drexen Setting the Stage for More
              Erroneous Rulings......................................................13

         2.    The CFPB Knew These Facts When It Mislead This Court........17

         3.    The June 18 Injunction Was Tainted Because of the CFPB's
              Misrepresentation of Facts...........................................20

E.  The CFPB Should Be Estopped from Pursuing The Howard Law Action Because the CFPB Persuaded This Court to Rely on  Misrepresented Facts..................................................................................................20

F.  Terminating and Monetary Sanctions Against the CFPB Are Warranted......................................................................................................23

IV.  CONCLUSION.............................................................................................25

1

## <u>**TABLE OF AUTHORITIES**</u>

2

**CASES**

3

4
*Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985)................................................................6

5

6
*Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994)............…........6

7
*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399, 110 S.Ct. 2447, 110 L.Ed.2d
8
359 (1990)..............................................................................9, 12

9
*Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 808–09 (11th
10
Cir.2003)...............................................................................6

11
*Footman v. Wang Tat Cheung,* 341 F.Supp.2d 1218, 1225 (M.D.Fla.2004)..........6, 8

12

13
*Fusari v. Steinberg,* 419 U.S. 379, 391, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975)...…......6

14
*G.C. & K.B. Investments, Inc. v. Wilson,* 326 F.3d 1096, 1109 (9th Cir.2003)...........9

15
*G & C Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 35 (1st Cir. 1980)
16
...........................................................................................9

17
*Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th
18
Cir.1986)...............................................................................6

19
*Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113 (1987).....................…......11

20

21
*In re Yagman,* 803 F.2d 1085.............................................................25

22
*Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir.1992)..................…......24

23
*Mercury Service, Inc. v. Allied Bank of Texas*, 117 F.R.D. 147, 156 (C.D. Cal.
24
1987).....................................................................................6

25
*New Hampshire v. Maine,* 532 U.S. 742, 751 (2001)...........................…............20

26
*Nken v. Holder,* 556 U.S. 418,433–34 (2009)....................................................11

27
*Oliveri v. Thompson,* 803 F.2d 1265, 1278 (2d Cir.1986)..................................19

28

*Osborn v. Bank of U.S.*, 22 U.S. 738, 739, 1824 WL 2682, 6 L.Ed. 204, 9 Wheat. 738 (1824)............................................................................................................6

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 1415, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945)......................................................................................................9, 16

*Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980)..........................................................................................................25

*Saga Intern. Inc. v. Brush,* 984 (F. Supp 1283, 1286-1287 (C.D. CA 1997) ...........17

*Service, Inc. v. Allied Bank of Texas*, 11 F.R.D. 147, 157 (C.D.Cal. 1987). ...........23

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990)...........12

*United States v. Gavilan Joint Community College District,* 849 F.2d 1246, 1251 (9th Cir.1988)...........................................................................................................2

*Vehicle Operation Tech LLC v. Am. Honda Motor Co., Inc.*, 67 F.Supp.3d 637, 653 (D. Del. 2014). ....................................................................................................23

*Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 674 (1944)...............................13

*Walter v. Fiorenzo,* 840 F.2d 427, 433 (7th Cir.1988)......................................25

*Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986).....................6, 9

**STATUTES**

28 U.S.C. §1927,...............................................................................................24

Fed R. Civ. Proc. 11..............................................................1, 3, 6, 7, 12, 19, 23

Fed. R. Civ. Proc. 11(b)(1).........................................................................10

Fed. Rule Civ. P. 26(g)....................................................................................14

Fed. R. Civ. Proc. 65(d).....................................................................5, 11, 17

Local Rules 83-3.1.2.....................................................................................7

1

California Business and Professions Code §6068(d)............................................7

2

California Rule of Professional Conduct 5-200, Trial Conduct............................ 7

3

4

**SECONDARY SOURCES**

5

6

ABA Model Rules of Prof'l Conduct Rule 3.3 ("Candor Toward the Tribunal").........6

7

ABA Model Rule 3.3 Comment [3]..........................................................7

8

9

House Conference Report No. 96–1234, 96th Cong. 2d Sess., Reported in 1980 Code Cong. & Admin. News, 2716, 2781 at 2781..............................................24

10

11

Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 187 (1985)...........................................................................19

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   **INTRODUCTION**

In granting the CFPB's Motion for Terminating Sanctions against Morgan Drexen in April 2015, this Court emphatically affirmed that it will not suffer what it considered attorney misrepresentations or unethical conduct.  As will be detailed below, the CFPB has engaged in a pattern of misrepresentations to this Court of both law and fact that are deserving of Rule 11 sanctions.

On August 19, 2015, the CFPB applied to this Court for an OSC Re Contempt against the Defendant Attorneys[1] (*Ex Parte* Application").  This motion was premised upon the legal argument that the injunction applied to the Defendants, even though the Defendants were not parties to that action and were never named in the injunction. The CFPB argued that Defendants were bound because they "acted in concert" with Morgan Drexen before the injunction was issued.  This was the sole premise offered in the CFPB's moving papers.  But the CFPB knew that under Rule 65, the Attorney Defendants had not "acted in concert" with Morgan Drexen.  On March 23, 2016, the CFPB admitted this to the Ninth Circuit:

> "To the extent that the district court meant to suggest that the Attorneys were bound by the Injunction solely because they had acted in concert with Morgan Drexen before entry of the Injunction, the court erred." (CFPB Appellate Brief, Dkt 32, at 11 n.2, Exh "1" to Vanderpool Decl.)

In March of 2016, the CFPB admitted that the "acting in concert" theory was wrong.  Yet as will be demonstrated below, the CFPB knew *before* it brought the frivolous *Ex Parte* Application for contempt in August of 2015 that it was error to apply the "acting in concert" theory to the Attorneys.

This error was exposed by the Attorney Defendants in their Opposition to the CFPB's *Ex Parte* Application.  In its reply, the CFPB supplemented its motion with a new argument – that Defendants had become "successors" to Morgan Drexen.  This

---

[1] Howard Law, P.C., Williamson & Howard, LLP, The Williamson Firm, LLC, Vincent Howard and Lawrence Williamson shall be referred to herein as "Defendants," "Attorney Defendants," or "Attorneys."

1    argument was premised on the CFPB's factual representation to this Court that the

2    Defendants "stepped into the shoes" of Morgan Drexen, took over Morgan Drexen's

3    debt relief business and continued to take fees from Morgan Drexen customers.

4         Yet the CFPB knew that these facts were not accurate.  Relying on evidence

5    that it has had since February 2012, the CFPB has now conceded that the factual

6    representation to this Court was wrong.  In its October 23, 2017 and November 27,

7    2017, discovery responses in the *Howard Law action,* the Plaintiff asserts the

8    following facts as the truth:

9         1.    The debt relief business had always been the Attorneys' business—not

10   Morgan Drexen's.

11        2.    The Attorneys were the principals; Morgan Drexen was their agent.

12        3.    The fees collected from the consumers were always the Attorneys' fees—

13   not Morgan Drexen's.

14        4.    The Attorneys controlled MD's services; Morgan Drexen took its

15   direction from the Attorneys under the Attorneys' supervision.

16   (See CFPB's responses to RFA's, No. 113, Exh. 4 to Vanderpool decl.)  Under these

17   facts, this Court could not have found that the Attorneys took over Morgan Drexen's

18   business and had become its successor.

19        Equality before the law demands that that every person or entity, including the

20   CFPB[2]—must be treated equally by the law and that all entities are subject to the same

21   laws of justice. The equal application of the law compels that the CFPB and its

22   attorneys bear the same fate dispensed by this Court to Morgan Drexen for its ethical

23   violation.  In the *Morgan Drexen action*, the CFPB was able to achieve its desired

24

25   _____

26   [2] *United States v. Gavilan Joint Community College District,* 849 F.2d 1246, 1251 (9th Cir.1988) (holding
     that when the United States comes into court as a party in a civil suit, it is subject to the Federal Rules of Civil
27   Procedure as any other litigant and that there is no justification for exempting the United States government
     from Rule 11 on the ground of sovereign immunity).

28

1   goal of closing Morgan Drexen, while the harm suffered by the Attorneys can never
2   be repaired.  This motion simply asks that this Court under Rule 11 put an end to the
3   CFPB's abuse and compensate the Attorneys for the attorneys' fees incurred in
4   defending the CFPB's meritless *Ex Parte* Application, the subsequent motions and
5   appeals flowing therefrom, *and* this pending action.

6         This Court justified the drastic sanction against Morgan Drexen because the
7   company had lost its credibility.  Prevailing in this Court against the Attorneys at
8   every juncture from June 2015 to the present, the CFPB enjoyed superior, although
9   undeserved, credibility.  The CFPB has abused its position of trust by offering false
10  evidence and frivolous pleadings relied upon this Court to ruin the Attorneys.  At this
11  point, there is no more appropriate sanction than terminating this case.

12  **II.   PERTINENT FACTS**

13        In February 2012—long before the CFPB initiated its action against Morgan
14  Drexen and five years before the CFPB brought the pending suit against the
15  Attorneys—Lawrence Williamson met with the CFPB's attorneys[3] at the CFPB's
16  Washington, D.C. office.[4]  In a meeting that lasted nearly two hours, Mr. Williamson
17  explained in detail the manner in which he provided his clients with debt relief
18  services including his simultaneous use of bankruptcy.  During this meeting he
19  explained his law firm's use of Morgan Drexen to support his law firm's provision of
20  legal services to its clients.[5]

21        The CFPB followed up with a March 2012 CID to Morgan Drexen and June
22  2012 CID to Howard Law.  On April 22, 2013, the CFPB served Morgan Drexen with
23  a Notice of Opportunity to Respond and Advise ("NORA") which indicated that the
24  CFPB's Office of Enforcement was considering recommending that CFPB take legal

---

[3] Among those in attendance were Lucy Morris (Deputy Enforcement Director For Litigation) Wendy Weinberg and Shirley Chiu (Enforcement Attorneys).
[4] *CFPB v. Morgan Drexen* Docket ("MD Dkt.") 356-2.
[5] Declaration of Randal M. Shaheen, at ¶5.

1    action against Morgan Drexen and Walter Ledda.  A NORA was not served on the

2    Attorneys at that time (or any time subsequent).[6]

3         On August 20, 2013, the CFPB filed a complaint[7] in this Court against Morgan

4    Drexen and Walter Ledda (the "*Morgan Drexen action*") for alleged violations of the

5    Telemarketing Sales Rule ("TSR") by charging up-front fees to its customers for debt

6    relief services.  When it filed the MD Case, the CFPB knew that Morgan Drexen was

7    providing "back office" administrative and client management services to the

8    Attorneys' law firms.  The Attorneys were not named in the *Morgan Drexen action*.

9    The CFPB insisted upon their exclusion, by successfully opposing an intervention

10   effort by a law firm that was in the exact same non-party position as the Attorneys.

11        On April 15, 2015, this Court granted the CFPB's Motion for Terminating

12   Sanctions against Morgan Drexen.  On April 30, 2015, Morgan Drexen filed for

13   Chapter 7 Bankruptcy.  From May 7, 2015 through June 18, 2015, Morgan Drexen was

14   under the control of the Chapter 11 Trustee—former U.S. Attorney John Hueston.

15   During this time, the Attorneys continued to service their clients, as they were required

16   to under State Bar Rules.

17        On June 18, 2015, the District Court entered a permanent injunction against

18   Morgan Drexen (the "June 18 Injunction").[8]  The Chapter 11 Trustee decided to shut

19   down Morgan Drexen's business. On July 6, 2015, two weeks after the Injunction was

20   entered, the District Court entered an order purporting to clarify the Injunction.[9]  In this

21   order, this Court suggested that the Appellants' *pre-injunction conduct with Morgan*

22   *Drexen*, without more, rendered them "in active participation with or in concert with"

23   this enjoined party (the "in active concert theory"), within the meaning of Federal Rule

24

25

26   _____
     [6] Id. at ¶7.
27   [7] MD Dkt. 1.
     [8] MD Dkt. 306.
28   [9] MD Dkt. 326.

1   of Civil Procedure 65(d) ("Rule 65").  The Attorneys appealed and sought an

2   emergency stay.

3         On August 19, 2015, based ***solely*** upon this wholly unanticipated ruling, the

4   CFPB opportunistically contended that the Attorneys had violated the June 18

5   Injunction.[10]  In its reply brief, the CFPB added an additional argument; the Attorneys

6   had stepped into the shoes of Morgan Drexen and became its successor (the "successor

7   theory").  On October 9, 2015, the District Court entered an order adopting the CFPB's

8   position.  This order held the Attorneys in contempt of the Injunction, shut down over

9   eighty percent of their business activities, and ordered them to disgorge millions in fees

10  voluntarily paid to them by their clients.

11        On October 26, 2016, the Ninth Circuit issued its Memorandum reversing this

12  Court's October 9 Order of Contempt and remanding the case for an evidentiary

13  hearing.  Two months later, the CFPB abandoned its pursuit of a contempt order

14  against the Attorneys.  Instead, on January 31, 2017, the CFPB filed a new action

15  against the Attorneys (the "*Howard Law action*") asserting the identical claims

16  previously alleged against Morgan Drexen in the *Morgan Drexen action*.

17        The Attorneys served the CFPB with written discovery.  The CFPB served

18  written responses which controvert the facts the CFPB asserted in its endeavor to hold

19  the Attorneys in contempt as a successor to Morgan Drexen's business.  The CFPB

20  now adopts the position that the debt relief services have always been the business of

21  the Attorneys, and that Morgan Drexen was the Attorneys' independent

22  contractor/agent.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

[10] MD Dkt. 348-1.

## III.   LAW AND ARGUMENT

### A.   A Lawyer's Responsibility under Rule 11

Rule 11 of the Federal Rules of Civil Procedure creates and imposes on a party or counsel an affirmative duty to investigate the law and facts before filing.[11] Sanctions are appropriate if, measured objectively, a pleading or motion is frivolous, legally unreasonable, or without factual foundation.[12] Subjective good faith is not a defense to a Rule 11 motion.[13] Instead, the rule creates an "affirmative duty of investigation both as to law and as to fact before motions are filed."[14]

A district court may impose a punitive sanction for the filing of a paper that lacks factual foundation and is intended to mislead the Court and opposing parties, even if the paper does not significantly delay proceedings, because of the disrespect shown to judicial process.[15]

### B.   A Lawyer's Duty of Candor

Lawyers, as officers of the court, have a duty of candor to the tribunal.[16] The duty of candor includes a "continuing duty to inform the Court of any developments that may conceivably affect the outcome of the litigation."[17]

The duty owed by attorneys is that of "complete candor and primary loyalty to the court before which they practice. An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly."[18] Therefore, a lawyer should not "knowingly misstate, distort, or improperly exaggerate

---

[11] *Rachel v. Banana Republic, Inc.,* 831 F.2d 1503, 1508 (9th Cir.1987).
[12] *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986).
[13] *Id.* at 829
[14] *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir.1986).
[15] *Mercury Service, Inc. v. Allied Bank of Texas,* 117 F.R.D. 147, 156 (C.D.Cal.1987).
[16] *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 808–09 (11th Cir.2003) (citing *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir.1994)); *See also* Model Rules of Prof'l Conduct Rule 3.3 ("Candor Toward the Tribunal").
[17] *See Bd. of License Comm'rs of Town of Tiverton v. Pastore,* 469 U.S. 238, 240, 105 S.Ct. 685, 83 L.Ed.2d 618 (1985) (quoting *Fusari v. Steinberg,* 419 U.S. 379, 391, 95 S.Ct. 533, 42 L.Ed.2d 521 (1975) (Burger, C.J., concurring)).
[18] *Footman v. Wang Tat Cheung,* 341 F.Supp.2d 1218, 1225 (M.D.Fla.2004).

1  any fact or opinion and should not improperly permit the lawyer's silence or inaction

2  to mislead anyone."[19]  Indeed, Attorneys are held to the highest standards of honesty

3  to the tribunal.  How can justice ever be accomplished if an attorney can get away

4  with lying to the Court?

5        This duty is codified by California statute, reaffirmed in case law and mandated

6  by the California Rules of Professional Conduct and the ABA Model Rules of

7  Professional Conduct – each relevant to assessing the conduct of an attorney

8  practicing before this Court.[20]  California Rule of Professional Conduct 5-200, Trial

9  Conduct, states that in presenting a matter to a tribunal, a member:

> "(A) Shall employ, for the purpose of maintaining the causes
> confided to the member, such means only as are consistent
> with truth;
> "(B) Shall not seek to mislead the judge, judicial officer or
> jury by an artifice or false statement of fact or law…."

14       Note that the California rule differentiates between using truthful means of

15  representation and seeking to mislead the court. This is an important distinction,

16  because it is possible to present technically correct bits of evidence or information, but

17  in a manner that is misleading in context. It is also possible to violate the duty of

18  candor by omission. Looking to the ABA for an explicit example, ABA Model Rule

19  3.3 Comment [3] notes that there are circumstances where "failure to make a

20  disclosure is the equivalent of an affirmative misrepresentation."

21       A lawyer's duty of candor is also laid out in the California Business and

22  Professions Code §6068(d) which states that it is the duty of an attorney to: "employ,

23  for the purpose of maintaining the causes confided to him or her, those means only as

24  are consistent with truth, and never to seek to mislead the judge or any judicial officer

25  by an artifice or false statement of fact or law."  In addition, Rule 11 "reinforces

---

[19] *Id.*
[20] Local Rules 83-3.1.2

1  counsel's duty of candor to the Court by subjecting litigants to potential sanctions for

2  making a representations to the court for an improper purpose."[21]

3      **C.    The CFPB Knowingly Brought a Frivolous Motion to Hold the
4              Attorneys in Contempt.**

5      In its July 6, 2015, Order, this Court "warned [the Attorneys] that, even though

6  the Court has not specifically named them in the Court's preliminary injunction order,

7  for the reasons stated above, the Attorneys are bound by the Court's preliminary

8  injunction order ***to the extent*** that the Attorneys were in 'active concert or

9  participation with' Morgan Drexen and its illegal conduct."[22]

10     On August 19, 2015, the CFPB submitted to this Court its *Ex Parte* Application

11 seeking a contempt order against the Attorneys for collecting fees from their clients

12 ***solely*** on the ground that the June 18 Injunction applied to the Attorneys because they

13 acted in concert with Morgan Drexen ***before***[23] the injunction.[24]   There was no other

14 basis asserted by the CFPB in its application for holding the Attorneys bound to the

15 injunction issued to Morgan Drexen.[25]

16

17

18

19

20

21   [21] *Footman v. Wang Tat Cheung, supra,* 341 F.Supp.2d at 1225.
     [22] MD Dkt. 326, at 11; emphasis added.
22   [23] The CFPB's Ex Parte Application is based only on the Court's July 6 ruling. In its July 6 Order, this Court
     stated: "*for the reasons stated above*, the Attorneys are bound by the Court's preliminary injunction order to
23   the extent that the Attorneys were in 'active concert or participation with' Morgan Drexen and its illegal
     conduct." (MD Dkt. 326, at 10; emphasis added.)  The "reasons stated above" were both *pre-injunction*
24   bases: (1) that Morgan Drexen received 85% to 95% of the fees paid by consumers, and the Attorneys,
     received 5% to 15% of these fees; and (2) marketing and debt relief materials and the consumer files were
25   prepared by Morgan Drexen under the Attorneys' direction and control.  (*Id.*)
     [24] MD Dkt. 348-1, at 6.
26   [25] As discussed below, the CFPB introduced the "successor" theory for the first time in its August 31, 2015
     Reply to the Attorneys' Response to Order to Show Cause Re: Contempt. (MD Dkt. 360.)  The Attorneys did
27   not have the opportunity to brief the issue for this Court before it issued its October 9, 2015 Contempt Order.
     Accordingly, this Court only had the CFPB's written version of the law and the facts.
28

1.   <u>The CFPB Has Conceded that Binding the Attorneys to the
Injunction Solely on the Basis the Attorneys Acted in Concert with
Morgan Drexen Was Error.</u>

Seven months after the CFPB brought the *Ex Parte* Application, the time arrived for the CFPB to defend the position it adopted in its moving papers.  Yet, the CFPB told the Ninth Circuit that "[t]o the extent that the district court meant to suggest that the Attorneys were bound by the Injunction solely because they had acted in concert with Morgan Drexen ***before*** entry of the Injunction, ***the court erred***."[26]

The language used by the CFPB reflects its acknowledgment that the law presented by the Attorneys in their Oppositions on August 21, 2015, demonstrating that Rule 65 implicates only "post-injunction conduct and relationships"[27] was correct.  In fact, the similarity between the CFPB's declaration to the Ninth Circuit (March 23, 2016) and the Attorneys' Opposition (August 21, 2015) is remarkable.  Eight months earlier, the Attorneys advised this Court that:  "[T]o the extent that the July 6 Order holds that the language in Federal Rule of Civil Procedure 65(d) can be relied upon to drag the Law Firms within the reach of the Injunction, this is error."[28]

Whether a pleading is frivolous or improper is determined using an objective "reasonableness" standard, rather than from the perspective of the pleader's subjective intent.[29]  The CFPB's concession was warranted.  The law has been clearly stated as follows: "A nonparty, if not legally identified with a party, can be found to be in contempt only if in active concert or participation with a party in ***post injunction*** activity."[30]  There is no authority to the contrary.  A reasonable attorney

---

[26] Brief of Plaintiff-Appellee CFPB dated March 23, 2016 ("CFPB's Appellate Brief"), Appellate Dkt. 32, at 11 n.2; emphasis added.  See Exhibit 1 to Vanderpool Dec.
[27] MD Dkt. 350, at 9.
[28] MD Dkt., 350, at 8.
[29] *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir.2003); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).
[30] *G & C Merriam Co. v. Webster Dictionary Co., Inc.*, 639 F.2d 29, 35 (1st Cir.1980) (emphasis added) citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 1415, 65 S.Ct. 478, 481, 89 L.Ed. 661 (1945).

1    would not have brought the *Ex Parte* Application.  An attorney who honors his duty

2    of candor would not exploit a perceived error of a district court judge for an "improper

3    purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of

4    litigation."[31]  Here, the CFPB accomplished all three.

5         The CFPB's concession to the Ninth Circuit of error, however, is appalling

6    because it shoulders no responsibility for the error that it invited by its own motion.

7    Instead, the CFPB points its finger at this Court.  The problems with this maneuver are

8    glaring.  First, the CFPB clearly adopted this argument as its own in its Reply to the

9    Attorneys' Response to OSC Re: Contempt in a section entitled: "The Attorneys

10   Continue to Charge Fees Relating To Their Acts in Concert or Participation with

11   Morgan Drexen ***Before the Injunction Order***."[32]

12        Second, this Court specifically stated that it never held the Attorneys in

13   contempt for acting in concert with Morgan Drexen[33]; rather, its only basis for finding

14   the Attorneys in contempt was because of their role as a successor – distinct from

15   acting in concert with Morgan Drexen.  And, as discussed below, the Court arrived at

16   its "successor" ruling based upon the CFPB's misrepresentations of facts.

17              2.    <u>The CFPB Was Aware at the Time It Filed the *Ex Parte*</u>
                     <u>Application that Binding the Attorneys to the June 18 Injunction</u>
18                   <u>Solely on the Basis the Attorneys Had Acted in Concert with</u>
                     <u>Morgan Drexen Had No Merit.</u>
19

20        The CFPB's pleading to the Ninth Circuit on July 15, 2015—one month before

21   it filed its frivolous *Ex Parte* Application exposes that the CFPB was cognizant that its

22   position was meritless.

23

24

25

26   [31] Fed. R. Civ. P. 11(b)(1).
     [32] MD Dkt. 360, at 15; emphasis added.
27   [33] MD Dkt. 500, at 7 n.6 ("In their Motion, the Attorneys make much of the Court's "active concert"
     discussion in the Court's Clarification order. (Mem. at 14-15.)  The Court held the Attorneys in contempt for
28   their role as successors, not for acting in concert with Morgan Drexen."

1  Immediately following this Court's July 6 Order, the Attorneys appealed to the
2  Ninth Circuit.  On July 14, 2015, the Attorneys filed their Emergency Motion for Stay
3  Pending Appeal under Circuit Rule 27-3.[34]  The federal courts weigh four factors
4  when presented with a motion for a stay pending appeal: "(1) whether the stay
5  applicant has made a strong showing that he or she is likely to succeed on the merits;
6  (2) whether the applicant will be irreparably injured absent a stay; (3) whether
7  issuance of the stay will substantially injure the other parties interested in the
8  proceeding; and (4) where the public interest lies."[35]  The first two factors are
9  considered the "most critical."[36]

10  The Attorneys addressed the first factor—the likelihood of prevailing—as its
11  first section in the Argument portion of the motion entitled:  "The District Court's
12  Interpretation of Federal Rule of Civil Procedure 65(d) Is Clear Error."  There, the
13  Attorneys reiterated their position that, based upon the law, they could not be bound to
14  the June 18 Injunction based upon their pre-injunction conduct.[37]

15  The CFPB filed its Opposition on July 15, 2015.[38]  Although the "likelihood of
16  prevailing on the merits" factor is one of the most important factors to be weighed
17  when considering a motion to stay, the CFPB went "radio silent" on this critical
18  element, and offered no argument or legal support for binding the Attorneys to the
19  June 18 Injunction based upon pre-injunction conduct.  The CFPB's silence to the
20  Ninth Circuit was a clear indication of the CFPB's state of mind prior to bringing the
21  *Ex Parte* Application– it knew that there was no legal support for its position.  Query:
22  how would the Ninth Circuit have ruled on the motion to stay had the CFPB not
23  remained silent, but instead offered the same concession of error as it did in its
24  appellate brief seven months later?

25

26  _____
[34] App. Dkt. 3-1.  See Exhibit 2 to Vanderpool Dec.
27  [35] *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113 (1987).
[36] *Nken v. Holder*, 556 U.S. 418,433–34 (2009).
28  [37] *Id.*, at pp. 10-12.
[38] App. Dkt. 6.  See Exhibit 3 to Vanderpool Dec.

11

3.   The CFPB's Coupling of a Frivolous Argument with a Purported Non-Frivolous Argument Does Not Spare the CFPB from Rule 11.

In its concession to the Ninth Circuit, the CFPB attempted to diminish the impact of the error.  The CFPB claimed that the error was of no consequence because the finding was expressly based on "the Attorneys' actions after the Court issued its Injunction" in taking over Morgan Drexen's business and becoming bound "as a successor."[39]

The Attorneys anticipate that the CFPB will attempt the same maneuver to defend its violation of Rule 11.  The CFPB will argue that the "successor theory" in its *Ex Parte* Application was not a frivolous argument.  The inadequacy of the "successor" argument and the facts offered by the CFPB to set the framework for this argument will be discussed below.  Regardless, the pairing of the "successor theory" with the frivolous "in active concert" argument does not redeem the CFPB.  First, the moving papers were based solely on the erroneous "in active concert" argument.  The "successor theory" was only introduced in the CFPB's reply at page 16.[40]

Second, the Supreme Court stated, "It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."[41]  The Ninth Circuit has ruled that it would ill serve the purpose of deterrence to allow a "safe harbor for improper or unwarranted allegations."[42]  Were a "safe harbor" permitted, "a party that has one non-frivolous claim may pile on frivolous allegations without a significant fear of sanctions."[43]

---

[39] CFPB's Appellate Brief, App. Dkt. 32, at 11 fn. 2.  See Exhibit 1 to Vanderpool Dec.
[40] MD Dkt. 360.
[41] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).
[42] *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1363 (9th Cir. 1990) (en banc).
[43] *Id.*

**D.   The CFPB Presented the "Successor Theory" Knowingly Based Upon Erroneous Facts and a Misapplication of the Law.**

The CFPB knew when it filed the *Ex Parte* Application that the law did not support binding the Attorneys to the June 18 Injunction based upon their pre-injunction "acting in concert" with Morgan Drexen.  With this knowledge, the CFPB introduced its "successor theory"[44] in its Reply Brief.  The CFPB accurately represented the law on this theory:  "[A]n injunction may 'be enforced against those to whom [a] ***business may have been transferred***, whether as a means of evading the judgment or for other reasons.'"[45]

Thus, to prevail, the CFPB had to take the position that the debt relief program, prior to the June 18 Injunction, belonged to Morgan Drexen – not the Attorneys.  And, thereafter, the debt relief business "transferred" to the Attorneys.

   1. <u>The CFPB Misrepresented to this Court the Relationship between The Attorneys and Morgan Drexen Setting the Stage for More Erroneous Rulings.</u>

In order to succeed on the "successor theory," the CFPB perpetuated a fiction which first appeared in the Complaint filed in the *Morgan Drexen action.*   More importantly, however, the CFPB's campaign continued to unfold ***after*** the June 18 Injunction with representations such as the following:

- "[The Attorneys] have ***stepped into Morgan Drexen's shoes*** and continued to carry out its ***[Morgan Drexen's] unlawful scheme***."[46]

- "[The Attorneys] are continuing to benefit from their active concert and participation in ***Morgan Drexen's illegal debt relief scheme***."[47]

---

[44] MD Dkt. 360, at 16.
[45] *Id., citing Walling v. James V. Reuter, Inc.,* 321 U.S. 671, 674 (1944); emphasis added.
[46] MD Dkt. 360, at 14; emphasis added.
[47] *Id.,* at 15; emphasis added.

- "[T]he Attorneys have ... continu[ed] ***Morgan Drexen's unlawful business*** enterprise.[48]
- "Nor did anything prevent that injunction from applying to the full extent authorized by Rule 65(d)—to encompass parties who take over ***Morgan Drexen's business....***"[49]

And, as little as four months before filing its January 31, 2017 Complaint against the Attorneys, the CFPB at oral argument represented to the Ninth Circuit multiple times that Morgan Drexen, not the Attorneys, "was the driving force behind this scheme."[50]

The CFPB's oral argument had its foundation in numerous representations made to the Ninth Circuit in the CFPB's appellate brief.  The CFPB identified the debt relief business as "Morgan Drexen's business."[51]  It identified the consumers as "Morgan Drexen's customers."[52]  It labeled the files "Morgan Drexen customer files."[53]  It claimed that the consumers signed up for Morgan Drexen services.[54]  It asserted that the Attorneys succeeded to Morgan Drexen's business.[55]

In striking contrast, the attorneys for the CFPB are now representing that the following facts are ***complete and correct***[56]--facts which contradict that the Attorneys succeeded to Morgan Drexen's business:

---

[48] *Id.,* at 16; emphasis added.

[49] *Id.,* at 22; emphasis added.

[50] Plaintiff's Responses to Howard Law P.C.'s First Request for Admissions ("CFPB's Responses to Howard Law's RFA"), No. 113.  See Exhibit 4 to Vanderpool Dec.

[51] CFPB's Appellate Brief, App. Dkt. 32, at 2, 11, 15, 27, 30, 36, and 42; Exh. 1 to Vanderpool Dec.

[52] *Id.,* at 2.

[53] *Id.,* at 12.

[54] *Id.,* at 13.

[55] *Id.,* at 36.

[56] Pursuant to Fed. Rule Civ. P. 26(g), "[E]very discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name .... By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: (A) with respect to a disclosure, it is ***complete and correct*** as of the time it is made."  (Emphasis added."  According to the Advisory Notes, [t]he term "response" includes answers to interrogatories and to requests to admit as well as responses to production requests."

- ***Principal/Agency:***  From January 1, 2010 to the date Morgan Drexen filed for bankruptcy, the Attorneys were the principals; Morgan Drexen was their agent.[57]  (E.g., "… Defendants utilized Morgan Drexen as their agent to offer these debt relief services."[58])

- ***Ownership of Business:***  From January 1, 2010 to the date Morgan Drexen filed for bankruptcy, the debt relief program was the Attorneys' business. [59] (*E.g.,* "Morgan Drexen developed and placed advertisements on Defendants' behalf for Defendants' debt relief services."[60])

- ***Consumer Fees:***  From January 1, 2010 to the date Morgan Drexen filed for bankruptcy, the fees paid by consumers were for the Attorneys' debt relief services; the fees collected by Morgan Drexen were from the Attorneys for services Morgan Drexen provided to the Attorneys' law firm.[61]  (*E.g.,* "Morgan Drexen acted as Howard Law's, Williamson & Howard's, and The Williamson Law Firm's agent when accessing, administering, and reconciling funds in consumers' accounts." [62])

- ***Direction/Control:***  From January 1, 2010 to the date Morgan Drexen filed for bankruptcy, the Attorneys directed and controlled Morgan Drexen. [63]

- ***Supervision:***  From January 1, 2010 to the date Morgan Drexen filed for bankruptcy, the Attorneys supervised Morgan Drexen. [64]

---

[57] CFPB's Responses to Howard Law's RFA Nos. 1, 2, 4, 5, 6, 7, 10, 11, 12, 50, 51, 52, 53, 54, 58, 59, 60, 61, 62, 63, 64, 72, 83, 97, 114, 115, 135, 137, 138, 147, 148, 149, 150, 153, and 154.  See Exhibit 4 to Vanderpool Dec.
[58] *Id.,* at 2.
[59] CFPB's Responses to Howard Law's RFA Nos. 2, 4, 6, 7, 11, 12, 38, 39, 40, 41, 42, 43, 44, 45, 52, 53, 83, 114, and 137.
[60] CFPB's Responses to Howard Law's RFA Nos. 38, 39, 40, 41, 42, 43, 44, and 45.
[61] CFPB's Responses to Howard Law's RFA Nos. 54, 55, 56, 77, 138, and 156.
[62] CFPB's Responses to Howard Law's RFA No. 54.
[63] CFPB's Responses to Howard Law's RFA Nos. 1, 4, 6, 10, 11, 12, 31, 32, 34, 35, 51, 53, 63, 64, 72, 97, and 154.
[64] CFPB's Responses to Howard Law's RFA Nos. 1, 4, 6, 11, 12, 31, 32, 34, 35, 51, and 53.

These responses are an acknowledgment that Morgan Drexen, as agent and independent contractor, worked in support of the Attorneys' businesses.  Indeed, the very essence of an "agent" is authority of the agent to work ***in furtherance of the principal's business.***

Were these facts represented to this Court by the CFPB throughout the contempt proceeding (from August 19, 2015 through October 9, 2015), it would have been unattainable for this Court to conclude that "the Attorneys have unilaterally taken steps to become the successors to Morgan Drexen's illegal business."[65]

The CFPB will argue that the facts presented to this Court to support the "successor theory" were accurate.  It will point to the following facts:  the Attorneys hired 50-60 former Morgan Drexen employees, including two of Morgan Drexen's principal officers, David Walker (Morgan Drexen's former Chief Financial Officer) and Avi Gupta (a former Morgan Drexen shareholder and Chief Technology Officer); the Attorneys retained the former General Counsel to perform legal services; the majority of Williamson & Howard's employees came from Morgan Drexen; former Morgan Drexen employees performed the same "accounting functions" and "client services" functions that they performed while at Morgan Drexen; the Attorneys obtained access to the client files; and the Attorneys operated out of the same building as Morgan Drexen.[66]

To a large extent, these facts are true.  However, the CFPB omitted a fundamental fact which place these facts in a different context:  Morgan Drexen was hired as the agent of the Attorneys to work in furtherance of the law firms' businesses.  Under these circumstances, the Attorneys' hiring of former employees of an enjoined

---

[65] This Court relied on *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) to guide its analysis.  In particular, this Court referenced the following statements from the Supreme Court:  A court's "orders are binding upon successors and assigns who operate as 'merely a disguised continuance of the ***old employer***.'"  And, "[W]hether one brings himself in contempt as a 'successor or assign' depends on an ***appraisal of his relations*** and behavior and not upon mere construction of terms of the order."  (MD Dkt. 386, at 28.)  The CFPB's responses now ratify that the Attorneys were the "old employer" – not Morgan Drexen.  The "relations" were that of principal (the Attorneys) and agent (Morgan Drexen).
[66] MD Dkt. 360, at 17.

party who was their agent does not make the Attorneys the successor to Morgan Drexen.  As a matter of law – law which the CFPB has ignored – the hiring of former employees (who were not named in the June 18 Injunction) has no legal consequence. "An injunction is not like a tattoo. It does not permanently stick to every person employed by the party enjoined for the rest of his or her life, regardless of what course their lives might later take. ... The reference in Rule 65(d) to 'officers' means only current officers."[67]

        2.   <u>The CFPB Knew These Facts When It Mislead This Court.</u>

     The bases identified by the CFPB for the facts acknowledged in the discovery in the pending *Howard Law* action are (1) the contracts between Morgan Drexen and the Attorneys; and (2) the statements of Vincent Howard.  Specifically, in its responses to Defendants' discovery, the CFPB references the Attorneys' contracts with Morgan Drexen over 20 times and, at times, cites relevant language:

       "As to control, the Bureau directs Defendants to the respective contracts between Morgan Drexen and Howard Law, Williamson & Howard, and The Williamson Law Firm, which provided that:

          • "'Howard Law, Williamson & Howard, and The Williamson Law Firm 'have control over MD's services';

          • 'MD shall follow all direction from Howard Law, Williamson & Howard, and The Williamson Law Firm';

          • 'Howard Law, Williamson & Howard, and The Williamson Law Firm 'hereby engages MD as its agent to provide the services,' and

          • 'Morgan Drexen 'agrees to conduct itself in accordance with the fiduciary duty that agents have to their principals to act loyally for the principal's

---

[67] *Saga Intern. Inc. v. Brush,* 984 (F. Supp 1283, 1286-1287 (C.D. CA 1997)

1   benefit in all matters connected with the agency
2   relationship.'"[68]

3      The problem is that the CFPB has been aware of these facts and had possession
4   of the relevant documents more than two years before it made the false representations
5   to this Court.  Lawrence Williamson flew to Washington D.C. in February 2012 to
6   discuss his use of Morgan Drexen and the legal services he provided to his clients.
7   Vincent Howard, in his response to the CFPB CID dated July 26, 2012, stated as
8   follows: "Howard Law does not provide services to Morgan Drexen.  Howard Law
9   respectfully refers the Bureau to the contract(s) provided by the [Howard Law] and
10  the fees charged by [Morgan Drexen] to [Howard Law] for each service."[69]

11     On October 31, 2014, Morgan Drexen's attorney, Gerald Klein, submitted a
12  declaration in support of Morgan Drexen's opposition to the CFPB's Motion for
13  Summary Judgment which included 19 declarations of attorneys who used the support
14  services of Morgan Drexen.[70]  Each of these declarations attached the attorney's
15  contract with Morgan Drexen—*the very contract quoted by the CFPB in its responses*
16  *to discovery in the pending action.*

17     Yet, addressing these Attorneys' judicial estoppel argument raised in their
18  Motion to Dismiss, this Court has already shown a readiness to allow for the
19  possibility that the CFPB had a change in perspective as to the roles of the Attorneys.
20  At the hearing of the Motion to Dismiss in the *Howard Law action*, this Court stated
21  from the bench:

22      "And then, ***at that point in time***, when the CFPB, the
23      receiver, everyone realized that the attorneys not only would
        not stop but sought to obtain the accounts -- the account
24      information for those individuals, sought to continue to
25      withdraw money from their accounts, sought to contact them

26  ─────────────
    [68] Plaintiff's Responses to Howard Law's First Set of Special Interrogatories, at pp. 41, 49, and 51.  See
27  Exhibit 5 to Vanderpool Dec.
    [69] *CFPB v. MD action* CFPB Trial Exhibit 251, at 5.
28  [70] MD Dkt. 188-1.

18

1                 in contravention of what the CFPB was ordered to tell the

2                 individuals by the Court, that that -- I don't know to say

3                 'changed everything' but changed the CFPB's perspective on the role of the attorneys; that maybe they had

4                 misapprehended the nature of their role earlier."[71]

5         This rationalization does not spare the CFPB for purposes of Rule 11 sanctions.

6 First, the "point in time" (as identified by the Court) for the putative epiphany arose

7 ***prior*** to the CFPB's bringing its *Ex Parte* Application and before the CFPB argued the

8 "successor theory" in its reply brief.  It occurred following Morgan Drexen's shut

9 down when the Attorneys continued to service their clients and petitioned to this

10 Court for permission to access their client files.  While this Court's benefit of the

11 doubt may explain the CFPB's reversal in facts (between its *Morgan Drexen*

12 Complaint and the *Howard Law* Complaint), it does not account from the

13 contradictory positions adopted by the CFPB *at the time of the Ex Parte* Application

14 and the Complaint in the Howard Law action.

15         Second, "[t]here is no room for a pure heart, empty head defense under Rule

16 11."[72]  Whether a pleading is sanctionable must be based on an assessment of the

17 knowledge that ***reasonably*** could have been acquired at the time the pleading was

18 filed.[73]  The CFPB reasonably could have acquired the facts now asserted in its

19 discovery responses long before it bought the *Ex Parte* Application.  Yet, even with

20 this Court's indulgence for the CFPB's tardy realization, the insight occurred prior to

21 the contempt motion.

22         The CFPB performed an extensive investigation including five depositions and

23 four CID's before filing the *Morgan Drexen action*.  It completed extensive discovery

24 during *Morgan Drexen action* including the depositions of attorneys who used

25 Morgan Drexen's support.  The CFPB did not "misapprehend" the facts; **rather, it**

26

27 [71] Reporter's Transcript of Proceedings, February 10, 2017, at 34:25-35:9. (Emphasis added.)  See Exhibit 6 to Vanderpool Dec.

28 [72] Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 187 (1985).
[73] *Oliveri v. Thompson,* 803 F.2d 1265, 1278 (2d Cir.1986).

1  **chose to ignore the facts that did not fit into its narrative against Morgan Drexen.**

2  Now that the identity of defendants has changed, the CFPB's comprehension of the

3  facts has, conveniently, changed.

4          3.      The June 18 Injunction Was Tainted Because of the CFPB's
                   Misrepresentation of Facts.

5

6          It is a long-standing principle proclaimed by the Supreme Court: "An injunction

7  will not be allowed, nor a decree rendered against an agent, where the principal is not

8  made a party to the suit; but, where the principal is not subject to the jurisdiction of

9  the court, the rule may be dispensed with."[74]

10         The CFPB was aware of the identity of the principals long before it brought the

11 *Morgan Drexen action.*  Yet, the CFPB chose not to make the Attorneys parties to the

12 action.  There was a consequence; no injunction could be entered against the agent—

13 Morgan Drexen.  However, the CFPB did not acknowledge to this Court the

14 relationship between the Attorneys and Morgan Drexen.  The injunction was

15 wrongfully decreed because of the absence of the Attorneys from the original case.

16 The wrongful injunction was then used against the principals.

17         The CFPB's deception paved the way for the June 18 Injunction.  The same

18 deception, subsequently paved the way for the wrongful application of the injunction

19 to the Attorneys on the "successor theory," the over Five Million Dollar sanctions

20 against the Attorneys, and the asset freeze.

21 **E.     The CFPB Should Be Estopped from Pursuing The Howard Law
        Action Because the CFPB Persuaded This Court to Rely on
22      Misrepresented Facts.**

23         This Court has stated that, "for judicial estoppel to apply, (1) a party must take

24 'clearly inconsistent' positions, (2) the court must have adopted the party's argument

25 in the prior suit, and (3) the party sought to be estopped must 'derive an unfair

26 advantage or impose an unfair detriment' as a result of the inconsistency."[75]

27

28 ---
[74] *Osborn v. Bank of U.S.*, 22 U.S. 738, 739, 1824 WL 2682, 6 L.Ed. 204, 9 Wheat. 738 (1824).
[75] HL Dkt. 42, at 12 *citing New Hampshire v. Maine*, 532 U.S. 742, 751 (2001).

1    In its effort to secure a contempt order against the Attorneys, the CFPB adopted

2    the position that the debt relief program was Morgan Drexen's business and that

3    following Morgan Drexen's shut down by the Chapter 11 Trustee, the Attorneys

4    stepped into the shoes of Morgan Drexen and became its successor.[76]  This conclusion

5    advocated by the CFPB was consistent with the factual campaign waged by the CFPB

6    from the beginning of the *Morgan Drexen action.*   The CFPB had long been asserting

7    to this Court that the Attorneys "performed little, if any, work with respect to debt

8    relief"[77] and "Morgan Drexen maintained significant control over the provision of

9    debt settlement services."[78]  These representations all set the stage for the CFPB to

10   argue that the Attorney's became the successor to Morgan Drexen.  This position is

11   clearly inconsistent with the position adopted by the CFPB in *Howard Law action's*

12   complaint and in discovery.

13       Explicitly relying on the CFPB's previous inconsistent position, this Court

14   ruled: "Based on all the evidence before the Court, ***and as CFPB alleges***, it is clear

15   and convincing that the Attorneys have continued Morgan Drexen's business

16   enterprise – using the *same* employees and *same* customer files to collect the *same*

17   unlawful fees from the *same* consumers pursuant to the *same* contracts.  The

18   Attorneys became a 'disguised continuance of' Morgan Drexen.[79]  And earlier in the

19   Order, this Court stated that "the Attorneys have unilaterally taken steps *to become the*

20   *successors* to ***Morgan Drexen's illegal business.***"[80]

21       The detriment sustained by the Attorneys was substantial.  This Court found the

22   Attorneys in contempt and ordered them to refund all payments they received from

23   Affected Consumers from June 18, 2015, to the date of the Contempt order.

24   Threatened by this Court with sanctions of $10,000 per day should they continue to

---

[76] MD Dkt. 360, at 16.
[77] MD Dkt. 1, at ¶ 43.
[78] MD Dkt., at 166-2, at 27.
[79] MD Dkt. 386, at 33; emphasis added.
[80] *Id.,* at 29; emphasis added.

violate the June 18 Injunction, the Attorneys terminated engagements with many of their clients. Judgment was entered against the Attorneys for $5.3 million. Their assets were frozen.[81] To extricate themselves from this hardship, the Attorneys filed three appeals with the Ninth Circuit, two motions to stay and one motion to expedite. More than a year later, the Ninth Circuit reversed the order and remanded. In spite of being ultimately exonerated, the damage was done. The Attorneys' practices were in ruin, and they had been forced to spend hundreds of thousands of dollars in attorney fees.

In lieu of pursuing the remand, the CFPB filed suit against the Attorneys asserting a position that was plainly inconsistent with its prior pleadings. Now, instead of pleading that the Attorneys took over Morgan Drexen's enterprise, the CFPB is has now alleging that the debt relief program was *always* the Attorneys' businesses. Specifically, the CFPB alleges in its new Complaint: "In the course of telemarketing debt relief services from October 27, 2010 to the present, Defendants requested or received payment of fees or consideration from consumers for debt relief services: (1) before they had renegotiated … a settlement agreement" in violation of the amended TSR.[82]

Asked in Howard Law's interrogatories to provide facts to support these specific allegations, the CFPB's response includes the following:

> "During this time, ***Morgan Drexen was Defendants' agent*** in offering and providing debt relief services and purporting to provide the sham bankruptcy services pursuant to the "dual program" scheme. ***Defendants trained and supervised Morgan Drexen employees***, and Defendants developed the intake procedures, contracts, document templates, and other necessary components that Morgan Drexen employees used in their day-to-day operation of the scheme. The standard form contracts that Defendants require consumers to sign as a condition of obtaining services specify that Morgan

---

[81] MD Dkt. 442.
[82] HL Dkt., at 16-17, ¶¶ 88-89.

> Drexen acts under the control of Defendants, and the **_contracts between Defendants and Morgan Drexen_** explicitly state that Morgan Drexen is Defendants' agent."[83]

The CFPB was in possession of this evidence long before it argued the "successor theory." In the Attorneys' response to the *Ex Parte* Application, Mr. Howard described in his declaration the law firms' use of Morgan Drexen to support the Attorneys' debt relief business.[84] The very Administrative Services contract referenced by the CFPB in its October 2017 discovery responses (to support its current position that Morgan Drexen was the agent of the Attorneys[85]) was attached to Mr. Howard's Declaration[86] in support of the Attorneys' Opposition to the CFPB's contempt motion in August 2015.

**F.     Terminating and Monetary Sanctions Against the CFPB Are Warranted.**

Sanctions against "the unscrupulous lawyer knowingly deceiving the court" are appropriate.[87] A district court may dismiss of a lawsuit with prejudice as a sanction for a Rule 11 violation.[88] The CFPB has demonstrated a willingness to exploit the error of the Court, to misrepresent facts to this Court, and to advocate for a position that it knew had no merit under the law. The CFPB has and will continue to morph facts and law for the sake of its only goal – to follow its made up narrative and to win a lawsuit. In so doing, it has undermined the integrity of judicial proceedings. At this point, the harm suffered by the Attorneys is irreparable. Even though the CFPB understood its position lacked merit, it advocated zealously for a denial of a motion to

---

[83] See Exhibit 8 to Vanderpool Dec., Response to Interrogatory No. 3, at 9; emphasis added.
[84] MD Dkt. 356-1, at 2-6.
[85] Plaintiff's Responses to Howard Law, P.C.'s First Set of Request for Admission, at 2. See Exhibit 5 to Vanderpool Dec.
[86] MD Dkt. 356-1, at Exhibit 1.
[87] *Service, Inc. v. Allied Bank of Texas*, 11 F.R.D. 147, 157 (C.D.Cal.1987).
[88] *Vehicle Operation Tech LLC v. Am. Honda Motor Co., Inc.*, 67 F.Supp.3d 637, 653 (D.Del.2014).

1    stay and failed, timely, to apprise the Ninth Circuit of the erroneous ruling at the time

2    the court of appeals considered the motions to stay.

3        In rendering terminating sanctions against Morgan Drexen, this Court found it

4    "most damning" that Morgan Drexen had numerous opportunities to inform the Court

5    of the truth, yet continually failed to do so.[89]  The CFPB is guilty of the very same

6    tactic; sitting silently on the truth while it continued to argue false evidence and

7    misapplication of the law.  Justice must be dispensed consistently.  The CFPB's

8    machinations warrant the same hand of justice visited upon Morgan Drexen: the

9    CFPB's complaint should be dismissed.

10       This Court also has statutory and equitable discretion to assess attorneys' fees

11   against a party that has furthered litigation in a bad-faith, vexatious, or abusive

12   manner. Pursuant to 28 U.S.C. §1927, this court may assess attorneys' fees and costs

13   against any attorney or other person admitted to conduct cases in any court of the

14   United States who so multiplies the proceedings in any case unreasonably and

15   vexatiously may be required by the court to satisfy personally the excess costs,

16   expenses, and attorneys' fees reasonably incurred because of such conduct.

17   Legislative history underscores the application of §1927 to pending litigation by

18   describing its treatment of an attorney who engaged in "dilatory litigation practices"

19   and "unnecessary delays in litigation."[90]

20       If a legal theory advanced by an attorney is objectively not colorable, then a

21   court may impose sanctions on the attorney if the court finds that the attorney's

22   conduct was reckless, indifferent to the law, or extremely negligent even though the

23   attorney's actions were without actual or subjective bad faith.[91] A court may impose

24   sanctions under 28 U.S.C. §1927 against an attorney where the attorney has "acted in

25

26   [89] MD Dkt. 284, at 20.
27   [90] House Conference Report No. 96–1234, 96th Cong. 2d Sess., Reported in 1980 Code Cong. & Admin.
     News, 2716, 2781 at 2781.
28   [91] See Kotsilieris v. Chalmers, 966 F.2d 1181, 1184–85 (7th Cir.1992).

24

1    an objectively unreasonable manner by engaging in a 'serious and studied disregard

2    for the orderly process of justice' ... or *where a 'claim [is] without a plausible legal or*

3    *factual basis and lacking in justification.' "*[92]

4        While the Attorneys cannot be made whole from the devastation it has suffered

5    as a result of the CFPB's misconduct, this Court can compel the CFPB to cover the

6    costs incurred by the Attorneys defending and appealing the CFPB's frivolous claims

7    between August 19, 2015 and the present.

8        Lastly, in addition to their authority under Rule 11, the federal courts have

9    authority to impose sanctions under their "inherent powers" "which are necessary to

10   the exercise of all others."[93]

11  **IV.**   **CONCLUSION**

12        For the foregoing reasons, Defendants respectfully request that this Court enter

13  an Order of sanctions against the CFPB and (a) dismiss the Complaint filed by the

14  CFPB against the Defendants on January 31, 2017 with prejudice; (b) find that the

15  Attorney Defendants are entitled to monetary sanctions and set a hearing to determine

16  the appropriate monetary sanctions, and (c) for such other and further relief that this

17  Court deems just and proper.

18  DATED: January 25, 2018            THE VANDERPOOL LAW FIRM

19

20                              /s/ Douglas B. Vanderpool

                           By: _____

21                           Douglas B. Vanderpool, Esq.  (SBN 162857)

                           Heather A. Tovar, Esq.  (SBN 237004)

22                           THE VANDERPOOL LAW FIRM

                           330 Main Street, Suite 203B

23                           Seal Beach, CA 90740

                           Tel:  562.431.6900; Fax: 714.276.0558

24                           Email: doug@vanderpool-law.com;

25                           heather@vanderpool-law.com

26

27

---

28  [92] *Walter v. Fiorenzo*, 840 F.2d 427, 433 (7th Cir.1988) (citations omitted).

     [93] *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980).

1

## RULE 11(c)(2) CERTIFICATE

2

3        Pursuant to Rule 11(c)(2), I hereby certify that on the 25th day of January ,

4   2018, I served by email and first class mail, postage prepaid, upon Plaintiff, the

5   Consumer Financial Protection Bureau, a copy of the foregoing Defendants Motion

6   for Sanctions Pursuant to Fed. R. Civ. P. 11, together with a letter stating as follows:

7   Pursuant to Fed. R. Civ. P. 11(c) (2), attached is a service copy of the Fed. R. Civ. P.

8   11 Motion for Terminating Sanctions of Defendants Howard Law, P.C., Williamson

9   & Howard, LLP, The Williamson Firm, LLC, Vincent Howard and Lawrence

10  Williamson ("Motion for Terminating Sanctions") which we are providing to you. We

11  demand that you dismiss with prejudice your claims against Howard Law, P.C.,

12  Williamson & Howard, LLP, The Williamson Firm, LLC, Vincent Howard and

13  Lawrence Williamson within 21 days of the date of this letter. If you refuse to dismiss

14  your claims against Howard Law, P.C., Williamson & Howard, LLP, The Williamson

15  Firm, LLC, Vincent Howard and Lawrence Williamson, then we will be forced to file

16  the attached Motion for Terminating Sanctions with the Court.

17

18  DATED: January 25, 2018              THE VANDERPOOL LAW FIRM

19
                                                /s/ Douglas B. Vanderpool
20                                       By: _____
21                                       Douglas B. Vanderpool, Esq.  (SBN 162857)
                                         Heather A. Tovar, Esq.  (SBN 237004)
22                                       THE VANDERPOOL LAW FIRM
                                         330 Main Street, Suite 203B
23                                       Seal Beach, CA 90740
                                         Tel:  562.431.6900; Fax: 714.276.0558
24                                       Email: doug@vanderpool-law.com;
25                                       heather@vanderpool-law.com

26

27

28

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed by the law office of Douglas B. Vanderpool in the County of Orange, State of California.  I am over the age of 18 and not a party to the above-captioned action.  My business address is 330 Main Street, Suite 203B, Seal Beach, Ca 90740.

On February 16, 2018, I served a copy of the attached documents entitled:
**DEFENDANTS' MOTION FOR TERMINATING AND MONETARY SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927** on the interested parties in this action as follows:

### See Attached Service List

[]      BY MAIL:      By placing a true and correct copy thereof enclosed in a sealed envelope addressed as above, with postage thereon fully prepared, in the U.S. Mail at Seal Beach, California.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal service on the same day with postage thereon fully prepaid at Seal Beach, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing as stated in the affidavit.

[XX]   BY ELECTRONIC MAIL:   I personally sent the attached document from my e-mail account, doug@vanderpool-law.com to the recipient's e-mail account set forth in the service list.  I did not receive any electronic transmission or other message within a reasonable time that the delivery was unsuccessful.

[ ]     BY PERSONAL SERVICE:  I caused such envelope to be delivered by hand to the offices of the addressee(s).

[XX] **(Federal)**       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 16, 2018 at Seal Beach, California.

//s// Pamela Condon
_____

Pamela Condon

1

## SERVICE LIST

2

3   Cara Petersen
    Jan Singelmann

4   Amy Radon
    Consumer Financial Protection Bureau
    1700 G Street
5   Washington DC 20552
    Email: amy.radon@cfpb.gov; jan.singelmann@cfpb.gov; kristin.bateman@cfpb.gov
6

7
    Leanne E. Hartmann
8   Consumer Financial Protection Bureau
    301 Howard Street, Suite 1200
9   San Francisco, CA 94105
    Email: Leanne.hartmann@cfpb.gov
10

11

12
    *Attorneys for Consumer Financial Protection Bureau*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28