JEFFREY PAUL EHRLICH, FL Bar # 51561
Deputy Enforcement Director
JAN SINGELMANN, DC Bar # 999087
E-mail: jan.singelmann@cfpb.gov
Phone: 202-435-9670
AMY RADON, CA Bar # 277727
E-mail: amy.radon@cfpb.gov
Phone: 202-435-9142
P. SOLANGE HILFINGER-PARDO, CA Bar # 320055
E-mail: patricia.hilfinger-pardo@cfpb.gov
Phone: 202-435-9024
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722

LEANNE HARTMAN, CA Bar # 264787 - Local Counsel
Consumer Financial Protection Bureau
301 Howard St., Suite 1200
San Francisco, CA  94105
Phone: (415) 844-9787
Email: leanne.hartman@cfpb.gov
Attorneys for Plaintiff
Consumer Financial Protection Bureau

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Consumer Financial Protection Bureau, | Case No. 8:17-CV-00161 (JLS) (JEMx) |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR TERMINATING AND MONETARY SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927** |
| Vincent Howard, Lawrence Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP, | |
| Defendants. | |

1    The Consumer Financial Protection Bureau brought this enforcement action

2    against Vincent Howard; Lawrence Williamson; Howard Law, P.C.; The Williamson

3    Law Firm; and Williamson & Howard, LLP ("Defendants" or "Attorneys") alleging that

4    they violated consumer financial protection laws as part of their role in an unlawful debt-

5    relief scheme that they perpetrated along with Morgan Drexen, Inc. Now, in a Hail-Mary

6    attempt to end prematurely the litigation, Defendants seek terminating sanctions against

7    the Bureau (as well as attorneys' fees) for the Bureau's purportedly improper conduct in

8    prosecuting a contempt motion against them over two and a half years ago in a separate

9    enforcement action against Morgan Drexen.

10    The Court should reject Defendants' motion for sanctions out of hand. Neither

11    Federal Rule of Civil Procedure 11 nor 28 U.S.C. § 1927 permits Defendants to seek

12    sanctions in *this* case for the Bureau's conduct in an entirely separate case. Nor can they

13    seek sanctions under Rule 11 "after the district court has decided the merits of the

14    underlying dispute."[1] The Court long ago decided the contempt motion on which

15    Defendants' motion for sanctions is based, so Defendants' request for Rule 11 sanctions

16    comes far too late.

17    In addition to these procedural problems, Defendants' motion is substantively

18    meritless. Defendants flagrantly violated clear orders of this Court, took over Morgan

19    Drexen's role in a scheme that this Court had found unlawful, and engaged in conduct

20    that this Court had enjoined. It was entirely reasonable for the Bureau to seek contempt in

21    those circumstances.

22

23

24

25

26 ───────────────

27

28    [1] *Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 873 (9th Cir. 2014) (citing Fed.
R. Civ. P. 11, Advisory Committee's Note to 1993 Amendments).

1

1   **I.   BACKGROUND**

2     **A. The *Morgan Drexen* enforcement action**

3      In 2013, the Bureau brought suit against Morgan Drexen for deceiving consumers

4   and charging unlawful upfront fees for debt-relief services.[2] The Bureau alleged that

5   Morgan Drexen partnered with attorneys across the country to carry out its scheme.[3]

6   Morgan Drexen allegedly would enroll financially distressed consumers in a program

7   under which Morgan Drexen's partner attorneys purportedly would provide bankruptcy

8   and debt-relief services.[4] Because it is unlawful to charge upfront fees for debt-relief

9   services,[5] Morgan Drexen claimed that the upfront fees were for bankruptcy services.[6]

10   But, as alleged in the Complaint, little to no bankruptcy work was ever actually

11   performed.[7] After the Court found that Morgan Drexen deliberately fabricated evidence

12   of purported bankruptcy work in the case, it entered judgment against Morgan Drexen

13   and enjoined the company from charging any further fees to the consumers it had already

14   victimized and from using or disclosing consumer files.[8] On the same day that the Court

15   entered that injunction, Morgan Drexen shut down.[9]

16     **B. The Attorneys' involvement and contempt proceedings in *Morgan Drexen***

17      After the Court entered judgment against Morgan Drexen, Howard Law,

18   Williamson & Howard, and the Williamson Law Firm—who were not parties to the

19

20

---

21   [2] *CFPB v. Morgan Drexen, Inc.*, No. 8:13-cv-1267 (C.D. Cal.) (complaint filed Aug. 20,
22   2013).
  [3] *See* Compl. ¶¶ 7-14 (Doc. 1), *CFPB v. Morgan Drexen.*
23     [4] *Id.* ¶¶ 13-14.
24     [5] 16 C.F.R. § 310.4(a)(5)(i).
  [6] *Morgan Drexen* Compl. ¶¶ 31-33.
25     [7] *Id.* ¶ 60.
26     [8] Order Granting Pl.'s Mot. for Sanction of Default J. Against Morgan Drexen, Inc. (Doc.
27   284); Order re: Permanent Inj. (Doc. 306), *CFPB v. Morgan Drexen.*
  [9] Notice of Cessation of All Operations of Morgan Drexen (Doc. 307), *CFPB v. Morgan*
28   *Drexen.*

1   *Morgan Drexen* case but had been involved in the debt-relief scheme—sought

2   clarification or modification of the injunction to allow Morgan Drexen's bankruptcy

3   trustee to disclose the consumer files to them.[10] The Bureau did not oppose that request,

4   but asked that the Court preclude the Attorneys from using the files to collect fees from

5   Affected Consumers (*i.e.*, those consumers already victimized by Morgan Drexen's

6   unlawful scheme).[11]

7         In its July 6, 2015 Clarification Order, the Court permitted the firms to obtain

8   consumer files from Morgan Drexen, but refused to give them "unfettered access"—and

9   made clear that they could not use those files to continue collecting fees from harmed

10  consumers.[12] It reasoned that "any additional collection of fees from Affected Consumers

11  would only further victimize consumers who have already paid illegal up-front fees for

12  services that they may never have received."[13] The Clarification Order further advised

13  that, under Federal Rule of Civil Procedure 65(d), the injunction also applied to persons

14  who act "in concert" with the enjoined party, and that it "appear[ed] to the Court that the

15  Attorneys were in 'active concert or participation with' Morgan Drexen while Morgan

16  Drexen was collecting illegal up-front fees from Affected Consumers."[14]

17        The Attorneys sought an emergency stay of this order from the Ninth Circuit, but

18  that court declined to grant a stay.[15]

19        Having failed to obtain judicial relief from the Clarification Order, the Attorneys

20  took matters into their own hands and simply violated the order. They circumvented the

21

22

23  [10] Am. and Corrected *Ex Parte* Mot. for Clarification or Modification of Inj. (Doc. 313),
24  *CFPB v. Morgan Drexen*.
    [11] Pl.'s Conditional Opp'n to Ch. 7 Trustee's *Ex Parte* Appl. for Order Clarifying Order
25  re: Permanent Inj. at 2 (Doc. 318), *CFPB v. Morgan Drexen*.
26  [12] Order at 11 (Doc. 326), *CFPB v. Morgan Drexen* ("Clarification Order").
    [13] *Id.*
27  [14] *Id.* at 10.
28  [15] *CFPB v. Howard Law, P.C.*, No. 15-56089 (9th Cir.) (Docs. 3, 11).

1  Morgan Drexen trustee to get full access to Morgan Drexen's files, and then used those

2  files to continue collecting fees from harmed consumers—exactly what this Court had

3  forbidden.[16] They also sent out letters to consumers that directly contradicted letters that

4  this Court instructed the Bureau and the Morgan Drexen trustee to send to consumers

5  advising them of their rights.[17] And they stepped into Morgan Drexen's shoes, taking

6  over its role in the operation.[18] They hired Morgan Drexen's officers and employees, took

7  over its departments, and used its files to continue charging the same consumers the same

8  fees under the same contracts.[19]

9       Once it discovered these facts, the Bureau filed an *ex parte* application on August

10  19, 2015, asking the Court to hold the Attorneys in contempt.[20] After full briefing, on

11  October 9, 2015, the Court held the Attorneys in contempt as successors, finding that it

12  was "clear and convincing that the Attorneys have continued Morgan Drexen's business

13  enterprise—using the *same* employees and *same* customer files to collect the *same*

14  unlawful fees from the *same* consumers pursuant to the *same* contracts."[21]

15      **C. The Attorneys' appeal**

16       The Attorneys appealed the Contempt Order.[22] On appeal, the Ninth Circuit held

17  that the Attorneys could not be bound as successors because the injunction "did not

18  expressly bind 'successors,'" and because there was not sufficient evidence in the

19  "current iteration" of the record that "the Attorneys acquired Morgan Drexen's assets

20

21

---

22  [16] Order Holding [Attorneys] in Contempt at 35 (Doc. 386), *CFPB v. Morgan Drexen*
23  ("Contempt Order").
24  [17] *Id.* at 38.
   [18] *Id.* at 33.
25  [19] *Id.* at 30-33.
26  [20] Pl.'s *Ex Parte* Appl. for an Order to Show Cause (Doc. 348), *CFPB v. Morgan Drexen*
   ("Contempt Mot.").
27  [21] Contempt Order at 33.
28  [22] *CFPB v. Howard Law, P.C.*, No. 15-56576 (9th Cir.).

1  after the Permanent Injunction was entered."[23] The court of appeals further held that "[i]t

2  could be, however, that the Attorneys and Morgan Drexen were so identified in interest

3  prior to the entry of the Permanent Injunction … as to warrant a finding of legal identity

4  based on pre-injunction conduct."[24] The court accordingly "reverse[d] and remand[ed] for

5  additional and more detailed findings and conclusions."[25] On remand, the Bureau

6  declined to continue pursuing contempt against the Attorneys.

7      **D. This enforcement action**

8      On January 30, 2017, the Bureau brought this enforcement action against the

9  Attorneys. The Bureau alleges that Defendants violated the Telemarketing Sales Rule

10  (TSR), 16 C.F.R. pt. 310, by charging upfront fees for debt-relief services, falsely

11  representing in advertisements that they did not charge upfront fees for debt-relief

12  services, and providing substantial assistance to Morgan Drexen's violations of the

13  TSR.[26] Defendants moved to dismiss, and the Court denied that motion on May 26,

14  2017.[27] Among other things, the Court rejected Defendants' argument that the Bureau

15  should be judicially estopped from pursuing this enforcement action against them

16  because the agency previously charged Morgan Drexen, not them, with the same

17  conduct.[28] In rejecting that argument, the Court made clear that "the agency's choice to

18  file suit solely against Morgan Drexen, alleging that the company committed various

19  violations of the TSR, is not 'clearly inconsistent' with the agency['s] subsequent

20

21

22

23  [23] *CFPB v. Howard Law, P.C.*, 671 Fed. Appx. 954, 955 (9th Cir. 2016) (internal
24  quotations omitted).
    [24] *Id.* at 955-56 (internal quotations and ellipsis omitted).
25  [25] *Id.* at 956 (internal quotations omitted).
26  [26] Compl. ¶¶ 87-97 (Doc. 1).
    [27] Defs.' Mot. to Dismiss (Doc. 27); Order Denying Defs.' Mot. to Dismiss ("MTD
27  Order") (Doc. 42).
28  [28] MTD Order at 12.

1    decision to take action against Defendants."[29] The Court similarly rejected Defendants'

2    argument that issue preclusion principles should bar the Bureau from pursuing its claims

3    against them because the Bureau previously alleged that Morgan Drexen engaged in the

4    conduct for which it now seeks to hold Defendants liable.[30] This defense failed, the Court

5    explained, because "the *Morgan Drexen* action did not resolve whether Morgan Drexen

6    acted alone or in concert with others."[31] Discovery in this case is currently underway.

7    **II.    ARGUMENT**

8            In an attempt to relitigate both the contempt motion in *Morgan Drexen* and their

9    motion to dismiss this case, Defendants now seek sanctions against the Bureau under

10   Rule 11 and 28 U.S.C. § 1927. Defendants contend that terminating sanctions as well as

11   an award of attorneys' fees are warranted because, in the contempt proceedings in

12   *Morgan Drexen*, the Bureau purportedly improperly (1) "argued that Defendants were

13   bound [by the Morgan Drexen injunction] because they 'acted in concert' with Morgan

14   Drexen before the injunction was issued," and (2) presented inaccurate facts to show that

15   Defendants had become Morgan Drexen's successors by "stepp[ing] into the shoes of

16   Morgan Drexen" and "t[aking] over Morgan Drexen's debt relief business."[32]

17   Defendants' request is both procedurally improper and substantively meritless.

18           **A. Defendants' motion is procedurally improper**

19           As a threshold matter, a Rule 11 sanctions motion "cannot be served after the

20   district court has decided the merits of the underlying dispute giving rise to the

21   questionable filing."[33] The Attorneys' motion seeking sanctions for the Bureau's actions

---

24   [29] *Id.* at 12.

     [30] MTD Order at 12-13; *see also* Defs.' Mot. to Dismiss at 20-24 (Doc. 27).

25   [31] MTD Order at 12-13.

26   [32] Defs.' Mem. (Doc. 70) at 1-2 (internal quotations omitted).

27   [33] *Islamic Shura Council*, 757 F.3d at 873; *see also* Fed. R. Civ. P. 11, Advisory
     Committee's Notes to the 1993 Amendments ("[A] party cannot delay serving its Rule 11

28   motion until conclusion of the case (or judicial rejection of the offending contention).").

1   in prosecuting the contempt motion in *Morgan Drexen* thus comes far too late. Not only

2   has the Court decided the merits of the underlying dispute (the contempt motion), the

3   Ninth Circuit has resolved the Attorneys' appeal, and the case is closed.[34]

4         In addition, Defendants "present[] no argument or authority that would authorize

5   the court to grant sanctions against [the Bureau] for actions committed in a separately

6   filed case."[35] The Ninth Circuit has made clear that, for purposes of 28 U.S.C. § 1927

7   sanctions motions, district courts do "not have power to sanction conduct that occurred in

8   a different court in a different case."[36] That this Court is the same court that presided over

9   the *Morgan Drexen* action does not matter. "The principal purpose of imposing sanctions

10  under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the

11  proceedings."[37] That purpose "is frustrated by the imposition of sanctions in two distinct

12  cases, not in two different courts."[38] Thus, a party cannot seek § 1927 sanctions based on

13  conduct in a different case, even if the new case is proceeding before the same court.[39]

14  Nor could Defendants claim that the Bureau has somehow unreasonably and vexatiously

15

16

17

18  [34] *See Howard Law*, 671 Fed. Appx. 954 (resolving appeal); Minutes, Status Conference

19  (Doc. 512), *CFPB v. Morgan Drexen* (closing case).

    [35] *Foley v. Kennedy*, No. 03-2203, 2004 WL 1243899, at *10 (N.D. Cal. May 27, 2004)

20  (denying Rule 11 sanctions motion).

21  [36] *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995); *accord Inviron Techs., Inc. v. W.*

22  *States Int'l, Inc.*, No. 1:15-cv-01643, 2016 WL 861397, at *5 (E.D. Cal. Mar. 7, 2016)
    ("[A]llegations of opposing counsel's … misconduct in other proceedings cannot give

23  rise to sanctions under § 1927."); *Oliver v. In-N-Out Burgers*, 945 F. Supp. 2d 1126,

24  1130 n.1 (S.D. Cal. 2013) ("The Court may only sanction a party based on activities that
    occurred in the case before the district court.").

25  [37] *Raymark Indus., Inc. v. Baron*, No. 96-7625, 1997 WL 359333, at *7 (E.D. Pa. June

26  23, 1997) (internal quotations and alteration omitted) (quoting *Zuk v. E. Pa. Psychiatric*
    *Inst.*, 103 F.3d 294, 297 (3d Cir. 1996)).

27  [38] *Id.* at *7 n.10.

28  [39] *See id.* at 7 & n.10.

1  multiplied proceedings under 28 U.S.C. § 1927 by filing this suit against Defendants.

2  "The filing of a complaint … may not be sanctioned pursuant to § 1927."[40]

3        **B.  The Bureau did not engage in sanctionable conduct**

4        Defendants' motion is also substantively meritless, as the Bureau's attempt to hold

5  the Attorneys in contempt was entirely proper.

6        **1. No sanctions are warranted under 28 U.S.C. § 1927**

7        Defendants' contention that the Bureau "multiplie[d] proceedings … unreasonably

8  and vexatiously" under 28 U.S.C. § 1927 by seeking contempt against them is frivolous.

9  The Court made it clear in its Clarification Order that although the Attorneys could obtain

10  their customer files from Morgan Drexen, they could not use those files to continue

11  collecting fees from Affected Consumers.[41] The Court further held that the Attorneys

12  would be bound by the injunction.[42] The Attorneys sought a stay of the Clarification

13  Order from the Ninth Circuit, but the Ninth Circuit denied it.[43] Defendants then

14  nonetheless violated the Court's order by using the files to collect fees from Affected

15  Consumers, and they took over Morgan Drexen's operations to continue carrying out the

16  scheme. In an effort to keep consumers paying fees for the debt-relief program,

17  Defendants even sent consumers letters that directly contradicted letters that the Court

18  ordered the Bureau and the Morgan Drexen Trustee to send out. Defendants' blatant

19  disregard of the Court's order flew in the face of the black-letter law that, "[a]bsent a

20  stay, 'all orders and judgments of courts must be complied with promptly.'"[44] It was

---

23  [40] *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

24  [41] Clarification Order at 11.

    [42] *Id.* at 10.

25  [43] Order, *CFPB v. Howard Law, P.C.*, No. 15-56089 (Doc. 11).

26  [44] *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983) (quoting *Maness v. Meyers*, 419 U.S. 449, 458 (1975)); *see also In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987) (Where "no stay [is] obtained," a "party cannot disobey a

28  court order.").

1    hardly "unreasonabl[e]" or "vexatious[]" for the Bureau to pursue contempt in these

2    circumstances. Defendants' request for sanctions under 28 U.S.C. § 1927 is therefore

3    baseless.

4    **2. No sanctions are warranted under Rule 11**

5         Nor does Defendants' contention that the Bureau violated Rule 11 by seeking

6    contempt against them have any merit. To support their request under Rule 11,

7    Defendants first complain that the Bureau made a frivolous legal contention by seeking to

8    hold them in contempt based on their pre-injunction activity in concert with Morgan

9    Drexen (and that the Bureau's "non-frivolous" argument that the Attorneys were bound

10    as successors did not redeem the Bureau's contempt motion, as the Bureau did not raise

11    that argument until the reply brief).[45] But the Court's Clarification Order made clear that

12    the Attorneys were bound by the injunction in the *Morgan Drexen* case. It was hardly

13    unreasonable for the Bureau to seek to enforce that order when it learned that Defendants

14    were violating it—particularly given the law's command that "[a]bsent a stay, all orders

15    and judgments of courts must be complied with promptly.'"[46] Moreover, Defendants'

16    objection to the legal argument that they were bound by the *Morgan Drexen* injunction

17    based on their pre-injunction activity cannot be squared with the Ninth Circuit's

18    recognition on appeal that the Attorneys *could* be bound "based on pre-injunction

19    conduct."[47] And, in any event, the Bureau argued at the outset of the contempt process

20    that the Attorneys had "stepped into the shoes of Morgan Drexen," including by hiring

21    former Morgan Drexen employees, to keep the scheme alive.[48]

22         The Attorneys' second Rule 11 claim—that the Bureau misrepresented facts to

23    show that the Attorneys became successors to Morgan Drexen—fares no better. The

24

25

26    [45] *See* Defs.' Mem. at 8-12.

27    [46] *Donovan*, 716 F.2d at 1240 (internal quotations omitted).

      [47] *Howard Law*, 671 Fed. Appx. at 956.

28    [48] Contempt Mot. at 12; *see also id.* at 1, 7-8.

1   Attorneys appear to contend that it is impossible for them to be successors to Morgan

2   Drexen because, as the Bureau "now represent[s]" (and Defendants apparently concede),

3   the Attorneys have been involved all along as principals supervising Morgan Drexen as

4   their agent in carrying out the unlawful debt-relief scheme.[49] This Court has repeatedly

5   rejected just this sort of argument. As it explained in response to the Attorneys' Rule

6   60(b) motion in the *Morgan Drexen* matter, it is "absurd" to suggest that the Attorneys

7   would be "immune from successorship liability because they also happened to have

8   played a role in Morgan Drexen's earlier (illegal) conduct."[50] In addition, as the Court

9   recognized in rejecting Defendants' judicial estoppel and issue preclusion arguments in

10  their motion to dismiss in this case, the Bureau's claims here are consistent with its

11  earlier litigation against Morgan Drexen.[51] Whatever the Attorneys' relationship with

12  Morgan Drexen before the Court entered the injunction against that company, the

13  Attorneys unquestionably took over *Morgan Drexen's role* in their shared scheme—and

14  it was entirely appropriate for the Bureau to contend that Defendants were successors to

15  Morgan Drexen on that basis. Indeed, consistent with this history, the Bureau alleges in

16  this action that the Attorneys violated the TSR both before and after they took over the

17  debt relief operation from Morgan Drexen.

18                                       **CONCLUSION**

19        For all the foregoing reasons, the Court should deny Defendants' motion for

20  sanctions.

21

22

23

24   _____

25

26  [49] Defs.' Mem. at 14-17.

27  [50] Order Holding In Abeyance Attorneys' Rule 60(b) Mot. at 8 (Doc. 500), *CFPB v.
    Morgan Drexen*.

28  [51] *See* MTD Order at 12-13.

1    Dated: March 2, 2018                      Respectfully submitted,

2

3                                              CONSUMER FINANCIAL PROTECTION
                                               BUREAU
4

5                                              KRISTEN A. DONOGHUE
                                               Enforcement Director
6

7                                              JEFFREY PAUL EHRLICH
                                               Deputy Enforcement Director
8

9                                              R. GABRIEL D. O'MALLEY
                                               Assistant Litigation Deputy
10

11                                             /s/ Jan Singelmann
                                               Jan Singelmann
12                                             Amy Radon
                                               P. Solange Hilfinger-Pardo
13                                             *Enforcement Attorneys*
                                               Consumer Financial Protection Bureau
14                                             1700 G Street NW
                                               Washington, DC 20552
15                                             Fax: (202) 435-7722
16

17

18                                             Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on March 2, 2018, a copy of the foregoing document was served via electronic mail to counsel for Defendants, listed below:

Douglas B. Vanderpool (SBN 162857)
Heather A. Tovar (SBN 237004)
The Vanderpool Law Firm
330 Main Street, Suite 203B
Seal Beach, CA 90740
Tel: 562-431-6900
Fax: 714-276-0558
doug@vanderpool-law.com
heather@vanderpool-law.com

/s/ Jan Singelmann
Jan Singelmann
Enforcement Attorney
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
Fax: (202) 435-7722