# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Bureau of Consumer Financial Protection,<br><br>        Plaintiff,<br><br>v.<br><br>Vincent Howard, Lawrence Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP,<br><br>        Defendants. | Case No. 8:17-CV-00161 (JLS) (JEMx)<br><br><br>**CONSENT JUDGMENT**<br><br>**HON. JOSEPHINE L. STATON**<br>**Courtroom 10-A (Santa Ana)** |

Plaintiff, the Bureau of Consumer Financial Protection ("Bureau"), commenced this civil action on January 30, 2017, pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6102(c)(2), 6105(d), and its implementing regulation, 16 C.F.R. part 310 ("Telemarketing Sales Rule" or "TSR"). On that date, the Bureau filed a *Complaint for Permanent Injunction and Other Relief* ("Complaint") to obtain permanent injunctive relief, rescission or reformation of contracts, the refund of moneys paid, restitution, disgorgement or compensation for unjust enrichment, civil money penalties, the cost of bringing this action, and other relief from Defendants Vincent Howard, Lawrence W. Williamson, Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP (collectively, "Defendants"). The Bureau's Complaint alleges violations of the TSR in connection with Defendants' telemarketing and sale of debt relief services. (Doc. 1.)

The Bureau and Defendants, by and through their respective counsel, agree to the entry of this Consent Judgment ("Judgment").

It is therefore **ORDERED, ADJUDGED, AND DECREED** as follows:

# I.   FINDINGS

1.      This Court has jurisdiction over the subject matter of this case pursuant to 12 U.S.C. § 5565(a)(1) and 28 U.S.C. §§ 1331, 1345.

2.      This Court has personal jurisdiction over Defendants because the causes of action arise from Defendants' transacting business in this District and Defendants have caused injury in this District through acts or omissions occurring both inside and outside of this District.

3.      Venue is proper in the Central District of California under 28 U.S.C. §§ 1391(b) and (c), and 12 U.S.C. § 5564(f).

4.      The Bureau and Defendants agree to the entry of this Judgment, without adjudication of any issue of fact or law, to settle and resolve all matters in dispute arising from the conduct alleged in the Complaint.

5. The Complaint states claims upon which relief may be granted under the TSR. The relief provided in this Judgment is appropriate and available pursuant to Sections 1054 and 1055 of the CFPA, 12 U.S.C. §§ 5564 and 5565, and pursuant to the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. § 6102(c)(2).

6. Defendants neither admit nor deny the allegations in the Complaint, nor do they admit or deny any of the factual findings in this Judgment, except Defendants admit the Court's jurisdiction over Defendants and the subject matter of this action.

7. Entry of this Judgment is in the public interest.

8. Defendant Vincent Howard ("Howard") is a "covered person" and a "related person," as those terms are defined by the CFPA, 12 U.S.C. §§ 5481(6)(A) and (25).

9. Howard is a "seller" and "telemarketer" of a "debt relief service" who engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2.

10. Defendant Lawrence W. Williamson ("Williamson") is a "covered person" and a "related person," as those terms are defined by the CFPA, 12 U.S.C. §§ 5481(6)(A) and (25).

11. Williamson is a "seller" and "telemarketer" of a "debt relief service" who engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2.

12. Defendant Howard Law, P.C. ("Howard Law") is a "covered person" as that term is defined by the CFPA, 12 U.S.C. §§ 5481(6)(A).

13. Howard Law is a "seller" and "telemarketer" of a "debt relief service" that engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2.

14. Defendant The Williamson Law Firm, LLC ("Williamson Law") is a "covered person" as that term is defined by the CFPA, 12 U.S.C. §§ 5481(6)(A).

15. Williamson Law is a "seller" and "telemarketer" of a "debt relief service" that engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2.

16. Defendant Williamson & Howard, LLP ("Williamson & Howard") is a "covered person" as that term is defined by the CFPA, 12 U.S.C. §§ 5481(6)(A).

17.     Williamson & Howard is a "seller" and "telemarketer" of a "debt relief service" that engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2.

18.     Defendants began to offer and provide debt relief services to consumers in 2007, when Howard and Williamson contracted with a company called Morgan Drexen, Inc. ("Morgan Drexen") to provide administrative services for Defendants' law firms.

19.     In the early stages of the debt relief business, consumers entered into contracts with Howard Law or Williamson Law for debt relief services. In 2013, Howard and Williamson formed Williamson & Howard, among other reasons, to offer debt relief services separately from their existing law firms.

20.     In October 2010, the Federal Trade Commission responded to the proliferation of abusive and deceptive practices in the debt relief industry by amending the TSR to, among other things, prohibit debt relief companies engaged in telemarketing from requesting or receiving advance fees before renegotiating, settling, reducing, or otherwise altering the terms of at least one of a consumer's debts, and before a consumer has made at least one payment on such altered debt. 16 C.F.R. § 310.4(a)(5)(i)(A)-(B).

21.     The TSR amendments do not provide an exemption for attorneys practicing law in connection with debt relief. The TSR amendments also apply to inbound consumer calls in response to advertisements relating to debt relief services. 16 C.F.R. § 310.6(b)(5)(i).

22.     On August 20, 2013, the Bureau filed suit against Morgan Drexen and its founder, Walter Ledda. The Bureau alleged, among other things, that Morgan Drexen and Ledda violated the TSR and the CFPA through their roles in: (1) requesting or receiving advance fees for debt relief services; and (2) representing to consumers that they would not be charged advance fees for debt relief services, when in fact, consumers were charged such fees. *See Consumer Financial Protection Bureau v. Morgan Drexen Inc.,* et al., No. SACV 13-1267-JLS (JEMx), ECF No. 1 ("*Morgan Drexen*").

23.    On April 21, 2015, the District Court issued terminating sanctions against Morgan Drexen and, on June 18, 2015, the District Court entered a permanent injunction ("Injunction") against Morgan Drexen. *See Morgan Drexen*, ECF Nos. 284, 306.

24.    The Injunction permanently restrained and enjoined Morgan Drexen from collecting any further fees from consumers who had paid up-front fees to Morgan Drexen prior to Morgan Drexen renegotiating, settling, reducing, or otherwise altering the terms of at least one of such consumers' debts, or from consumers who had enrolled in the debt relief program in response to Morgan Drexen's deceptive advertisements. *Morgan Drexen*, ECF No. 306.

25.    After the District Court entered the Injunction, the Bureau learned that Defendants had taken over Morgan Drexen's role in the debt relief operations and were continuing to charge debt relief fees to the very consumers the Injunction was intended to protect.

26.    Based on the Bureau's analysis of available data obtained in the *Morgan Drexen* litigation, from January 30, 2014 through June 18, 2015, when Morgan Drexen went out of business, consumers paid Defendants and Morgan Drexen $29,929,294 in unlawful fees for debt relief services.

27.    Based on the Bureau's analysis of available data obtained from Defendants, from June 18, 2015 through October 9, 2015, consumers paid Defendants $5,326,981 in unlawful fees for debt relief services after Morgan Drexen went out of business.

## II.    DEFINITIONS

28.    The following definitions apply to this Judgment:

    a.  "Affected Consumer" means any consumer who:

        i.   on or after January 30, 2014, paid fees to Defendants, either directly or through Defendants' Network Attorneys, prior to Defendants' renegotiating, settling, reducing, or otherwise altering the terms of at least one debt of the consumer; or

ii.    on or after January 30, 2014, enrolled in a debt relief service in response to Defendants' deceptive advertisements.

b.  "Asset" means any legal or equitable interest in, right to, or claim to any real, personal, or intellectual property owned or controlled by, or held in whole or in part, for the benefit of, or subject to access by Defendants, wherever located, whether in the United States or abroad, including, but not limited to, all Assets identified in: (i) financial statements and supporting documents that Defendants submitted to the Bureau; and (ii) sworn declarations signed by Defendants on March 11 and 12, 2019. This includes, but is not limited to, chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are defined in the Uniform Commercial Code), funds, cash, and trusts, including, but not limited to, any trust held for the benefit of Defendants, any of Defendants' minor children, or Defendants' current or former spouse(s), but excludes furniture, computers, clothes, books, and personal healthcare products.

c.  "Assisting others" includes, but is not limited to:

i.    providing paralegal or administrative support services;

ii.    performing customer service functions, including, but not limited to, receiving or responding to consumer complaints;

iii.  formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone sales script, direct mail solicitation, or the text of any internet website, email, or other electronic communication;

iv. formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including, but not limited to, web or internet protocol ("IP") addresses or domain name registration for any internet websites, affiliate marketing services, or media placement services;

v. providing names of, or assisting in the generation of, potential customers;

vi. performing marketing, billing, or payment services of any kind; and

vii. acting or serving as an owner, officer, director, manager, or principal of any entity.

d. "Competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

e. "Consumer financial product or service" is synonymous in meaning and equal in scope to the definitions of the term in sections 1002(5) and (15) of the CFPA, and, subject to applicable restrictions contained in the CFPA, includes, but is not limited to:

i. extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit (other than solely extending commercial credit to a person who originates consumer credit transactions);

ii. providing financial advisory services to consumers on individual financial matters or relating to proprietary financial products or services, including providing credit counseling to any consumer or providing services to assist a consumer with debt management or

debt settlement, modifying the terms of any extension of credit, or avoiding foreclosure;

    iii.   collecting, analyzing, maintaining, or providing consumer report information or other account information, including information relating to the credit history of consumers, used or expected to be used in connection with any decision regarding the offering or provision of a consumer financial product or service; and

    iv.   collecting debt related to any consumer financial product or service.

f.   "Corporate Defendants" means Howard Law, P.C., The Williamson Law Firm, LLC, and Williamson & Howard, LLP, collectively, or in any combination, and their successors and assigns.

g.   "Debt relief product or service" means any product, service, plan, or program represented, expressly or by implication:

    i.   to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, including, but not limited to, a tax debt or obligation, between a person and one or more creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to a creditor or debt collector; or

    ii.   to relate to Chapter 7, Chapter 9, Chapter 11, or Chapter 13 of the U.S. Bankruptcy Code, or any other bankruptcy-related matter.

h.   "Defendants" means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

i.   "Document" and "Electronically Stored Information" are synonymous in meaning and equal in scope to the usage of the terms in Rule 34(a) of the Federal Rules of Civil Procedure, and include, but are not limited to, writings, drawings, graphs, charts, photographs, audio and video

recordings, computer records, and other data compilations from which the information can be obtained and translated, if necessary, through detection devices into reasonably usable forms.

j. "Effective Date" means the date on which this Judgment is signed by the Court.

k. "Enforcement Director" means the Assistant Director of the Office of Enforcement for the Bureau of Consumer Financial Protection, or his or her delegate.

l. "Individual Defendants" means Vincent Howard and Lawrence W. Williamson, collectively, or in any combination, and each of them by any other names by which they might be known.

m. "Network Attorneys" means the attorneys, other than Defendants, who signed contracts with consumers related to debt relief products or services Defendants offered or provided to consumers.

n. "Person" means an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity.

o. "Related Consumer Action" means a private action by or on behalf of one or more consumers or an enforcement action by another governmental agency brought against Defendants based on substantially the same facts as described in the Complaint.

p. "Telemarketing" means a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate phone call.

q. The words "and" and "or" shall be understood to have both conjunctive and disjunctive meanings as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

## III. PERMANENT BAN ON TELEMARKETING AND DEBT RELIEF PRODUCTS AND SERVICES

**IT IS ORDERED** that:

29. Defendants, and their officers, agents, servants, employees, and attorneys, who have actual notice of this Judgment, whether acting directly or indirectly, are permanently restrained and enjoined from, or assisting others in, any of the following:

    a. Participating in telemarketing any consumer financial product or service;

    b. Advertising, marketing, promoting, offering for sale, selling, or providing any debt relief product or service;

    c. Receiving any remuneration or other consideration from, holding any ownership interest in, providing services to, or working in any capacity for any person engaged in advertising, marketing, promoting, offering for sale, selling, or providing any debt relief product or service.

## IV. PROHIBITED PRACTICES RELATING TO OFFERING CONSUMER FINANCIAL PRODUCTS OR SERVICES

**IT IS FURTHER ORDERED** that:

30. Defendants, and their officers, agents, servants, employees, and attorneys, who have actual notice of this Judgment, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any consumer financial product or service, are hereby permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication:

    a. The amount of savings a consumer will receive from purchasing, using, or enrolling in such consumer financial product or service;

    b. Any aspect of the terms of any refund, cancellation, exchange, or repurchase policy, including, but not limited to, the likelihood of a consumer obtaining a full or partial refund, or the circumstances in which a full or partial refund will be granted to the consumer;

c. That a consumer will receive any services from or representation by an attorney duly licensed to practice law;

d. The total costs to purchase, receive, or use, or the quantity of, the consumer financial product or service, including that there will be no charge for all or a portion of such service; or

e. The terms or rates that are available for any loan or other extension of credit, including, but not limited to:

    i. The payment schedule, the monthly payment amount(s), or other payment terms, or whether there is a balloon payment; interest rate(s), annual percentage rate(s), finance charge(s), or fees; the loan amount, the amount of credit; the draw amount or outstanding balance; the loan term, the draw period, or maturity; or any other term of credit;

    ii. The savings associated with the loan or credit; or

    iii. Whether the payment of the minimum amount specified each month covers both interest and principal.

31. In addition, Defendants, and their officers, agents, servants, employees, and attorneys, who have actual notice of this Judgment, whether acting directly or indirectly, in connection with the advertising, marketing, promotion, offering for sale, or sale of any consumer financial product or service, are hereby permanently restrained and enjoined from making any representation or assisting others in making any representation, expressly or by implication, about the benefits, performance, or efficacy of any consumer financial product or service unless, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that substantiates that the representation is true.

## V. PROHIBITED USE OF CONSUMER INFORMATION

**IT IS FURTHER ORDERED** that:

32. Defendants, and their officers, agents, servants, employees, and attorneys, who receive actual notice of this Judgment, whether acting directly or indirectly, may not:

    a. Disclose, use, or benefit from, consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account) of any person that Defendants or Network Attorneys obtained in connection with the advertising, marketing, promotion, offering for sale or sale of any debt relief product or service prior to entry of this Judgment.

    b. Attempt to collect, collect, sell, assign, or otherwise transfer any right to collect, payment from any consumer who purchased or agreed to purchase a debt relief product or service from Defendants or Network Attorneys.

33. *However*, consumer information may be disclosed if requested by a government agency or required by law, regulation, or court order.

## VI. ORDER TO PAY REDRESS

**IT IS FURTHER ORDERED** that:

34. A judgment for equitable monetary relief is entered in favor of the Bureau and against Defendants, jointly and severally, in the amount of $35,256,275 for the purpose of providing redress to Affected Consumers for the unlawful advance fees they paid.

35. Full payment of the judgment in Paragraph 34 will be suspended upon satisfaction of the obligations in Paragraphs 36 through 40 of this Section, Paragraphs 42

through 46 of Section VII, and Paragraphs 52 through 56 of Section IX of this Judgment, and subject to Section VIII of this Judgment.

36. Based on financial statements and supporting documentation that Defendants submitted to the Bureau (described in Section VIII), and Defendants' sworn declarations, signed on March 11 and 12, 2019, Defendants are ordered to pay $50,000 toward the judgment provided for in Paragraph 34 within ten (10) days of the Court's entry of this Judgment by wire transfer to the Bureau or the Bureau's agent according to the Bureau's wiring instructions. Defendants are jointly and severally liable for timely satisfying their payment obligation in this Paragraph.

37. With regard to any redress that Defendants pay under this Section, if Defendants receive, directly or indirectly, any reimbursement or indemnification from any source, including, but not limited to, payment made under any insurance policy, or if Defendants secure a tax deduction or tax credit with regard to any federal, state, or local tax, Defendants must: (a) immediately notify the Enforcement Director in writing; and (b) within ten (10) days of receiving the funds or monetary benefit, transfer the full amount of such funds or monetary benefit ("Additional Payment") to the Bureau or the Bureau's agent according to the Bureau's wiring instructions. After the Bureau receives the Additional Payment, the Additional Payment will be applied toward satisfaction of the monetary judgment entered in Paragraph 34, and the amount of the suspended judgment referenced in Paragraph 34 will be reduced by the amount of the Additional Payment.

38. Any funds received by the Bureau in satisfaction of this judgment will be deposited into a fund or funds administered by the Bureau or the Bureau's agent according to applicable statutes and regulations to be used for redress for Affected Consumers, including, but not limited to, refund of moneys, restitution, damages or other monetary relief, and for any attendant expenses for the administration of any such redress.

39.     If the Bureau determines, in its sole discretion, that redress to consumers is wholly or partially impracticable or otherwise inappropriate, or if funds remain after redress is completed, the Bureau will deposit any remaining funds in the U.S. Treasury as disgorgement. Defendants will have no right to challenge any actions that the Bureau or its representatives may take under this Section.

40.     Payment of redress to any Affected Consumer under this Judgment may not be conditioned on that Affected Consumer waiving any right.

## VII.   ORDER TO PAY CIVIL MONEY PENALTIES

**IT IS FURTHER ORDERED** that:

41.     Under Section 1055(c) of the CFPA, 12 U.S.C. § 5565(c), by reason of the violations of law described in Section I of this Judgment, and taking into account the factors in 12 U.S.C. § 5565(c)(3), Defendants must pay a civil money penalty of $40,000,000 to the Bureau. However, full payment of this civil money penalty will be suspended upon satisfaction of the obligations in Paragraphs 36 through 40 of Section VI, Paragraphs 42 through 46 of this Section, and Paragraphs 52 through 56 of Section IX of this Judgment, and subject to Section VIII of this Judgment.

42.     Based on financial statements and supporting documentation that Defendants submitted to the Bureau (described in Section VIII), and Defendants' sworn declarations, signed on March 11 and 12, 2019, Defendants are ordered to pay $1.00 toward the civil money penalty provided for in Paragraph 41 within ten (10) days of the Court's entry of this Judgment by wire transfer to the Bureau or the Bureau's agent according to the Bureau's wiring instructions. Defendants are jointly and severally liable for timely satisfying their payment obligation in this Paragraph.

43.     The civil money penalty paid under this Judgment will be deposited in the Civil Penalty Fund of the Bureau as required by Section 1017(d) of the CFPA, 12 U.S.C. § 5497(d).

44.     Defendants must treat the civil money penalty paid under this Judgment as a penalty paid to the government for all purposes. Regardless of how the Bureau ultimately uses those funds, Defendants may not:

      a.  Claim, assert, or apply for a tax deduction, tax credit, or any other tax benefit for any civil money penalty paid under this Judgment; or

      b.  Seek or accept, directly or indirectly, reimbursement or indemnification from any source, including, but not limited to payment made under any insurance policy, with regard to any civil money penalty paid under this Judgment.

45.     Individual Defendants agree that the civil penalty imposed by the Judgment represents a civil penalty owed to the United States Government, is not compensation for actual pecuniary loss, and thus, as to each Individual Defendants, it is not subject to discharge under the Bankruptcy Code, 11 U.S.C. § 523(a)(7).

46.     To preserve the deterrent effect of the civil money penalty in any Related Consumer Action, Defendants may not argue that they are entitled to, nor may they benefit by, any offset or reduction of any compensatory monetary remedies imposed in the Related Consumer Action because of the civil money penalty paid in this action. If the Court in any Related Consumer Action offsets or otherwise reduces the amount of compensatory or monetary remedies imposed against Defendants based on the civil money penalty paid in this action or based on any payment that the Bureau makes from the Civil Penalty Fund, Defendants must, within 30 days after entry of a final order granting such offset or reduction, notify the Bureau, and pay the amount of the offset or reduction to the U.S. Treasury. Such a payment will not be considered an additional civil money penalty and will not change the amount of the civil money penalty imposed in this action.

## VIII. EFFECT OF MISREPRESENTATION REGARDING FINANCIAL CONDITION

**IT IS FURTHER ORDERED** that:

47. The suspension of the monetary judgment entered in Section VI of this Judgment and the suspension of the civil money penalty entered in Section VII of this Judgment are expressly premised on the truthfulness, accuracy, and completeness of Defendants' financial statements and supporting documents submitted to the Bureau and Defendants' oral testimony, which Defendants assert are truthful, accurate, and complete, and which include:

   a. Initial Financial Statement of Vincent Howard, signed on September 6, 2018, and submitted to the Bureau on or around September 6, 2018, including all attachments;

   b. A supplemental Financial Statement of Vincent Howard, signed on September 23, 2018, and submitted to the Bureau on September 24, 2018;

   c. A supplemental Financial Statement of Vincent Howard, initialed on or around September 25, 2018, and submitted to the Bureau on September 25, 2018;

   d. A supplemental Financial Statement of Vincent Howard, initialed on or around November 22, 2018, and submitted to the Bureau on November 22, 2018;

   e. Financial Statement of Lawrence Williamson, signed on September 19, 2018, and submitted to the Bureau on or around September 19, 2018, including all attachments;

   f. Financial Statement of Howard Law, signed on September 6, 2018, and submitted to the Bureau on or around September 6, 2018, including all attachments;

g.  Financial Statement of Williamson Law, signed on September 19, 2018, and submitted to the Bureau on or around September 19, 2018, including all attachments;

h.  2015 federal tax returns for Williamson & Howard, submitted to the Bureau on or around September 7, 2018;

i.  Supplemental financial information regarding Vincent Howard and Howard Law provided to the Bureau via email on September 7, 2018, November 2, 2018, November 5, 2018, November 6, 2018, December 10, 2018, December 11, 2018, December 14, 2018, December 21, 2018, January 9, 2019, January 10, 2019, January 11, 2019, January 15, 2019, January 28, 2019, and January 29, 2019;

j.  Sworn Declaration of Vincent Howard, signed on March 11, 2019; and

k.  Sworn Declaration of Lawrence Williamson, signed on March 12, 2019.

48.  If the Bureau in its sole discretion determines that any of the Defendants have failed to disclose any material Asset, or that any of their financial statements and supporting documents submitted to the Bureau or oral testimony described above contain any material misrepresentation or omission, including misstating the value of any Asset, then the Bureau can petition the Court to terminate the suspension of the monetary judgment entered in Section VI and to terminate the suspension of the civil money penalty entered in Section VII. If the Court determines that any of the Defendants failed to disclose any material Asset or that any of their financial statements, supporting documents, or related testimony contain material misrepresentations or omissions, the Court shall order as immediately due and payable: (a) the full judgment entered in Paragraph 34 of this Judgment—$35,256,275—less any amounts Defendants paid under Section VI of this Judgment; and (b) the full civil money penalty entered in Paragraph 41 of this Judgment—$40,000,000—less any amounts Defendants paid under Section VII of this Judgment.

49.     After the reinstatement of the monetary judgment and civil money penalty under this Section, the Bureau will be entitled to interest on the judgment, computed from the Effective Date, at the rate prescribed by 28 U.S.C. § 1961, as amended, on any outstanding amounts not paid.

50.     Defendants must pay the full balance of the monetary judgment plus interest and civil money penalty pursuant to Paragraphs 48 and 49 within ten (10) days of the Court's entry of an Judgment by wire transfer to the Bureau or to the Bureau's agent, and according to the Bureau's wiring instructions.

51.     Should the Court reinstate the monetary judgment and civil money penalty pursuant to this Section, in all other respects this Judgment shall remain in full force and effect unless otherwise ordered by the Court. Proceedings to reinstate the monetary judgment and civil money penalty shall be in addition to, and not in lieu of, any other civil or criminal remedies as may be provided by law, including any other proceedings that the Bureau may initiate to enforce this Judgment.

## IX.     ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

52.     In the event of any default on Defendants' obligations to make payment under this Judgment, interest, computed under 28 U.S.C. § 1961, as amended, will accrue on any outstanding payments not paid from the date of default to the date of payment, and will immediately become due and payable.

53.     Defendants relinquish all dominion, control, and title to the funds paid to the fullest extent permitted by law and no part of the funds may be returned to Defendants.

54.     Under 31 U.S.C. § 7701, Defendants must furnish to the Bureau their taxpayer identification numbers, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Judgment.

55.     Within 30 days of the entry of a final judgment, consent order, or settlement in a Related Consumer Action, Defendants must notify the Enforcement Director of the final judgment, consent order, or settlement in writing. That notification must indicate the

amount of redress, if any, that Defendant paid or are required to pay to consumers and describe the consumers or classes of consumers to whom that redress has been or will be paid.

56. Under Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), any consumer reporting agency may furnish a consumer report concerning Defendants to the Bureau, which may be used for purposes of collecting and reporting on any delinquent amount arising out of this Judgment.

## X.   REPORTING REQUIREMENTS

**IT IS FURTHER ORDERED** that:

57. Defendants must notify the Bureau of any development that may affect compliance obligations arising under this Judgment, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor company; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Judgment; the filing of any bankruptcy or insolvency proceeding by or against Defendants; or a change in any Defendant's name or address. Defendants must provide this notice, if practicable, at least 30 days before the development, but in any case no later than 14 days after the development.

58. Within 7 days of the Effective Date, each Defendant must:

    a. Designate at least one telephone number and email, physical and postal address as points of contact, which the Bureau may use to communicate with Defendant;

    b. Identify all businesses for which Defendant is the majority owner, or that Defendant directly or indirectly controls, by all of their names, telephone numbers, and physical, postal, email and Internet addresses;

    c. Describe the activities of each such business, including the products and services offered, and the means of advertising, marketing, and sales;

d. For the Individual Defendants, identify all telephone numbers and all email, Internet, physical and postal addresses, including all residences;

e. For the Individual Defendants, describe in detail their involvement in any business for which they perform services in any capacity or which they wholly or partially own, including their title, role, responsibilities, participation, authority, control, and ownership.

59.    Defendants must report any change in the information required to be submitted under Paragraph 58 at least 30 days before the change or as soon as practicable after learning about the change, whichever is sooner.

60.    Within 90 days of the Effective Date, and again one year after the Effective Date, Defendants must submit to the Enforcement Director an accurate written compliance progress report sworn under penalty of perjury ("Compliance Report"), which, at a minimum:

a. Lists each applicable paragraph and subparagraph of the Judgment and describes in detail the manner and form in which Defendants have complied with each such paragraph and subparagraph of this Judgment; and

b. Attaches a copy of each Judgment Acknowledgment obtained under Section XI, unless previously submitted to the Bureau.

## XI.    ORDER DISTRIBUTION AND ACKNOWLEDGEMENT

**IT IS FURTHER ORDERED** that:

61.    Within 7 days of the Effective Date, Defendants must submit to the Enforcement Director an acknowledgment of receipt of this Judgment, sworn under penalty of perjury.

62.    Within 30 days of the Effective Date, Defendants, for any business for which they are majority owner or which they directly or indirectly control and which

provides consumer financial products or services, must deliver a copy of this Judgment to each of its board members and executive officers;

63.    Also within 30 days of the Effective Date, Defendants must deliver a copy of this Judgment to any managers, employees, Service Providers, or other agents and representatives who have responsibilities related to the subject matter of this Judgment, including, but not limited to, Aissac Aiono, Seila Law, Jeffrey Katz, David Walker, Amelia Brummel, and Brummel Legal Solutions.

64.    For 7 years from the Effective Date, Defendants, for any business for which they are the majority owner or which they directly or indirectly control and which provides consumer financial products or services, must deliver a copy of this Judgment to any business entity resulting from any change in structure referred to in Section X, any future board members and executive officers, as well as to any managers, employees, Service Providers, or other agents and representatives who will have responsibilities related to the subject matter of this Judgment before they assume their responsibilities.

65.    Defendants must secure a signed and dated statement acknowledging receipt of a copy of this Judgment, ensuring that any electronic signatures comply with all the requirements of the E-Sign Act, 15 U.S.C. § 7001 *et seq*., within 30 days of delivery, from all persons receiving a copy of this Judgment under this Section.

## XII.    RECORDKEEPING

**IT IS FURTHER ORDERED** that:

66.    Defendants, individually and for any business for which any Defendant, individually or collectively with any other Defendant, is a majority owner or which they directly or indirectly control, must create, for at least 10 years from the Effective Date, the following records:

    a.    All documents and records necessary to demonstrate full compliance with each provision of this Judgment, including all submissions to the Bureau;

b. Financial records, including, but not limited to, individual and corporate tax returns, credit reports, any and all documentation required to complete the Bureau's individual and corporate financial disclosure forms, and accounting records showing gross and net revenues, all costs incurred in generating revenues, and the resulting net profit or loss;

c. Records showing, for each employee providing services, that person's: name; telephone number; email, physical, and postal addresses; job title or position; dates of service; and, if applicable, the reason for termination;

d. Records showing, for each service provider providing services, the name of a point of contact, and that person's: telephone number; email, physical, and postal addresses; job title or position; dates of service; and, if applicable, the reason for termination;

e. For any person to whom any Defendant offers or provides a consumer financial product or service, records showing the person's name, email and postal address, telephone number, dates and dollar amounts of payments made, and the quantity and description of goods and services purchased; and

f. All consumer complaints and refund requests (whether received directly or indirectly, such as through a third party), and any response to those complaints or requests.

67. Defendants must retain the documents identified in Paragraph 66 for at least 5 years after creation.

68. Defendants must make the documents identified in Paragraph 66 available to the Bureau upon the Bureau's request.

# XIII. NOTICES

**IT IS FURTHER ORDERED** that:

69.    Unless otherwise directed in writing by the Bureau, Defendants must provide all submissions, requests, communications, or other documents relating to this Judgment in writing, with the subject line, "*CFPB v. Howard, et al.*, Case No. 17-cv-00161," and send them by overnight courier or first-class mail to the below address and contemporaneously by email to Enforcement_Compliance@cfpb.gov:

> Assistant Director for Enforcement
> Bureau of Consumer Financial Protection
> ATTENTION: Office of Enforcement
> 1700 G Street, N.W.
> Washington, DC 20552

# XIV. COOPERATION WITH THE BUREAU

**IT IS FURTHER ORDERED** that:

70.    Defendants must cooperate fully to help the Bureau determine the identity and location of, and the amount of injury sustained by, each Affected Consumer. Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

71.    Defendants must cooperate fully to help the Bureau determine the identity, location, and contact information of any other Defendant or any of the Defendants' former employees. Defendants must provide such information in their or their agents' possession or control within 14 days of receiving a written request from the Bureau.

72.    Defendants must cooperate fully with the Bureau in this matter and in any investigation or litigation related to or associated with the conduct described in the Complaint, including, but not limited to, providing information, documents, and testimony relating to the transfer of Defendants' and Morgan Drexen's former clients to any third-parties, and the provision of debt relief services or any other consumer financial product or service by those third parties. Defendants must provide truthful and complete information, evidence, and testimony. The Individual Defendants must appear, and the

Corporate Defendants must cause their officers, employees, representatives, or agents to appear for interviews, discovery, hearings, trials, and any other proceedings that the Bureau may reasonably request upon 10 days written notice, or other reasonable notice, at such places and times as the Bureau may designate, without the service of compulsory process.

## XV. COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that:

73. To monitor Defendants' compliance with this Judgment, including the financial representations upon which the judgment was suspended, within 14 days of receipt of a written request from the Bureau, Defendants must submit additional compliance reports or other requested non-privileged information related to the requirements of this Judgment, which must be sworn under penalty of perjury; provide sworn testimony related to the requirements of this Judgment; or produce non-privileged documents related to the requirements of this Judgment and Defendants' compliance with those requirements.

74. For matters concerning this Judgment, the Bureau is authorized by the Judgment to communicate directly with Defendants, unless Defendants retain counsel related to these communications.

75. Defendants must permit Bureau representatives to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

76. Nothing in this Judgment will limit the Bureau's lawful use of compulsory process, including pursuant to 12 C.F.R. § 1080.6.

## XVI. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that:

77. The Court will retain jurisdiction of this matter for the purposes of construction, modification, and enforcement of this Judgment.

# XVII. FINAL JUDGMENT

78.     The Bureau and Defendants have consented to the terms and conditions of this Judgment as set forth above and have consented to the entry thereof.

**IT IS SO ORDERED, ADJUDGED, AND DECREED.**

Dated:  March 27, 2019

_____

Honorable Josephine L. Staton
United States District Judge